**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

### MOTION INFORMATION STATEMENT

Docket Number(s): 16-650-cv                                    Caption [use short title]

Motion for: Emergency Motion for Expedited                    Olifant Fund, Limited v. The Republic of Argentina
Appeal and Consolidation

                                                              Additional captions, docket numbers and counsel
                                                              listed in Addendum A.

Set forth below precise, complete statement of relief sought:

Consolidation of the appeals listed in Addendum
A, together with any subsequently-filed related
appeals, and expedited briefing and consideration
of the consolidated appeals: appellants' brief
due 3/11/16, appelee's brief due 3/14/16, and
appellants' reply brief due 3/16/16.

MOVING PARTY: Republic of Argentina                           OPPOSING PARTY: **Olifant Fund, Limited**

☐ Plaintiff            ☑ Defendant
☐ Appellant/Petitioner ☑ Appellee/Respondent

MOVING ATTORNEY: Michael A. Paskin                            OPPOSING ATTORNEY: William M. Jay
                         [name of attorney, with firm, address, phone number and e-mail]

Cravath, Swaine & Moore LLP                                   Goodwin Procter LLP

825 Eighth Avenue, New York, NY, 10019                        901 New York Avenue, NW, Washington, DC 20001

(212) 474-1000; mpaskin@cravath.com                           202-346-4190;  wjay@goodwinprocter.com

Court-Judge/Agency appealed from: Southern District of New York (Griesa, J.)

**Please check appropriate boxes:**                           **FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND
                                                              INJUNCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):   Has request for relief been made below?           ☐ Yes ☑ No
☑ Yes ☐ No (explain):_____                  Has this relief been previously sought in this Court?    ☐ Yes ☑ No
                                                              Requested return date and explanation of emergency:_____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know                           The requested return date is 3/7/2016.  Emergency
Does opposing counsel intend to file a response:
☑ Yes ☐ No ☐ Don't Know                                      treatment is needed to ensure that Argentina can raise

                                                              capital, enact legislation and make agreed-upon

                                                              settlement payments by April 14, 2016.

Is oral argument on motion requested?   ☐ Yes ☑ No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☑ No  If yes, enter date:_____

**Signature of Moving Attorney:**
/s/ Michael A. Paskin         Date: 3/4/2016         Service by: ☑ CM/ECF      ☐ Other [Attach proof of service]

**Form T-1080** (rev. 12-13)

**Addendum A**

| |
|---|
| *Aurelius Capital Master, Ltd. and ACP Master, Ltd. v. The Republic of Argentina*, 16-628-cv; 16-639-cv |
| Counsel:<br><br>Roy T. Englert, Jr., Esq.<br>Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP<br>1801 K Street, NW<br>Washington, DC 20006<br><br>Edward A. Friedman, Esq.<br>Friedman Kaplan Seiler & Adelman LLP<br>7 Times Square<br>New York, NY 10036 |
| *NML Capital v. The Republic of Argentina*, 16-649-cv; 16-644-cv; 08 Civ. 6978 (TPG); (S.D.N.Y.)[1]; 09 Civ. 1708 (TPG) (S.D.N.Y.); 14 Civ. 8988 (TPG) (S.D.N.Y.) |
| Counsel:[2]<br><br>Robert A. Cohen, Esq.<br>Dechert LLP<br>1095 Avenue of the Americas<br>New York, NY 10036<br><br>Matthew McGill, Esq.<br>Jason J. Mendro, Esq.<br>Theodore B. Olson, Esq.<br>Gibson, Dunn & Crutcher LLP<br>1050 Connecticut Avenue, NW<br>Washington, DC 20036 |

---

[1] For cases in which a Notice of Appeal has been filed but no docket number has been assigned by this Court, the district court docket numbers are listed.

[2] This Addendum lists counsel for Appellants only. Counsel for the Republic of Argentina is the same for each case and listed on Form 1080.

| |
|---|
| *Blue Angel Capital I LLC v. The Republic of Argentina*, 16-651-cv; 16-640-cv; 14 Civ. 8947 (TPG) (S.D.N.Y.) |
| Counsel: <br><br> Roy T. Englert, Jr., Esq. <br> Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP <br> 1801 K Street, NW <br> Washington, DC 20006 <br><br> Edward A. Friedman, Esq. <br> Friedman Kaplan Seiler & Adelman LLP <br> 7 Times Square <br> New York, NY 10036 |
| *Olifant Fund, Ltd. v. The Republic of Argentina*, 16-650-cv |
| Counsel: <br><br> Robert D. Carroll, Esq. <br> Goodwin Procter LLP <br> Exchange Place, 53 State Street <br> Boston, MA 02109 |
| *Pablo Alberto Varela, et al v. The Republic of Argentina*, 10 Civ. 5338 (TPG) (S.D.N.Y.) |
| Counsel: <br><br> Michael C. Spencer[3] <br> Milberg LLP <br> One Pennsylvania Plaza <br> New York, NY 10119 |
| *FFI Fund, Ltd. and FYI Ltd. v. The Republic of Argentina*, 16-643-cv |
| Counsel: <br><br> Robert D. Carroll, Esq. <br> William M. Jay, Esq. <br> Stephen D. Poss, Esq. <br> Goodwin Procter LLP <br> Exchange Place, 53 State Street <br> Boston, MA 02109 |

---

[3] For cases in which a Notice of Appeal has been filed but no docket number has been assigned by this Court, counsel listed on the Notice of Appeal is provided.

| *Perez, et al. v. The Republic of Argentina*, 14 Civ. 8242 (TPG) (S.D.N.Y.) |
|---|
| Counsel:<br><br>Michael C. Spencer<br>Milberg LLP<br>One Pennsylvania Plaza<br>New York, NY 10119 |
| *Aurelius Capital Partners, LP, et al. v. The Republic of Argentina*, 14 Civ. 8946 (TPG) (S.D.N.Y.) |
| Counsel:<br><br>Roy T. Englert, Jr., Esq.<br>Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP<br>1801 K Street, NW<br>Washington, DC 20006<br><br>Edward A. Friedman, Esq.<br>Friedman Kaplan Seiler & Adelman LLP<br>7 Times Square<br>New York, NY 10036 |
| *Adami, et al. v. The Republic of Argentina*, 14 Civ. 7739 (TPG) (S.D.N.Y.) |
| Counsel:<br><br>Anthony J. Constantini, Esq.<br>Suzan Jo, Esq.<br>Kevin P. Potere, Esq.<br>Duane Morris LLP<br>1540 Broadway<br>New York, NY 10036-4086 |
| *Foglia, et al. v. The Republic of Argentina*, 14 Civ. 8243 (TPG) (S.D.N.Y.) |
| Counsel:<br><br>Michael C. Spencer<br>Milberg LLP<br>One Pennsylvania Plaza<br>New York, NY 10119 |

| *Pons, et al. v. The Republic of Argentina*, 13 Civ. 8887 (TPG) (S.D.N.Y.) |
|---|
| Counsel:<br><br>Michael C. Spencer<br>Milberg LLP<br>One Pennsylvania Plaza<br>New York, NY 10119 |

| *Guibelalde, et al. v. The Republic of Argentina*, 11 Civ. 4908 (TPG) (S.D.N.Y.) |
|---|
| Counsel:<br><br>Michael C. Spencer<br>Milberg LLP<br>One Pennsylvania Plaza<br>New York, NY 10119 |

| *Dorra, et al. v. The Republic of Argentina*, 14 Civ. 10141 (TPG) (S.D.N.Y.) |
|---|
| Counsel:<br><br>Michael C. Spencer<br>Milberg LLP<br>One Pennsylvania Plaza<br>New York, NY 10119 |

| *Beloqui, et al. v. The Republic of Argentina*, 14 Civ. 5963 (TPG) (S.D.N.Y.) |
|---|
| Counsel:<br><br>Michael C. Spencer<br>Milberg LLP<br>One Pennsylvania Plaza<br>New York, NY 10119 |

| *Tortus Capital Master Fund, LP v. The Republic of Argentina*, 14 Civ. 1109 (TPG) (S.D.N.Y.); 14 Civ. 3127 (TPG) (S.D.N.Y.) |
|---|
| Counsel:<br><br>Michael C. Spencer<br>Milberg LLP<br>One Pennsylvania Plaza<br>New York, NY 10119 |

| |
|---|
| *Trinity Investments Ltd. v. The Republic of Argentina*, 14 Civ. 10016 (TPG) (S.D.N.Y.); 15 Civ. 1588 (TPG) (S.D.N.Y.); 15 Civ. 2611 (TPG) (S.D.N.Y.); 15 Civ. 5886 (TPG) (S.D.N.Y.) |

Counsel:

Anthony J. Constantini, Esq.
Suzan Jo, Esq.
Kevin P. Potere, Esq.
Duane Morris LLP
1540 Broadway
New York, NY 10036-4086

Brian Rosen, Esq.
Richard L. Levine, Esq.
David Yolkut, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

| |
|---|
| *MCHA Holdings, LLC v. The Republic of Argentina*, 14 Civ. 7637 (TPG) (S.D.N.Y.); 14 Civ. 10064 (TPG) (S.D.N.Y.); 15 Civ. 2577 (TPG) (S.D.N.Y.); 15 Civ. 5190 (TPG) (S.D.N.Y.) |

Counsel:

Anthony J. Constantini, Esq.
Suzan Jo, Esq.
Kevin P. Potere, Esq.
Duane Morris LLP
1540 Broadway
New York, NY 10036-4086

Brian Rosen, Esq.
Richard L. Levine, Esq.
David Yolkut, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

| |
|---|
| *Andrarex Ltd. v. The Republic of Argentina*, 14 Civ. 9093 (TPG) (S.D.N.Y.) |

Counsel:

Andrea Boggio, Esq.
1150 Douglas Pike
Smithfield, RI 02917

| |
|---|
| *Claridae, et al. v. The Republic of Argentina*, 14 Civ. 10201 (TPG) (S.D.N.Y.) |
| Counsel:<br><br>Anthony J. Constantini, Esq.<br>Suzan Jo, Esq.<br>Kevin P. Potere, Esq.<br>Duane Morris LLP<br>1540 Broadway<br>New York, NY 10036-4086 |
| *ARAG-A Ltd., et al. v. The Republic of Argentina*, 14 Civ. 9855 (TPG) (S.D.N.Y.) |
| Counsel:<br><br>Anthony J. Constantini, Esq.<br>Suzan Jo, Esq.<br>Kevin P. Potere, Esq.<br>Duane Morris LLP<br>1540 Broadway<br>New York, NY 10036-4086 |
| *Attestor Master Value Fund LP v. The Republic of Argentina*, 14 Civ. 5849 (TPG) (S.D.N.Y.) |
| Counsel:<br><br>Anthony J. Constantini, Esq.<br>Suzan Jo, Esq.<br>Kevin P. Potere, Esq.<br>Duane Morris LLP<br>1540 Broadway<br>New York, NY 10036-4086<br><br>Brian Rosen, Esq.<br>Richard L. Levine, Esq.<br>David Yolkut, Esq.<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153 |
| *Angulo, et al. v. The Republic of Argentina*, 15 Civ. 1470 (TPG) (S.D.N.Y.) |
| Counsel:<br><br>Michael C. Spencer<br>Milberg LLP<br>One Pennsylvania Plaza<br>New York, NY 10119 |

| *Lambertini, et al. v. The Republic of Argentina*, 15 Civ. 1471 (TPG) (S.D.N.Y.) |
| --- |
| Counsel:<br><br>Michael C. Spencer<br>Milberg LLP<br>One Pennsylvania Plaza<br>New York, NY 10119 |

| *Banca Arner S.A., et al. v. The Republic of Argentina*, 16-641-cv |
| --- |
| Counsel:<br><br>Banks Brown, Esq.<br>McDermott Will & Emery LLP<br>340 Madison Avenue<br>New York, NY 10173 |

| *Fazzolari, et al. v. The Republic of Argentina,* 15 Civ. 3523 (TPG) (S.D.N.Y.) |
| --- |
| Counsel:<br><br>Anu Bhargava<br>Gleason & Koatz, LLP<br>122 East 42nd Street<br>New York, New York 10169 |

| *Stonehill Institutional Parterns, L.P., et al. v. The Republic of Argentina*, 15 Civ. 4284 (TPG) (S.D.N.Y.) |
| --- |
| Counsel:<br><br>Anthony J. Constantini, Esq.<br>Suzan Jo, Esq.<br>Kevin P. Potere, Esq.<br>Duane Morris LLP<br>1540 Broadway<br>New York, NY 10036-4086 |

| |
|---|
| *White Hawthorne, LLC v. The Republic of Argentina*, 15 Civ. 4767 (TPG) (S.D.N.Y.) |
| Counsel:<br><br>Anthony J. Constantini, Esq.<br>Suzan Jo, Esq.<br>Kevin P. Potere, Esq.<br>Duane Morris LLP<br>1540 Broadway<br>New York, NY 10036-4086<br><br>Brian Rosen, Esq.<br>Richard L. Levine, Esq.<br>David Yolkut, Esq.<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153 |
| *Bybrook Capital Master Fund LP, et al. v. The Republic of Argentina*, 15 Civ. 7367 (TPG) (S.D.N.Y.); 15 Civ. 2369 (TPG) (S.D.N.Y.) |
| Counsel:<br><br>Anthony J. Constantini, Esq.<br>Suzan Jo, Esq.<br>Kevin P. Potere, Esq.<br>Duane Morris LLP<br>1540 Broadway<br>New York, NY 10036-4086<br><br>Brian Rosen, Esq.<br>Richard L. Levine, Esq.<br>David Yolkut, Esq.<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153 |

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

AURELIUS CAPITAL MASTER, LTD. and
ACP MASTER, LTD.,

Plaintiffs-Appellants,

- against -

16-628-cv
16-639-cv

THE REPUBLIC OF ARGENTINA,

Defendant-Appellee.

NML CAPITAL, LTD.,

Plaintiff-Appellant,

- against -

16-644-cv
16-649-cv
08 Civ. 6978 (TPG)[1]
09 Civ. 1708 (TPG)
14 Civ. 8988 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant-Appellee.

*(captions continue on following pages)*

**EMERGENCY MOTION FOR EXPEDITED APPEAL AND
CONSOLIDATION**

---

[1] For cases in which a Notice of Appeal has been filed but no docket number has been assigned yet by this Court, the docket numbers from the United States District Court for the Southern District of New York are listed.

AURELIUS OPPORTUNITIES FUND II, LLC
and AURELIUS CAPITAL MASTER, LTD.,

                        Plaintiffs-Appellants,

          - against -

THE REPUBLIC OF ARGENTINA,

                        Defendant-Appellee.

16-642-cv
10 Civ. 1602 (TPG)

---

AURELIUS CAPITAL MASTER, LTD. and
AURELIUS OPPORTUNITIES FUND II, LLC,

                        Plaintiffs-Appellants,

          - against -

THE REPUBLIC OF ARGENTINA,

                        Defendant-Appellee.

10 Civ. 3970 (TPG)
10 Civ. 8339 (TPG)

---

BLUE ANGEL CAPITAL I LLC,

                        Plaintiff-Appellant,

          - against -

THE REPUBLIC OF ARGENTINA,

                        Defendant-Appellee.

16-651-cv
16-640-cv

ii

OLIFANT FUND, LTD.,

　　　　　　　　　　　　Plaintiff-Appellant,

　　　　　- against -　　　　　　　　　　　16-650-cv

THE REPUBLIC OF ARGENTINA,

　　　　　　　　　　　　Defendant-Appellee.

PABLO ALBERTO VARELA, et al.,

　　　　　　　　　　　　Plaintiffs-Appellants,

　　　　　- against -　　　　　　　　　　　10 Civ. 5338 (TPG)

THE REPUBLIC OF ARGENTINA,

　　　　　　　　　　　　Defendant-Appellee.

FFI FUND, LTD. and FYI LTD.,

　　　　　　　　　　　　Plaintiffs-Appellants,

　　　　　- against -　　　　　　　　　　　16-643-cv

THE REPUBLIC OF ARGENTINA,

　　　　　　　　　　　　Defendant-Appellee.

PEREZ, *et al.*,

           Plaintiffs-Appellants,

      - against -           14 Civ. 8242 (TPG)

THE REPUBLIC OF ARGENTINA,

           Defendant-Appellee.

---

AURELIUS CAPITAL PARTNERS, LP, *et al.*,

           Plaintiffs-Appellants,

      - against -           14 Civ. 8946 (TPG)

THE REPUBLIC OF ARGENTINA,

           Defendant-Appellee.

---

BLUE ANGEL CAPITAL I LLC,

           Plaintiff-Appellant,

      - against -           14 Civ. 8947 (TPG)

THE REPUBLIC OF ARGENTINA,

           Defendant-Appellee.

iv

ADAMI, *et al.*,

                           Plaintiffs-Appellants,

                - against -                   14 Civ. 7739 (TPG)

THE REPUBLIC OF ARGENTINA,

                              Defendant-Appellee.

FOGLIA, *et al.*,

                           Plaintiffs-Appellants,

                - against -                   14 Civ. 8243 (TPG)

THE REPUBLIC OF ARGENTINA,

                              Defendant-Appellee.

PONS, *et al.*,

                           Plaintiffs-Appellants,

                - against -                   13 Civ. 8887 (TPG)

THE REPUBLIC OF ARGENTINA,

                              Defendant-Appellee.

GUIBELALDE, *et al.*,

                    Plaintiffs-Appellants,

          - against -                 11 Civ. 4908 (TPG)

THE REPUBLIC OF ARGENTINA,

                    Defendant-Appellee.

---

DORRA, *et al.*,

                    Plaintiffs-Appellants,

          - against -             14 Civ. 10141 (TPG)

THE REPUBLIC OF ARGENTINA,

                    Defendant-Appellee.

---

BELOQUI, *et al.*,

                    Plaintiffs-Appellants,

          - against -             14 Civ. 5963 (TPG)

THE REPUBLIC OF ARGENTINA,

                    Defendant-Appellee.

TORTUS CAPITAL MASTER FUND, LP,

                    Plaintiff-Appellant,

          - against -                              14 Civ. 1109 (TPG)
                                                   14 Civ. 3127 (TPG)
THE REPUBLIC OF ARGENTINA,

                    Defendant-Appellee.

---

TRINITY INVESTMENTS LIMITED,

                    Plaintiff-Appellant,
                                                   14 Civ. 10016 (TPG)
          - against -                              15 Civ. 1588 (TPG)
                                                   15 Civ. 2611 (TPG)
THE REPUBLIC OF ARGENTINA,                         15 Civ. 5886 (TPG)

                    Defendant-Appellee.

---

MCHA HOLDINGS, LLC,

                    Plaintiff-Appellant,
                                                   14 Civ. 7637 (TPG)
          - against -                              14 Civ. 10064 (TPG)
                                                   15 Civ. 2577 (TPG)
THE REPUBLIC OF ARGENTINA,                         15 Civ. 5190 (TPG)

                    Defendant-Appellee.

ANDRAREX LTD.,

                                      Plaintiff-Appellant,

                - against -                                14 Civ. 9093 (TPG)

THE REPUBLIC OF ARGENTINA,

                                      Defendant-Appellee.

---

CLARIDAE, *et al.*,

                                      Plaintiffs-Appellants,

                - against -                                14 Civ. 10201 (TPG)

THE REPUBLIC OF ARGENTINA,

                                      Defendant-Appellee.

---

ARAG-A LIMITED, *et al.*,

                                      Plaintiffs-Appellants,

                - against -                                14 Civ. 9855 (TPG)

THE REPUBLIC OF ARGENTINA,

                                      Defendant-Appellee.

ATTESTOR MASTER VALUE FUND LP,

        Plaintiff-Appellant,

     - against -       14 Civ. 5849 (TPG)

THE REPUBLIC OF ARGENTINA,

        Defendant-Appellee.

---

ANGULO, *et al.*,

        Plaintiffs-Appellants,

     - against -       15 Civ. 1470 (TPG)

THE REPUBLIC OF ARGENTINA,

        Defendant-Appellee.

---

LAMBERTINI, *et al.*,

        Plaintiffs-Appellants,

     - against -       15 Civ. 1471 (TPG)

THE REPUBLIC OF ARGENTINA,

        Defendant-Appellee.

BANCA ARNER S.A., *et al.*,

                           Plaintiffs-Appellants,

            - against -                       16-641-cv

THE REPUBLIC OF ARGENTINA,

                           Defendant-Appellee.

---

FAZZOLARI, *et al.*,

                           Plaintiffs-Appellants,

            - against -              15 Civ. 3523 (TPG)

THE REPUBLIC OF ARGENTINA,

                           Defendant-Appellee.

---

STONEHILL INSTITUTIONAL PARTNERS, L.P., *et al.*,

                           Plaintiffs-Appellants,

            - against -              15 Civ. 4284 (TPG)

THE REPUBLIC OF ARGENTINA,

                           Defendant-Appellee.

x

WHITE HAWTHORNE, LLC,

                  Plaintiff-Appellant,

     - against -                        15 Civ. 4767 (TPG)

THE REPUBLIC OF ARGENTINA,

                  Defendant-Appellee.

---

BYBROOK CAPITAL MASTER FUND LP,
*et al.*,

                 Plaintiffs-Appellants,

     - against -                    15 Civ. 7367 (TPG)
                                   15 Civ. 2369 (TPG)

THE REPUBLIC OF ARGENTINA,

                  Defendant-Appellee.

---

## EMERGENCY MOTION FOR EXPEDITED APPEAL AND CONSOLIDATION

Pursuant to Rules 2, 27 and 31(a)(2) of the Federal Rules of Appellate Procedure and Rule 27.1(d) of the Local Rules of the Second Circuit, Defendant-Appellee the Republic of Argentina (the "Republic") respectfully moves for expedited briefing and consideration of the above-captioned appeals. For the reasons set forth below, the Republic requests that this Court order the following briefing schedule:

1

Appellants' Brief due March 11, 2016.

Appellee's Brief due March 14, 2016.

Appellants' Reply Brief due March 16, 2016.

The Republic also respectfully requests that this Court schedule an oral argument to take place in these appeals at the Court's earliest opportunity, preferably March 17 or 18, 2016, and that the Court endeavor to issue a decision on this appeal no later than March 24, 2016. For the same reasons, the Republic requests that this motion be treated as an emergency motion pursuant to Local Rule 27.1(d).

The lead plaintiffs-appellants in these appeals agree that these proceedings should be expedited, but they have proposed a longer schedule, with appellants' brief due March 14, appellee's brief due March 21, and appellants' reply brief due March 25. Appellants' stated reason for needing a longer schedule is that one of the attorneys for some of the appellants has an argument before the Supreme Court in a different case on March 22. The Republic respectfully submits that one lawyer's personal schedule should not dictate the calendar for an appeal with this level of urgency and importance to many parties, including the sovereign Republic of Argentina and its people. Moreover, as discussed further below, the urgency in this schedule is a problem of those appellants' own making, as they have insisted on an April 14 deadline for the Republic to raise funds and pay them approximately $4.6 billion, or else they may terminate the parties' settlement

2

agreement and seek to interfere with the Republic's ability to consummate agreed-upon settlements with other parties. Appellants' request for delay makes it less likely that the Republic will be able to meet appellants' self-imposed deadline. That is unfair not only to the Republic, but also to the other parties seeking to consummate settlement agreements worth billions of dollars and to resolve this 15-year-old dispute. Plaintiffs EM Ltd and Montreux,[2] who have reached settlements with the Republic for total payments of more than $1 billion, as well as holders of Euro-denominated Argentine "Exchange Bonds", who cannot be paid unless and until the district court's order is affirmed on appeal, plan to seek to participate in these appeals as intervenors or amici curiae and support the requested schedule.

Pursuant to this Court's Order dated February 24, 2016, in the appeal captioned *Aurelius Opportunities Fund II, LLC, et al. v. Republic of Argentina*, No. 15-1060-cv(L) (Ex.[3] A), the Republic respectfully moves that any further appeals taken from related cases in the District Court be consolidated with the above-captioned appeals on the same expedited schedule.[4]

---

[2] The Montreux plaintiffs are Montreux Partners, L.P.; Los Angeles Capital; Cordoba Capital; and Wilton Capital.

[3] References to "Ex." are to the exhibits to the accompanying Declaration of Michael A. Paskin, executed on March 4, 2016.

[4] The related district court cases are 08 Civ. 6978 (TPG); 09 Civ. 1707 (TPG); 09 Civ. 1708 (TPG); 09 Civ. 8757 (TPG); 09 Civ. 10620 (TPG); 10 Civ. 1602 (TPG); 10 Civ. 3507 (TPG); 10 Civ. 3970 (TPG); 10 Civ. 8339 (TPG); 14 Civ. 8601 (TPG); 14 Civ. 8988 (TPG); 14 Civ.

The Republic believes that this motion is a procedural one that is subject to subsections (b) and (c) of Federal Rule of Appellate Procedure 27, and therefore that it may be addressed by a single Circuit Judge and ruled upon "at any time without awaiting a response". Some appellants have advised counsel for the Republic that they plan to file a response to this motion, and the Republic has no objection to such a response being considered so long as it is filed promptly, consistent with the expedited schedule that has been requested.

## BACKGROUND

Plaintiffs appeal from a March 2, 2016, district court order granting the Republic's motion to vacate the injunctive orders that the district court issued in this litigation in 2012 and 2015 (the "Injunctions"). The district court exercised its discretion to hold that, due to significantly changed circumstances from those that formed the basis for imposing extraordinary injunctive relief, continued application of the Injunctions was no longer equitable and was contrary to the public interest. (*See* Ex. B; Ex. C.) The background to that order is as follows.

---

8630 (TPG); 10 Civ. 4101 (TPG); 10 Civ. 4782 (TPG); 10 Civ. 9587 (TPG); 10 Civ. 5338 (TPG); 14 Civ. 8242 (TPG); 14 Civ. 8946 (TPG); 14 Civ. 8947 (TPG); 14 Civ. 8303 (TPG); 14 Civ. 4092 (TPG); 14 Civ. 4091 (TPG); 14 Civ. 8739 (TPG); 14 Civ. 7258 (TPG); 14 Civ. 7739 (TPG); 15 Civ. 710 (TPG); 14 Civ. 8243 (TPG); 13 Civ. 8887 (TPG); 11 Civ. 4908 (TPG); 14 Civ. 10141 (TPG); 14 Civ. 5963 (TPG); 14 Civ. 1109 (TPG); 14 Civ. 3127 (TPG); 14 Civ. 10016 (TPG); 14 Civ. 7171 (TPG); 14 Civ. 7169 (TPG); 14 Civ. 7164 (TPG); 14 Civ. 7166 (TPG); 14 Civ. 7637 (TPG); 14 Civ. 10064 (TPG); 14 Civ. 9093 (TPG); 14 Civ. 10201 (TPG); 14 Civ. 9855 (TPG); 14 Civ. 5849 (TPG); 15 Civ. 1470 (TPG); 15 Civ. 1471 (TPG); 15 Civ. 1553 (TPG); 15 Civ. 1588 (TPG); 15 Civ. 1508 (TPG); 15 Civ. 2611 (TPG); 15 Civ. 5886 (TPG); 15 Civ. 2577 (TPG); 15 Civ. 5190 (TPG); 15 Civ. 4654 (TPG); 15 Civ. 3523 (TPG); 15 Civ. 4284 (TPG); 15 Civ. 4767 (TPG); 11 Civ. 8817 (TPG); 15 Civ. 6702 (TPG); 15 Civ. 3932 (TPG); 15 Civ. 7367 (TPG); 15 Civ. 2369 (TPG).

## A.     The Republic's Default and the Injunctions

In 2001, the Republic defaulted on its external indebtedness, including on the bonds that are the subject of this litigation (the "FAA Bonds"). In each of 2005 and 2010, the Republic offered holders of the defaulted bonds new exchange bonds (the "Exchange Bonds") and began making payments to the holders of the Exchange Bonds without making payments to persons who continued to hold defaulted bonds, including the FAA Bonds.

Plaintiffs are FAA bondholders who sued the Republic seeking to enforce their rights as holders of FAA Bonds. In 2010, plaintiffs in thirteen of the related actions moved for partial summary judgment, asking that the district court declare that the Republic had breached the so-called "*pari passu* clause", which provides that the FAA Bonds "shall at all times rank *pari passu* and without any preference among themselves" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness". (Ex. D at ¶ 1(c).) The district court granted those plaintiffs' motions on December 7, 2011. (Ex. E at 4-5.)

Although the *pari passu* clause itself does not provide for a particular remedy (*see* Ex. B at 2), on February 23, 2012, the district court fashioned an equitable remedy to address the Republic's violation of that clause and its then-

continuing refusal to pay the FAA bondholders even while making payments on the Exchange Bonds. *See also NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 261 (2d Cir. 2012) (explaining in affirming the 2012 injunction that "the court had considerable latitude in fashioning the relief [and] [t]he performance required by a decree need not, for example, be identical with that promised in the contract"). The district court issued injunctions providing, in general terms, that the Republic was enjoined from making payments on the Exchange Bonds without making a "Ratable Payment" to the plaintiffs on their FAA Bonds. (Ex. F ¶ 2(a).) The district court issued an amended injunctive order on November 21, 2012.

In issuing the 2012 injunctive orders, the district court found that the balance of the equities supported the issuance of an injunction because "the Republic has engaged in an unprecedented, systematic scheme of making payments on other external indebtedness, after repudiating its payment obligations [on the FAA Bonds], in direct violation of its contractual commitment", and that the Republic had codified in a law known as the "Lock Law" its "intention to defy any money judgment issued by this Court". (Ex. F ¶ 1(b), (c).) This Court affirmed, noting that "this case is an exceptional one" in light of "Argentina's extraordinary behavior", and that the Republic had been "a uniquely recalcitrant debtor". *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 247 (2d Cir. 2013).

6

On October 30, 2015, the district court entered similar injunctions in 49 additional actions (the "Me Too Actions"), finding that "[t]he Republic has done nothing in recent years to alleviate the court's concerns". (Ex. G at 8.) The district court also specifically considered "[t]he Republic's reluctance to entertain meaningful settlement discussions" under the supervision of the court-appointed Special Master. (*Id.* at 10.)

As a result of the Injunctions, the Republic has been effectively cut off from the global capital markets.

### B. The New Government's Efforts to Resolve this Dispute

On November 22, 2015, Argentina elected Mauricio Macri as its new President. President Macri campaigned on a platform of economic reform, and central to his agenda is resolving this litigation and restoring Argentina's access to global capital markets, which, in turn, is needed in order to stimulate Argentina's economy. As the district court explained in its February 19, 2016, Indicative Ruling, "President Macri's election changed everything". (Ex. C at 13.)

Immediately after assuming office on December 10, 2015, the Macri administration initiated settlement discussions with holders of Argentina's defaulted debt, including plaintiffs in the above-captioned appeal, under the supervision of the court-appointed Special Master. On February 3, 2016, the Republic reached settlements in principle with two of the largest bondholders,

7

contemplating payment of over $1 billion in cash. On February 5, the Republic published a proposal to settle with the holders of all outstanding defaulted debt, which, if accepted by plaintiffs in each of the 62 related actions, would result in cash payments of approximately $6.5 billion. By the date of the district court's order, March 2, 2016, the Republic had reached agreements to resolve the vast majority of outstanding claims, including the claims of several of the appellants in the above-captioned appeals. In total, the agreements reached as of February 29, 2016, contemplate cash payments by the Republic of approximately $6.2 billion to plaintiffs in the cases where the district court issued the Injunctions.

As part of his efforts to resolve this dispute, President Macri is asking Congress to repeal legislation, including the Lock Law, that now prevents Argentina from completing the settlements. Moreover, to fund the settlements, the Republic plans to raise money in the global capital markets, and new creditors need to have confidence that, if they finance the settlements, Argentina will not be barred from making payments on the newly issued debt. As a practical matter, Argentina will not be able to issue the contemplated debt to finance these settlements without certainty that the Injunctions will be vacated as a consequence of paying these settlements.

The agreement with the largest group of claimants (the "NML Settlement"), representing more than 65% of the total claims against the Republic,

8

requires that payment be made by April 14, 2016. Those claimants, which include

NML Capital, Aurelius and others, insisted on the right to terminate their

settlement agreement if payment in full—totaling approximately $4.6 billion—is

not made by April 14. Those plaintiffs have threatened that a delay resolving this

litigation could result not only in the termination of their own settlement

agreement, but that it could put "everyone's settlement . . . in jeopardy". (Ex. H

(Tr. of March 1 Hearing) at 22:2-3.) Nevertheless, the alternative schedule they

propose for this appeal threatens to do just that.

### C. The District Court's Order Vacating the Injunctions

On February 11, 2016, the Republic moved in the district court to

vacate the Injunctions pursuant to Federal Rules of Civil Procedure 54(b), 60(b)(5)

and 60(b)(6), and the district court's inherent equitable power. Because the

Republic had a pending appeal in the Me Too Actions (which was subsequently

dismissed), the Republic also sought an Indicative Ruling pursuant to Federal Rule

of Civil Procedure 62.1 stating that, if this Court were to remand the Me Too

Actions for this purpose, the district court would grant the Republic's motion.

Importantly, the Republic did not seek to have the Injunctions vacated

immediately. Rather, the Republic asked that vacatur be subject to the occurrence

of two conditions precedent: repeal of the legislative impediments to payment on

defaulted debt and full payment to any plaintiff that entered into a settlement with

9

the Republic by February 29, 2016. Some bondholders supported the Republic's motion, while others opposed it.

On February 19, 2016, after briefing by both sides, the district court issued an Indicative Ruling stating that it would grant the Republic's motion if this Court were to remand in the Me Too Actions for that purpose. In issuing the Indicative Ruling, the district court found that "[s]ignificantly changed circumstances have rendered the injunctions inequitable and detrimental to the public interest". (Ex. C at 13.)

On February 22, 2016, the Republic moved for a limited remand in the Me Too Actions to allow the district court to grant its motion. At oral argument on February 24, 2016, the Republic agreed to voluntarily dismiss the appeal. The same day, this Court issued an order granting the Republic's motion for voluntary dismissal and remanding the Me Too Actions to the district court. (Ex. A.) This Court's order provided for

> "a stay of up to two weeks of any district court order formalizing the indicative ruling so that parties opposing the order can file a notice of appeal within two business days and seek a further stay of the order from a motions panel of this court pending appeal". (*Id.* at 7.)

The order further provided that "[a]ny such appeals will be consolidated for review by this court". (*Id.*)

10

On March 1, 2016, after additional briefing by the parties, the district court held a hearing at which 15 different attorneys presented argument, both for and against the Republic's motion. Thereafter, on March 2, 2016, the district court issued an order granting the Republic's motion to vacate the Injunctions in all cases. In its opinion and order, the district court noted the "pressing need for certainty and finality" in order for this litigation to be resolved. (Ex. B at 3.) The district court suggested that any "appeals must happen promptly to ensure the . . . existing settlements [] succeed" in resolving the great majority of outstanding claims. (Ex. B at 3.) On March 4, 2016, the Special Master announced settlements with ten additional bondholders. In his public statement, the Special Master expressed that "[i]t is the hope of all concerned that the appeals will be expedited so that there can be clarity as to the finality of the Order". (Ex. I.)

Over the two days following the district court's order, on March 3 and 4, 2016, certain plaintiffs initiated the above-captioned appeals from the district court's order of March 2, 2016. For the reasons set forth below, the Republic now moves for expedited briefing and consideration of those appeals.

## ARGUMENT

### I.     The Court Should Hear and Decide this Appeal on an Expedited Basis.

Under Rule 2 of the Federal Rules of Appellate Procedure, a court of appeals may "suspend any provision of these rules in a particular case and order

proceedings as it directs" in order "to expedite its decision or for other good cause". In addition, Rule 31(a)(2) provides that "[a] court of appeals that routinely considers cases on the merits promptly after the briefs are filed may shorten the time to serve and file briefs, either by local rule or by order in a particular case". There is good cause for expedited briefing and consideration of these appeals.

*First*, the parties need to work quickly to consummate the settlements. Settling bondholders are awaiting payment of more than $6 billion. Most significantly, the Republic's agreement with the largest bondholders, calling for payments of more than $4.5 billion, requires payment in full by April 14, 2016— less than six weeks from today. Those plaintiffs have insisted on the right to terminate their settlement agreement if they have not been paid by that date. Without prompt resolution of these appeals, settlement of the largest claims in this long-running litigation may be in jeopardy.

Plaintiffs' statements on the record before the district court confirm the need for expedited consideration for that reason, and at least some plaintiffs have agreed that expedited proceedings are needed. (Ex. H at 22:1-3 (counsel for NML Capital noting that an appeal that "last[s] for several months" could mean that "everyone's settlement would be in limbo and in jeopardy"); *id.* at 52:7-10 (counsel for NML Capital noting that an appeal could "delay the entire process considerably, and that puts everything at risk"); *see also id.* at 34:17-20 (counsel

12

for nonsettling plaintiffs representing that "for my clients, we are willing to agree right here and now to an expedited briefing schedule in the Second Circuit" so that "the Second Circuit appeal is heard . . . as quickly as possible").

   *Second*, before any settlements can be paid, the Republic must satisfy the court-ordered conditions to vacate the Injunctions, which will involve making significant legislative changes in Argentina and raising of billions of dollars in the capital markets over the course of only a few weeks.  The Argentine Congress reconvened this past Tuesday, March 1, 2016, and President Macri addressed Congress urging a repeal of the Lock Law.  Legislators need to have confidence that passing the legislation proposed by President Macri will bring about a resolution of this dispute.  (*See* Ex. B at 3 (suggesting that plaintiffs should pursue any appeals "promptly" because "[t]he Argentine Congress must know where it stands, and all parties must act diligently to consummate these settlements").)  Similarly, would-be creditors may be unwilling to lend to the Republic if there remains uncertainty as to whether the injunctions will be vacated.  Therefore, to ensure that settlements are paid on time (and, in the case of the NML Settlement, to avoid triggering those plaintiffs' right to terminate that settlement agreement), this appeal needs to be resolved sufficiently in advance of April 14, 2016, for the Republic to raise the funds and effectuate payments.  (*See* Ex. B at 3-4 (suggesting that plaintiffs should expedite any appeals because "[t]he Republic needs time to

13

raise the capital required to pay all plaintiffs with whom it has reached agreement").)

*Third*, this 15-year dispute continues to impose significant burdens on the economic health of the Republic. The Macri administration is working hard to bring about economic improvement. Resolving this dispute—and restoring the Republic's access to the global capital markets—is an important part of those efforts. A prompt resolution of this dispute is needed to avoid further economic harm to the Republic and its people from the continuation of this litigation.

## CONCLUSION

For the foregoing reasons, the Republic respectfully requests that this Court grant its motion for consolidation and expedited proceedings, and that the Court order the following briefing schedule:

Appellants' Brief due March 11, 2016.

Appellee's Brief due March 14, 2016.

Appellants' Reply Brief due March 16, 2016.

The Republic further respectfully requests that this Court schedule oral argument in these appeals at its earliest convenience, preferably on March 17 or 18, 2016, and that the Court thereafter endeavor to issue a decision at its earliest opportunity, no later than March 24, 2016. Finally, in accordance with this Court's order of February 24, 2016, in the appeal captioned *Aurelius Opportunities Fund II, LLC, et*

14

*al. v. Republic of Argentina*, No. 15-1060-cv(L) (Ex. A), the Republic respectfully

requests that any further appeals taken from related cases in the district court be

consolidated with the above-captioned appeal on the same expedited schedule.

March 4, 2016

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

By  *Michael A Paskin*

Daniel Slifkin
Michael A. Paskin
Damaris Hernández
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
mpaskin@cravath.com

*Attorneys for Defendant-Appellee*
*The Republic of Argentina*

15

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| AURELIUS CAPITAL MASTER, LTD. and ACP MASTER, LTD., | |
| Plaintiffs-Appellants, | 16-628-cv |
| - against - | 16-639-cv |
| THE REPUBLIC OF ARGENTINA, | |
| Defendant-Appellee. | |
| NML CAPITAL, LTD., | |
| Plaintiff-Appellant, | 16-644-cv |
| | 16-649-cv |
| - against - | 08 Civ. 6978 (TPG)[1] |
| | 09 Civ. 1708 (TPG) |
| THE REPUBLIC OF ARGENTINA, | 14 Civ. 8988 (TPG) |
| Defendant-Appellee. | *(captions continue on following pages)* |

**DECLARATION OF MICHAEL A. PASKIN IN SUPPORT OF THE REPUBLIC OF ARGENTINA'S EMERGENCY MOTION FOR EXPEDITED APPEAL AND CONSOLIDATION**

---

[1] For cases in which a Notice of Appeal has been filed but no docket number has been assigned yet by this Court, the docket numbers from the United States District Court for the Southern District of New York are listed.

AURELIUS OPPORTUNITIES FUND II, LLC
and AURELIUS CAPITAL MASTER, LTD.,

Plaintiffs-Appellants,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant-Appellee.

16-642-cv
10 Civ. 1602 (TPG)

---

AURELIUS CAPITAL MASTER, LTD. and
AURELIUS OPPORTUNITIES FUND II, LLC,

Plaintiffs-Appellants,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant-Appellee.

10 Civ. 3970 (TPG)
10 Civ. 8339 (TPG)

---

BLUE ANGEL CAPITAL I LLC,

Plaintiff-Appellant,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant-Appellee.

16-651-cv
16-640-cv

ii

OLIFANT FUND, LTD.,

       Plaintiff-Appellant,

   - against -       16-650-cv

THE REPUBLIC OF ARGENTINA,

       Defendant-Appellee.

---

PABLO ALBERTO VARELA, et al.,

       Plaintiffs-Appellants,

   - against -      10 Civ. 5338 (TPG)

THE REPUBLIC OF ARGENTINA,

       Defendant-Appellee.

---

FFI FUND, LTD. and FYI LTD.,

       Plaintiffs-Appellants,

   - against -       16-643-cv

THE REPUBLIC OF ARGENTINA,

       Defendant-Appellee.

PEREZ, *et al.*,

                    Plaintiffs-Appellants,

            - against -              14 Civ. 8242 (TPG)

THE REPUBLIC OF ARGENTINA,

                    Defendant-Appellee.

---

AURELIUS CAPITAL PARTNERS, LP, *et al.*,

                    Plaintiffs-Appellants,

            - against -              14 Civ. 8946 (TPG)

THE REPUBLIC OF ARGENTINA,

                    Defendant-Appellee.

---

BLUE ANGEL CAPITAL I LLC,

                    Plaintiff-Appellant,

            - against -              14 Civ. 8947 (TPG)

THE REPUBLIC OF ARGENTINA,

                    Defendant-Appellee.

ADAMI, *et al.*,

                                    Plaintiffs-Appellants,

                    - against -                   14 Civ. 7739 (TPG)

THE REPUBLIC OF ARGENTINA,

                                    Defendant-Appellee.

---

FOGLIA, *et al.*,

                                    Plaintiffs-Appellants,

                    - against -                   14 Civ. 8243 (TPG)

THE REPUBLIC OF ARGENTINA,

                                      Defendant-Appellee.

---

PONS, *et al.*,

                                    Plaintiffs-Appellants,

                    - against -                   13 Civ. 8887 (TPG)

THE REPUBLIC OF ARGENTINA,

                                      Defendant-Appellee.

GUIBELALDE, *et al.*,

        Plaintiffs-Appellants,

     - against -       11 Civ. 4908 (TPG)

THE REPUBLIC OF ARGENTINA,

        Defendant-Appellee.

DORRA, *et al.*,

        Plaintiffs-Appellants,

     - against -       14 Civ. 10141 (TPG)

THE REPUBLIC OF ARGENTINA,

        Defendant-Appellee.

BELOQUI, *et al.*,

        Plaintiffs-Appellants,

     - against -       14 Civ. 5963 (TPG)

THE REPUBLIC OF ARGENTINA,

        Defendant-Appellee.

TORTUS CAPITAL MASTER FUND, LP,

Plaintiff-Appellant,

- against -

14 Civ. 1109 (TPG)
14 Civ. 3127 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant-Appellee.

TRINITY INVESTMENTS LIMITED,

Plaintiff-Appellant,

- against -

14 Civ. 10016 (TPG)
15 Civ. 1588 (TPG)
15 Civ. 2611 (TPG)
15 Civ. 5886 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant-Appellee.

MCHA HOLDINGS, LLC,

Plaintiff-Appellant,

- against -

14 Civ. 7637 (TPG)
14 Civ. 10064 (TPG)
15 Civ. 2577 (TPG)
15 Civ. 5190 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant-Appellee.

ANDRAREX LTD.,

                                  Plaintiff-Appellant,

            - against -                              14 Civ. 9093 (TPG)

THE REPUBLIC OF ARGENTINA,

                                  Defendant-Appellee.

CLARIDAE, *et al.*,

                                  Plaintiffs-Appellants,

            - against -                              14 Civ. 10201 (TPG)

THE REPUBLIC OF ARGENTINA,

                                  Defendant-Appellee.

ARAG-A LIMITED, *et al.*,

                                  Plaintiffs-Appellants,

            - against -                              14 Civ. 9855 (TPG)

THE REPUBLIC OF ARGENTINA,

                                  Defendant-Appellee.

ATTESTOR MASTER VALUE FUND LP,

                         Plaintiff-Appellant,

               - against -             14 Civ. 5849 (TPG)

THE REPUBLIC OF ARGENTINA,

                        Defendant-Appellee.

ANGULO, *et al.*,

                        Plaintiffs-Appellants,

               - against -             15 Civ. 1470 (TPG)

THE REPUBLIC OF ARGENTINA,

                        Defendant-Appellee.

LAMBERTINI, *et al.*,

                        Plaintiffs-Appellants,

               - against -             15 Civ. 1471 (TPG)

THE REPUBLIC OF ARGENTINA,

                        Defendant-Appellee.

BANCA ARNER S.A., *et al.*,

                Plaintiffs-Appellants,

        - against -                  16-641-cv

THE REPUBLIC OF ARGENTINA,

                Defendant-Appellee.

---

FAZZOLARI, *et al.*,

                Plaintiffs-Appellants,

        - against -          15 Civ. 3523 (TPG)

THE REPUBLIC OF ARGENTINA,

                Defendant-Appellee.

---

STONEHILL INSTITUTIONAL PARTNERS, L.P., *et al.*,

                Plaintiffs-Appellants,

        - against -          15 Civ. 4284 (TPG)

THE REPUBLIC OF ARGENTINA,

                Defendant-Appellee.

x

WHITE HAWTHORNE, LLC,

                    Plaintiff-Appellant,

        - against -                  15 Civ. 4767 (TPG)

THE REPUBLIC OF ARGENTINA,

                    Defendant-Appellee.

BYBROOK CAPITAL MASTER FUND LP,
*et al.*,

                    Plaintiffs-Appellants,

        - against -               15 Civ. 7367 (TPG)
                                 15 Civ. 2369 (TPG)

THE REPUBLIC OF ARGENTINA,

                    Defendant-Appellee.

**DECLARATION OF MICHAEL A. PASKIN IN SUPPORT OF THE REPUBLIC OF ARGENTINA'S EMERGENCY MOTION FOR EXPEDITED APPEAL AND CONSOLIDATION**

Michael A. Paskin hereby declares as follows:

1.      I am a member of the Bar of this Court and a partner at the law firm of Cravath, Swaine & Moore LLP, counsel to defendant-appellee the Republic of Argentina (the "Republic") in the above-captioned appeals.

1

2.     I make this Declaration in support of the Republic of Argentina's Emergency Motion for Expedited Appeal and Consolidation.

3.     Attached as Exhibit A is a true and correct copy of the Order entered by this court on February 24, 2016, in the appeals docketed at 15-1060-cv(L) and 15-3675-cv(L).

4.     Attached as Exhibit B is a true and correct copy of the Opinion and Order that is the subject of the above-captioned appeals, which was issued by the district court on March 2, 2016.

5.     Attached as Exhibit C is a true and correct copy of the Indicative Ruling entered by the district court on February 19, 2016.

6.     Attached as Exhibit D is a true and correct copy of the 1994 Fiscal Agency Agreement ("FAA").

7.     Attached as Exhibit E is a true and correct copy of the Order entered by the district court on December 7, 2011, in *NML Capital, Ltd. v. Republic of Argentina*, Nos. 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG), and 09 Civ. 1708 (TPG) (the "NML *Pari Passu* Actions").

8.     Attached as Exhibit F is a true and correct copy of the district court's Order dated February 23, 2012, in the NML *Pari Passu* Actions.

9.     Attached as Exhibit G is a true and correct copy of

Opinion and Order entered by the district court on October 30, 2015, in the

Me Too Actions.[2]

10.     Attached as Exhibit H is a true and correct copy of the

transcript of the hearing held before the district court in this litigation on

March 1, 2016.

11.     Attached as Exhibit I is a true and correct copy of the

Statement of Daniel A. Pollack, Court-Appointed Special Master, dated

March 4, 2016.

I declare under penalty of perjury that the foregoing is true and

correct.

Executed on March 4, 2016.

*Michael A. Paskin*

Michael A. Paskin

---

[2] The Me Too Actions are docketed at 14 Civ. 8601 (TPG); 14 Civ. 8988 (TPG); 14 Civ. 8630 (TPG);
14 Civ. 8242 (TPG); 14 Civ. 8946 (TPG); 14 Civ. 8947 (TPG); 14 Civ. 8303 (TPG); 14 Civ. 4092 (TPG);
14 Civ. 4091 (TPG); 14 Civ. 8739 (TPG); 14 Civ. 7258 (TPG); 14 Civ. 7739 (TPG); 15 Civ. 710 (TPG);
14 Civ. 8243 (TPG); 13 Civ. 8887 (TPG); 11 Civ. 4908 (TPG); 14 Civ. 10141 (TPG); 14 Civ. 5963 (TPG);
14 Civ. 1109 (TPG); 14 Civ. 3127 (TPG); 14 Civ. 10016 (TPG); 14 Civ. 7171 (TPG); 14 Civ. 7169 (TPG);
14 Civ. 7164 (TPG); 14 Civ. 7166 (TPG); 14 Civ. 7637 (TPG); 14 Civ. 10064 (TPG); 14 Civ. 9093 (TPG);
14 Civ. 10201 (TPG); 14 Civ. 9855 (TPG); 14 Civ. 5849 (TPG); 15 Civ. 1470 (TPG); 15 Civ. 1471 (TPG);
15 Civ. 1553 (TPG); 15 Civ. 1588 (TPG); 15 Civ. 1508 (TPG); 15 Civ. 2611 (TPG); 15 Civ. 5886 (TPG);
15 Civ. 2577 (TPG); 15 Civ. 5190 (TPG); 15 Civ. 4654 (TPG); 15 Civ. 3523 (TPG); 15 Civ. 4284 (TPG);
15 Civ. 4767 (TPG); 11 Civ. 8817 (TPG); 15 Civ. 6702 (TPG); 15 Civ. 3932 (TPG); 15 Civ. 7367 (TPG);
and 15 Civ. 2369 (TPG).

# Exhibit A

S.D.N.Y.
10-cv-1602 *and related*
Griesa, J.

# United States Court of Appeals

FOR THE
SECOND CIRCUIT

────────────

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of February, two thousand sixteen.

Present:
John M. Walker, Jr.,
Reena Raggi,
Peter W. Hall,
*Circuit Judges*.

────────────────────────────────

Aurelius Opportunities Fund II, LLC, Aurelius Capital Master, Ltd., Pablo Alberto Varela, Lila Ines Burgueno, Mirta Susana Dieguez, Maria Evangelina Carballo, Leandro Daniel Pomilio, Susana Aquerreta, Maria Elena Corral, Teresa Munoz De Corral, Carmen Irma Lavorato, Norma Elsa Lavorato, Cesar Ruben Vazquez, Norma Haydee Gines, Marta Azucena Vazquez, NML Capital, Ltd., Olifant Fund, Limited, ACP Master, Ltd., Blue Angel Capital I LLC,

*Plaintiffs-Appellees*,

v.                                                                    15-1060-cv(L)

Republic of Argentina,

*Defendant-Appellant*.

────────────────────────────────

────────────────────────────────

NML Capital, Ltd., VR Global Partners, L.P., Ricardo Pons, Ofelia Nelida Garcia, NW Global Strategy, Graziano Adami, Gianfranco Agostini, Milena Ampalla, Allan Applestein TTEE FBO DCA Grantor Trust, Augusto Arcangeli De Felicis, Antonella Bacchiocchi, Alberto Baciucco, Otello Baciucco, Filippo Bagolin, Sara Bartolozzi, Anneliese Gunda Becker, Serenella Belleggia, Giorgio Bennati, Roberto Berardocco, Graziella Berchi, Orsolina Berra, Adriano Bettinelli, Massimo Bettoni, Stefano Bistagnino, Giorgio Bistagnino, Graziella

Bonadiman, Andrea Bonazzi, Stefania Bonpensiere, Marco Borgra, Sergio Borgra, Renata Boscariol, Emanuele Botti, Carlo Bretti, Susanna Bretti, Antonietta Guiseppina Brioschi, Marcello Calanca, Bruno Calmasini, Italia Camato, Giuseppina Capezzera, Laura Anna Capurro, Vincenzo Carbone, Carifin S.A., Giovanni Carlotta, Elettra Casalini, Diego Castagna, Marco Cavalli, Carmelina Censi, Gian Francesco Cercato, Alberto Compare, Giovanna Connena, Agostino Consolini, Cesarino Consolini, Maria Luigia Conti, Silvana Corato, Giancarlo Bartolomei Corsi, Francesco Corso, Giuseppina Corso, Laura Cosci, Angelo Cottoni, Monica Crozzoletto, Graziella DaCroce, Tarcisia Dalbosco, Aldo David, Antonio De Francesco, Antonella De Rosa Kunderfranco, Manuela De Rosa Kunderfranco, Eufrosina De Stefano, Adriana Dell'Era, Carlo Farioli, Anna Ferri, Giovanna Ferro, Francesco Foggiato, Donatella Zanotti Fragonara, Rinaldo Frisinghelli, Angiolino Fusato, Gabriele Fusato, Felicina Gaioli, Maddalena Gaioli, Gian Carlo Ganapini, Francesco Mauro Ghezzi, Mario Giacometti, Giovanni Giardina, Celestino Goglia, Giulia Greggio, Verna Gualandi, Luisella Guardincerri, Gianfranco Guarini, Raimondo Iallonardo, Innovamedica S.P.A., FKA MATIVA S.R.I., Maritza Lenti, Angelo Leoni, Paolo Lisi, Ugo Lorenzi, Sergio Lovati, Fernanda Angela Lovero, Carmelo Maio, Claudio Mangano, Elide Margnelli, Carla Marini De Felicis Arcangli, Romano Marton, Mirco Masina, Guglielmina Massara, Bruna Mattioli, Salvatore Melchionda, Masina Mirco, Simonetta Montanari, Giampaolo Montino, Carla Morata, Alessandro Morata, Maria Rita Moretto, Amato Mori, Rachele Bontempi, Bruno Pappacoda, Sabrina Parodi, Alfredo Pelli, Franco Pezze, Valerio Piacenza, Peri Luigi Lucibello Piani, Eugenia Re, Aleessandra Regoli, Barbara Ricchi, Maria Robbiati, Paola Rosa, Adriano Rosato, Giuseppe Silvio Rossini, Laura Rossini, Raffaele Rossini, Ruggero Rossini, Ines Rota, Hilda Rupprecht, Vincenza Sabatelli, Angelina Salmistraro, Tiziano Sasselli, Marinella Scalvi, Maurizio Sergi, Simona Staccioli, Licia Stampfli-Rosa, Sante Stefani, Anna Storchi, Studio Legale Bennati, Renate Tielman, Manuelito Toso, Valeria Toso, Franco Trentin, Stefania Trentin, Martino Verna, Mario Vicini, Luca Vitali, Vito Zancaner, Giovanni Zanichelli, Matteo Zanichelli, Arag-A Limited, Arag-O Limited, Arag-T Limited, Arag-V Limited, Montreux Partners, L.P., Capital Ventures International, Tortus Capital Master Fund, LP, Jose Pedro Angulo, Pedro Timoteo Angulo, Claren Corporation, Fernando Crostelli, Juan Carlos Crostelli, Martina Crostelli, Viviana Crostelli, Patricio Hansen, Armando Ruben Fazzolari, Julio Roberto Perez, EM Ltd., Old Castle Holdings

2

Ltd., Attestor Master Value Fund LP, MCHA Holdings, LLC, Andrarex, Ltd., Trinity Investments Limited, Procella Holdings, L.P., Stonehill Institutional Partners, LP, Stonehill Master Fund Ltd., Blue Angel Capital I LLC, FFI Fund, Ltd., FYI Ltd., Aurelius Capital Partners, LP, Aurelius Capital Master, Ltd., Virgilio Luis Foglia, Maria Cristina Argent Barna, Ricardo Aurelio Triay, Adela Noemi Juri, Maximo Dorra, Olga De Dorra, Raul Rennella, Sandra Elizabeth Schuler, Angel Emilio Molinos, White Hawthorne, LLC, Banca Arner S.A., Brantford Holding S.A., Horacio Guibelalde, Marta Mabel Folgado, Wilton Capital, Ana Zemborain Zemborain, Miguel Angel Beloqui, Los Angeles Capital, Claridae Ltd, Maria Del Pilar De We Ferrer, Honero Fund I, LLC, Egar Ramon Lambertini, Ana Doratelli, Juana Bonaiuti, Scoggin Capital Management II LLC, Scoggin International Fund Ltd., Scoggin WorldWide Fund Ltd., Capital Markets Financial Services, Inc., Clarex Limited, Fiscella Holdings Limited, Bybrook Capital Master Fund LP, Bybrook Capital Hazelton Master Fund LP, Bybrook Capital Hazelton Master, Paolo Ercolani, Paola Aiello, Lightwater Corporation Limited, Rafael Settin, Cordoba Capital, Hector Perez, Marland International S.A., Lis Carina Medina, M. Alejandra Terra Risso, Witkron S.A., Golsun S.A., Juan Alberto Jose, Jose Luis Quatrini, Mario Alberto Ruiz, Farigold Trade S.A., Claudio Martinez, Francisco de Gamboa, Silvia Alcira Murillo de Gebert, Enrique Antonio Julio Gebert, Laynel Corporation, Livio Mazzola, Bradford Promotions S.A., Hamburg Consulting Inc., Pierino Garrafa, Carlos Jesus Sendin, Eduardo Gibson, Francisco Basso, Franca Antonione, Florencio Perez, Juan Carlos Greco, Ramon Zubielqui, Gellxon Corp., Enrique Cohen, Maria Isabel Berraondo, Graciela Zubasti, Adolfo Sanchez Blanco, Rafael Antonio Salamanca, Kinburg Trust S.A., Mazzini, Jorge Marcelo, Graciela Alejandra, Compania Calitecno S.A., Zum Felde, Heinrich Peter Baravalle, Ana Valeria, Alejandro Pablo Baravalle, Ezequiel Hernan Baclini, Patricia Ruth Caronna, Jose Alberto Landi, Salvador Saddemi, Maria Teresa Lepone, Hernan Taboada, Susana Frasca De Lauria, Norberto Pablo Giudice, Susana Lauria, Guillermo Dotto, Jorge Manuel Taboada, Maria Del Carmen Escudero, Eduardo Andres Francheschi,

*Plaintiffs-Appellees*,

Rosas De Cohen, Estrella Bety, Corbins Trade S.A., Luigi Giacomazzi, Luciana Pedrolli, Patrizia Giacomazzi, Michele Stagnitto, Claudio Miguel Matheou, Hugo Masini, Viviana Noemi Tuoron, Guillermo Jorge Domato, Imperial Bylidol S.A.,

3

Dario Alberto Pardal, Paula Mastronardi, Horacio Alberto Vazquez, Liliana Cebrowski, Diego Pedro Peluffo, Juan Omar Giovachini, Lilia Angelica Parisi, Tralove Company S.A., Maura Maletti, Graciela Adriana Gamito, Adrian Caleffa, Guillermo Almanza, Felicitas C. Von Gromann, Roberto Virgilio Sauro, Rita Leso, Rodolfo Alberto Gil, Vicencio, Vivian Oriana Vicencio Saavedra, Felicitas Florencia Fox Anasagasti, Francisco Eduardo De La Merced, Isabel Evangelina Bavassi, Makapyan S.R.L., Francisco Jose Mechura, Graciela Donnantuoni, Bernardo G. Ferman, Francaise Compagnie, D'Investissements S.A., Maria Susana Pagano, Carlos Alberto Lagos, Julio Hector Krasuk, Mazoral S.A., Miguel Limoli, Lucio Ramon Mur, Jesus Jorge Otani, Alejandro Enrique Fernandez, Guido Debiasi, Attilio De Rosa, Manuel G. Guillen, Beatriz M. Castano, Monica Haydee Graciotti, Lisandro Roberto Arturo Mora, Abel Vicente Santana, Maria Claudia Mangialavori, Horacio Alberto M. Sanc Caballero, Ricardo Sanchez Caballero, Elisa Sanchez Caballero, First City S.A., Jorge Joracio Rosini, Alicia Ester Salvador, Dolly Esther Cubasso, Santa Sorrentino, Rodolfo Burul, Lydia Haydee Gigaglia, Ansgar Neuenhofer, Dora Raquel Malec, Claudio Oscar Mazza, Adriana Beatriz Poveda, Alberto Silvio Bursztyn, Andrea Fabiana Fucito, Maria Del Las Mercede Lagos, Maurizio Giove, Guillermo Carlos F. Centeno, Carlos Alberto Muraca, Patrizia Valeri, Andrea Ronzon, Silva Falomo, Vittorio Giannattasio, Monica Giannattasio, Marcelo Eduardo Prima, Susana Molina Gowland, Thea Pina Gorgone, Alessandra Padoan, Pierluigi Padoan, Gloria Padoan, Luigi Padoan, Massimiliano Mazzanti, Manuela Mazzanti, Giuseppina Fuschini, Marta Guerrini, Corrado Guerrini, Stefania Simoncini, Luigi Paciello, Lerinerco S.A., Aurelio Pesenti, Arnoldo Dolecetti, Tellade Nava, Tommasino Vitiello, Gabrielle Dolcetti, Guiseppe Dolcetti, Pablo Hugo Kalbermann, Eva Sondermann Geller, Pedro Kalbermann, Inter Palmisano S.A., Dora Raquel Malec, Andrea Susana Bursztyn, Alfredo Pacheco, Frances Brown, Jose Antonio Muschietti, Adolfo Miguel Muschietti, Maria Cristina Buenano, Rodrigo Felipe Muschietto, Alejandro Federico Muschietti, Nelson Dante Luciano, Dante Luciano, Mercedes Feliu, David Adrian Luciano, Oscar Paul Clavijo, Ana Maria Aurora Otero, Carlos Alberto Bruzzone, Pedro Kalbermann, Eva Sondermann, Colombo Masi, Maria Elena Pelayo, Luis Pedro Bivort, Valentina Etchart, Maria Fausta Cilli, Fiorenzo Faccioni, Leonardo Hilario Simone, Carlos Arturo Jose Ulla, Patricia Storari, Decio Carlos Francisc Ulla, Oscar Secco, Mercedes Calvo, Delfin A. Rabinovich, Elvira Dagmar Buzcat, Leonidas Raul Bordigoni, Alejandro Fernandez

4

Barbeito, Ramon Barbeito, Lidia Fernandez de Barbeito, Manuel
Calvo, Mercedes Calvo, Alcira Noemi Arditi, Claudio Gabriel
Arditi, Fernando Barbeito Fernandez, Sandro Concettini, Maria
Asuncion Inmacu Castelli, Josefa Ambroselli, Roberto Carlos
Parada, Rosa Sara Pompeya La De Parada, Guillermo Pedro
Parada, Mariano Roberto Parada, Alicia G. De Sondermann,
Susana Sondermann, Ricardo Sondermann, Paula Armanda
Azcarate, Edith Elvira Nicolas, Fiseico, Financial Services
International Corporation, Ensenada United Corporation, Lorenzo
Bianchi, Giordano Allievi, Gabriella Toscano, Ambrogio Stucchi,
Giuseppe Stucchi, Maria Luisa Stucchi, Moreno Legnaro, Mario
Dal Toe, Davide Ciallella, Bramante Dal Toe, Lucia Vettoretti,
Aldo Naj Oleari, Maria Ida Modena, Ada Dal Trozzo, Luis Garcia
Tobio, Antonia Mirian Maciel, Kazimierz Kornas, Agostino
Scocchera, Marcelo Spiller, Romina Maria Buscaglia, Nora
Raquel Lopez, Gabriel Miguel, Ramon Miguel, Marcos Vanni,
Ana Antonia Cabrera, Terenciano De Jesus Cabrera, Carlos
Alberto Martinez, Monica Cristina Barbero, Sidney Sutter,
Eduardo Argentieri, Carlos Adolfo Escati, Armando Eduardo
Valerio, Mirta Antonia Portela, Roque Perez Villalbia, Gabriel
Fedrico Leimgruber, Laura Victoria Demidovich, Alejandro
Demidovich, Diego Walter Castrilli, Daniel Horacio Rolfo, Alicia
Evelia Galiani, Silvia Mabel Saccone, Marcelo Ruben Rigueiro,
Alfredo Enrique Zucchini, Nestor De Nicola, Graciela Marta
Berretti, Paula De Nicola, Santiago Rocca, Ana Maria Saldana,
Enrique Jorge Rocca, Josef Schwald, Denise Marie Laurette
Colella, Michelle Colella, Susana Leonor Gatti, Marta Beatriz
Gatti, Maria Agustina Sauco, Maria Griselda Sauco, Maria
Florencia Sauco, Osvaldo Lorenzo Sauco, Angela Busi, Ramon
Eduardo Nebhen, Ana Cecilia Albornoz, Bruno Italia, Ruben
Ubaldo Di Marco, Maria Lucrecia Quiroga, Jorge Alberto Atilio
Negri, Nicolas Carlos Amador Farinola, Jorge Corado Farinola,
Renate Arnold, Irma Haydee Redondo De Negri, Massimo
Baldari, Lillina Rosso, Delia Isabel Gonzalez, Mariana Gonzalez,
Roberto Fedecostante, Dina Di Tommaso, Brigida Elvira Denis,
Vilma Burgio, Naiby Eliana Soria, Maria Marta De Luca,
Alexander Stern, Nelida Amelia Giusti de Behar, Ingeborg Stern,
Sergio Rodolfo Berri, Stella Maris Boffelli, Malcolm Gerald
Berri, Nelida Rosa Paolini, Franco Maria Conte, Lina Lo Vullo,
Francesco Massoletti, Diana Klein, Ferismar Corp. S.A., Carlos
A. Rial Coto, Maria C. Ungaro Torrado, County Bay Investments
Ltd., Ghibli Investments Ltd., Silvio Eduardo Sauco, Miguel
Kaufmann, Edgardo A. Ramos, Rivka Schmuskovits De Schuster,
Nicolas Schuster, Flavia Marina Schuster, Beatriz Leonor De

Ramos, Jorg Zahn, Elena Pasquali, Portico Capital Inc., Hartmut Peters, Sabine Zahn, Wolfgang Bolland, Bliway International S.A., Ricardo Kaufmann, Miguel Angel Bitto, Maria Silvia Cinquemani, Eugenio Quartrini, Olga Alba Marini, Sebastian Quatrini, Pedro Marcelo Sexe, Samuel Oldak, Anna Oldak, David Oldak, Uri Oldak, Telincor S.A., Socrate Pasquali, Anna Maria Carducci, Norfolk Investment Trade Co. Ltd., Gametown Corporation, Norberto Angel Garcia Madeo, Ana Maria Saenz, Graciela Candida Corleis Saenz, Wege Zu Mozart Veranstaltungsgesekkschaft m.b.H, Boim S.A., Stefano Spanicciati, Nestor Alberto Rubin, Andreas Wilfred Schwald, Antonio Juan Pauletich, Fabian E. Pauletich, Franco Peruz, Norberto Dario Castella, Street Investments Limited, Guido Scanavino, Lydia Scanavino, Giancarlo Grassi, Hendrik Beyer, Edgardo Gerardo A. Sclafani, Lucia Rafaela Tasso, Alexia Brandes, Fernando Exposito, Mara Cavana, Maurizio Dalla, Renato Palladini, Andrea Vignali, Fincompany S.A., Gloria Gaggiolo, Valerio Chiriatti, Simonetta Buccioli, Attilio Gaudenzi, Loris Zavoli, Elena Marcaccini, Ildebrando Motti, Tullia Turchi, Carlo Cigolini, Juan Eduardo Columbo, Estela Isabel Delgado, Carla Nanni, Maurizio Petroni, Roberto Akman, Liliana Edith Genni, Arnoldo Dolcetti, Marcella Dolcetti, Luca Mulazzani, Roberto Bautista Franco Baccanelli, Alfredo Carlos Alzaga, Miguel Alberto Balestrini, Bibiana Della Flora, Maria Isabel Balestrini, Mariana Noemi Tauss, Alejandro R. Luppi, Atilio Luis Pocosgnich, Beatriz Marti Reta, Horacio Tomas Liendo, Luciana Ceredi, Alesia Milanesi, Peng Zeying, Woon Cheung Leung, Raul Alejandro Gonza Martin, Gustavo Carlos Ferreira, Jose Emilio Cartana, Raul Horacio Mendez, Maria Mercedes Mendez Ferro, Roberto Claudio Pitrona Elle, Alberto Guillermo Hillcoat, Elena Graciela Martinez, Enrique Sebastian Palac Minetti, Sebastian Jorge Palacio, Maria Esther Ferrer, AJU S.A., Casimiro Kornas, Michael Heeb, Lidia Florinda Pioli, Ana Lidia Leivas, Juan Domingo Balestrelli, Gunther Braun, HWB Alexandra Strategies Portfolio, NW Global Strategy, Victoria Strategies Portfolio Ltd., HWB Victoria Strategies Portfolio, HWB Portfolio Plus, Cesare De Juliis, Mirta Beatriz Mandolino, Eduardo Hector Sorroche, Veronica Sorroche, Christa Erb, Rudolf Erb, Silvia Beatriz Ovejero, David De Lafuente, Jose L. Peluso, HWB Alexandria Strategies Portfolio, Zylberberg Fein LLC, U.V.A. Vaduz, Klaus Bohrer, Amber Reed Corp., Consultora Kilser S.A., Burghard Piltz, Michael Schmidt, Marie Laurette Dussault, Ute Kantner, Oscar Reinaldo Carabajal, Dora Luisa Sasal, Alejandro Alberto Etcheto, Susana Alicia Monkes, Alberto Haber, Helmut

6

Hagemann, Crista Irene Brandes, Francisco Miguel Molinari, Rosa Delfina Castro, HWB Dachfonds-Venividivici, HWB Gold & Silber Plus, Drawrah Limited, Gametown Corporation S.A., Cristoph Hagemann, Anye Salinovich, Michele Colella, Denise Dussault, Vanina Andrea Exposito,

       *Plaintiffs*,

      v.              15-3675-cv(L)

Republic of Argentina,

       *Defendant-Appellant*.

_____

The Republic of Argentina has moved to dismiss with prejudice all of the appeals consolidated respectively under 15-1060(L) and 15-3675(L) in order to allow the district court, upon motion, to enter the order indicated in its indicative ruling of February 19, 2016. Plaintiffs-appellees in 15-3675(L) have moved to refer certain motions on that docket to this panel. Following review of the parties' submissions in support of and opposition to dismissal and referral, as well as oral argument, the motion to refer appellant's motion for remand is GRANTED, but that motion for remand is now reviewed as a motion to dismiss with prejudice consistent with Argentina's amendment at argument. The two pending motions to dismiss with prejudice are GRANTED pursuant to the parties' agreement, confirmed in open court, as follows:

1.  Before the indicative ruling is formally entered as an order, Argentina will file a motion in the district court seeking such relief, giving notice of the motion to all parties, and affording them an opportunity to be heard in the district court.

2.  Argentina agrees to a stay of up to two weeks of any district court order formalizing the indicative ruling so that parties opposing the order can file a notice of appeal within two business days and seek a further stay of the order from a motions panel of this court pending appeal. Any such appeals will be consolidated for review by this court, and any party seeking a stay is hereby excused from further requirements of Fed. R. App. P. 8.

Jurisdiction over these cases is hereby returned to the district court with the parties' agreement to the aforestated conditions, which contemplate that the district court will enter no order formalizing its indicative ruling except on a motion from Argentina, with notice to all parties and an opportunity to be heard, and that any order will be stayed for up to two weeks.

All other pending motions on both dockets are hereby DENIED as moot.

         FOR THE COURT:
         Catherine O'Hagan Wolfe, Clerk of Court

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x

NML CAPITAL, LTD.,

                                       Plaintiff,

               v.

THE REPUBLIC OF ARGENTINA,

                                     Defendant.

------------------------------------------------- x

            08-cv-6978 (TPG)
            09-cv-1707 (TPG)
            09-cv-1708 (TPG)
            14-cv-8601 (TPG)
            14-cv-8988 (TPG)

AURELIUS CAPITAL PARTNERS, LP, et al.,

                                   Plaintiffs,

               v.

THE REPUBLIC OF ARGENTINA,

                                     Defendant.

------------------------------------------------- x

            09-cv-8757 (TPG)
            09-cv-10620 (TPG)
            10-cv-1602 (TPG)
            10-cv-3507 (TPG)
            10-cv-3970 (TPG)
            10-cv-8339 (TPG)
            14-cv-8946 (TPG)

BLUE ANGEL CAPITAL I LLC,

                                     Plaintiff,

               v.

THE REPUBLIC OF ARGENTINA,

                                     Defendant.

------------------------------------------------- x

            10-cv-4101 (TPG)
            10-cv-4782 (TPG)
            14-cv-8947 (TPG)

*(captions continue on following pages)*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/2/2016

**OPINION AND ORDER**

```
--------------------------------------------------  x
OLIFANT FUND, LTD.,                                  :
                                                     :
                         Plaintiff,                  :
                                                     :
              v.                                     :      10-cv-9587 (TPG)
                                                     :
THE REPUBLIC OF ARGENTINA,                           :
                                                     :
                         Defendant.                  :
--------------------------------------------------  x
                                                     :
VARELA, et al.,                                      :
                                                     :
                         Plaintiffs,                 :
                                                     :
              v.                                     :
                                                     :      10-cv-5338 (TPG)
THE REPUBLIC OF ARGENTINA,                           :
                                                     :
                         Defendant.                  :
                                                     :
--------------------------------------------------  x
FFI FUND, LTD. and FYI LTD.,                         :
                                                     :
                         Plaintiffs,                 :
                                                     :
              v.                                     :
                                                     :      14-cv-8630 (TPG)
THE REPUBLIC OF ARGENTINA,                           :
                                                     :
                         Defendant.                  :
--------------------------------------------------  x
EM LTD.,                                             :
                                                     :
                         Plaintiff,                  :
                                                     :
              v.                                     :
                                                     :      14-cv-8303 (TPG)
THE REPUBLIC OF ARGENTINA,                           :
                                                     :
                         Defendant.                  :
--------------------------------------------------  x
```

```
------------------------------------------------  x
                                                  :
PEREZ, et al.,                                    :
                                                  :
                          Plaintiffs,             :
                                                  :
            v.                                    :
                                                  :    14-cv-8242 (TPG)
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                          Defendant.              :
                                                  :
------------------------------------------------  x
                                                  :
LIGHTWATER CORP. LTD.,                            :
                                                  :
                          Plaintiff,              :
                                                  :
            v.                                    :
                                                  :    14-cv-4092 (TPG)
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                          Defendant.              :
                                                  :
------------------------------------------------  x
                                                  :
OLD CASTLE HOLDINGS, LTD.,                        :
                                                  :
                          Plaintiff,              :
                                                  :
            v.                                    :
                                                  :    14-cv-4091 (TPG)
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                          Defendant.              :
                                                  :
------------------------------------------------  x
                                                  :
CAPITAL VENTURES INTERNATIONAL,                   :
                                                  :
                          Plaintiff,              :
                                                  :
            v.                                    :
                                                  :    14-cv-7258 (TPG)
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                          Defendant.              :
                                                  :
------------------------------------------------  x
```

```
--------------------------------------------------  x
                                                    :
TRINITY INVESTMENTS LIMITED,                        :
                                                    :
                    Plaintiff,                      :
                                                    :     14-cv-10016 (TPG)
          v.                                        :     15-cv-1588 (TPG)
                                                    :     15-cv-2611 (TPG)
THE REPUBLIC OF ARGENTINA,                          :     15-cv-5886 (TPG)
                                                    :
                    Defendant.                      :
                                                    :
--------------------------------------------------  x
                                                    :
MCHA HOLDINGS, LLC,                                 :
                                                    :
                    Plaintiff,                      :
                                                    :     14-cv-10064 (TPG)
          v.                                        :     14-cv-7637 (TPG)
                                                    :     15-cv-2577 (TPG)
THE REPUBLIC OF ARGENTINA,                          :     15-cv-5190 (TPG)
                                                    :
                    Defendant.                      :
                                                    :
--------------------------------------------------  x
SETTIN,                                             :
                                                    :
                    Plaintiff,                      :
                                                    :
                                                    :
          v.                                        :
                                                    :     14-cv-8739 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                    Defendant.                      :
                                                    :
--------------------------------------------------  x
PROCELLA HOLDINGS, L.P.,                            :
                                                    :
                    Plaintiff,                      :
                                                    :
                                                    :
          v.                                        :
                                                    :     15-cv-3932 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                    Defendant.                      :
                                                    :
--------------------------------------------------  x
```

```
-------------------------------------------------  x
ADAMI, et al.,                                      :
                                                    :
                          Plaintiffs,               :
                                                    :
              v.                                     :      14-cv-7739 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                          Defendant.                :
-------------------------------------------------  :
                                                    x
CAPITAL MARKETS FINANCIAL SERVICES                  :
INC., et al.,                                       :
                                                    :
                          Plaintiffs,               :
                                                    :
              v.                                     :      15-cv-0710 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                          Defendant.                :
-------------------------------------------------  x
FOGLIA, et al.,                                     :
                                                    :
                          Plaintiffs,               :
                                                    :
              v.                                     :      14-cv-8243 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                          Defendant.                :
-------------------------------------------------  x
PONS, et al.,                                       :
                                                    :
                          Plaintiffs,               :
                                                    :
              v.                                     :      13-cv-8887 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                          Defendant.                :
-------------------------------------------------  x
```

```
-------------------------------------------------- x
GUIBELALDE, et al.,                                :
                                                   :
                               Plaintiffs,         :
                                                   :
                  v.                               :   11-cv-4908 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                               Defendant.          :
-------------------------------------------------- x
                                                   :
DORRA, et al.,                                     :
                                                   :
                               Plaintiffs,         :
                                                   :
                  v.                               :   14-cv-10141 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                               Defendant.          :
-------------------------------------------------- x
                                                   :
BELOQUI, et al.,                                   :
                                                   :
                               Plaintiffs,         :
                                                   :
                  v.                               :   14-cv-5963 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                               Defendant.          :
-------------------------------------------------- x
TORTUS CAPITAL MASTER FUND, LP,                    :
                                                   :
                               Plaintiff,          :
                                                   :
                  v.                               :   14-cv-1109 (TPG)
                                                   :   14-cv-3127 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                               Defendant.          :
-------------------------------------------------- x
```

```
-------------------------------------------------  x
ANDRAREX LTD.,                                      :
                                                    :
                         Plaintiff,                 :
                                                    :
            v.                                      :          14-cv-9093 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                         Defendant.                 :
-------------------------------------------------  :
                                                    x
CLARIDAE, et al.,                                   :
                                                    :
                         Plaintiffs,                :
                                                    :
            v.                                      :
                                                    :          14-cv-10201 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                         Defendant.                 :
                                                    :
-------------------------------------------------  x
MONTREUX PARTNERS, L.P.,                            :
                                                    :
                         Plaintiff,                 :
                                                    :
            v.                                      :
                                                    :          14-cv-7171 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                         Defendant.                 :
-------------------------------------------------  x
LOS ANGELES CAPITAL,                                :
                                                    :
                         Plaintiff,                 :
                                                    :
            v.                                      :
                                                    :          14-cv-7169 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                         Defendant.                 :
-------------------------------------------------  x
```

```
-------------------------------------------------  x
CORDOBA CAPITAL,                                    :
                                                    :
                              Plaintiff,            :
                                                    :
                  v.                                :
                                                    :      14-cv-7164 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                              Defendant.            :
-------------------------------------------------  :
                                                    x
WILTON CAPITAL, LTD.,                               :
                                                    :
                              Plaintiff,            :
                                                    :
                  v.                                :
                                                    :      14-cv-7166 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                              Defendant.            :
-------------------------------------------------  :
                                                    x
ARAG-A LIMITED, et al.,                             :
                                                    :
                              Plaintiffs,           :
                                                    :
                  v.                                :
                                                    :      14-cv-9855 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                              Defendant.            :
-------------------------------------------------  :
                                                    x
ATTESTOR MASTER VALUE FUND LP,                      :
                                                    :
                              Plaintiff,            :
                                                    :
                  v.                                :
                                                    :      14-cv-5849 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                              Defendant.            :
-------------------------------------------------  x
```

```
----------------------------------------------  x
                                                 :
ANGULO, et al.,                                  :
                                                 :
                         Plaintiffs,             :
                                                 :
            v.                                   :    15-cv-1470 (TPG)
                                                 :
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                         Defendant.              :
----------------------------------------------  x
                                                 :
LAMBERTINI, et al.,                              :
                                                 :
                         Plaintiffs,             :
                                                 :
            v.                                   :
                                                 :    15-cv-1471 (TPG)
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                         Defendant.              :
----------------------------------------------  x
                                                 :
HONERO FUND I, LLC,                              :
                                                 :
                         Plaintiff,              :
                                                 :
            v.                                   :    15-cv-6702 (TPG)
                                                 :    15-cv-1553 (TPG)
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                         Defendant.              :
----------------------------------------------  x
                                                 :
BANCA ARNER S.A., et al.,                        :
                                                 :
                         Plaintiffs,             :
                                                 :
            v.                                   :
                                                 :    15-cv-1508 (TPG)
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                         Defendant.              :
----------------------------------------------  x
```

```
---------------------------------------------------  x
WHITE HAWTHORNE, LLC,                                :
                                                     :
                      Plaintiff,                     :
                                                     :
                v.                                   :    15-cv-4767 (TPG)
                                                     :
THE REPUBLIC OF ARGENTINA,                           :
                                                     :
                      Defendant.                     :
                                                     :
---------------------------------------------------  x
ERCOLANI, et al.,                                    :
                                                     :
                      Plaintiffs,                    :
                                                     :
                v.                                   :    15-cv-4654 (TPG)
                                                     :
THE REPUBLIC OF ARGENTINA,                           :
                                                     :
                      Defendant.                     :
                                                     :
---------------------------------------------------  x
FAZZOLARI, et al.,                                   :
                                                     :
                      Plaintiffs,                    :
                                                     :
                v.                                   :    15-cv-3523 (TPG)
                                                     :
THE REPUBLIC OF ARGENTINA,                           :
                                                     :
                      Defendant.                     :
                                                     :
---------------------------------------------------  x
STONEHILL INSTITUTIONAL PARTNERS,                    :
L.P. et al.,                                         :
                                                     :
                      Plaintiffs,                    :
                                                     :
                v.                                   :    15-cv-4284 (TPG)
                                                     :
THE REPUBLIC OF ARGENTINA,                           :
                                                     :
                      Defendant.                     :
                                                     :
---------------------------------------------------  x
```



```
-------------------------------------------------- x
VR GLOBAL PARTNERS, LP,                             :
                                                    :
                    Plaintiff,                      :
                                                    :
          v.                                        :   11-cv-8817 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                    Defendant.                      :
-------------------------------------------------- :
                                                    x
BYBROOK CAPITAL MASTER FUND LP et                   :
al.,                                                :
                                                    :
                    Plaintiffs,                     :
                                                    :
          v.                                        :   15-cv-2369 (TPG)
                                                    :   15-cv-7367 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                    Defendant.                      :
-------------------------------------------------- x
```

**OPINION AND ORDER**

In 1994, the Republic of Argentina began issuing bonds pursuant to a Fiscal Agency Agreement ("FAA"), which contains a *pari passu* clause. After the Republic suffered an economic crisis in 2001, it defaulted on its debts, including the FAA bonds. For many years, the Republic never paid anything on the FAA bonds, and plaintiffs who held beneficial interests in those bonds began filing actions against the Republic in this court.

In 2010, a group of plaintiffs in thirteen actions filed motions for partial summary judgment, asking the court to declare that the Republic had violated the *pari passu* clause. After the court granted those motions, the plaintiffs

1

moved for specific performance, seeking a remedy for the Republic's violation of the *pari passu* clause. Although the *pari passu* clause does not itself require a particular remedy, the court fashioned injunctions to address the Republic's refusal to pay plaintiffs anything.

In early 2015, a group of "me too" plaintiffs filed similar motions for partial summary judgment. As their name suggests, these plaintiffs sought the same *pari passu* ruling that the other plaintiffs had obtained in the original thirteen actions. "Me too" plaintiffs in forty-nine actions then filed motions for specific performance, seeking injunctions like those issued in the original actions. The court granted the motions on October 30, 2015. This meant that plaintiffs in a total of sixty-two actions had obtained injunctions against the Republic.

On February 11, 2016, the Republic of Argentina filed motions to vacate the injunctions in all sixty-two actions. After full briefing on the motions, the court issued an Indicative Ruling in the forty-nine "me too" actions alone. In the Indicative Ruling, the court explained that it did not presently have jurisdiction over the injunctions in the "me too" actions because of a pending appeal, but the court indicated that it would vacate the injunctions if the Court of Appeals remanded for that purpose.

The Court of Appeals held oral argument on February 24, 2016, at which time the Republic agreed to voluntarily dismiss two pending appeals that implicated both the original injunctions and the "me too" injunctions. Accordingly, the Court of Appeals returned jurisdiction to this court and remanded to allow this court to enter the Indicative Ruling as an order. The

Republic then moved the court to enter that order and thereby vacate the injunctions.

The parties have extensively briefed the issues, both before and after remand. And at a hearing on March 1, 2016, the court gave all interested parties the opportunity to be heard, allowing moving, answering, reply, and sur-reply argument. Upon consideration of all arguments and the equities in each case, the court hereby formally enters the Indicative Ruling as an order and vacates the injunctions.

It should be noted that vacating the injunctions in no way impedes the settlement negotiations now taking place. Nor does it prevent acceptance of the Republic's Proposal for settlement, which remains open. Plaintiffs who have not settled may continue to negotiate with the Republic. Moreover, as the record makes clear, claims made by certain plaintiffs that they have had "no opportunity" to negotiate are exaggerated. The court expects the Republic to continue to negotiate with the remaining non-settling plaintiffs.

There is a pressing need for certainty and finality. If some plaintiffs choose to appeal this order, that is their right. But appeals must happen promptly to ensure the certainty and finality needed for existing settlements to succeed. The Argentine Congress must know where it stands, and all parties must act diligently to consummate these settlements. At least one Agreement in Principle with four major bondholders calls for payment by mid-April. The Republic needs

time to raise the capital required to pay all plaintiffs with whom it has reached agreement.

Despite this reality, certain plaintiffs ask the court to grant them thirty more days to settle their claims. Further delay could seriously erode the Republic's ability to move forward and raise the capital necessary to fund the settlements. Moreover, the Court of Appeals has *already* entered a stay of this order of up to two weeks, which will give those plaintiffs ample time to continue negotiations. More importantly, this court's order places no limit on plaintiffs' ability to reach agreements with the Republic beyond that point. Even if some plaintiffs choose to appeal, they may continue to negotiate. The only difference is that the court has now held that the injunctive relief it once deemed equitable is no longer so. The injunctive relief cannot be allowed to be used as a tool for leverage in negotiations.

The court also wishes to note three recent developments that buttress the court's prior finding that the injunctions are no longer equitable or in the public interest. First, the Republic has now signed Agreements in Principle with plaintiffs representing the vast majority of claims in these actions. The total settlement consideration now amounts to at least $6.2 billion, potentially resolving over 85% of claims held by plaintiffs with injunctions. Second, the Republic has abandoned all former challenges to the injunctions by voluntarily dismissing with prejudice the two appeals pursued by the Republic's prior administration, thus showing a completely changed attitude. Third, yesterday President Macri addressed the Argentine Congress to urge approval of

4

settlements in this litigation—an important step toward fulfilling a condition of this order.

The court appreciates the arguments presented by all parties who spoke at yesterday's hearing. And the court does not take lightly the decision to lift the injunctions. But, ultimately, circumstances have changed so significantly as to render the injunctions inequitable and detrimental to the public interest. For the reasons outlined in the Indicative Ruling and this order, the court grants the Republic's motions to vacate the injunctions in all actions upon the occurrence of the two conditions precedent:

(1) The Republic repeals all legislative obstacles to settlement with the FAA bondholders, including the Lock Law and the Sovereign Payment Law;

(2) For all plaintiffs that entered into agreements in principle with the Republic on or before February 29, 2016, the Republic must make full payment in accordance with the specific terms of each such agreement. The Republic must also notify the court once those plaintiffs have all received full payment.

SO ORDERED

Dated: New York, New York
March 2, 2016

Thomas P. Griesa
United States District Judge

# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x
NML CAPITAL, LTD.,                              :

                     Plaintiff,        :

             v.                         :         14-cv-8601 (TPG)

THE REPUBLIC OF ARGENTINA,           :

                  Defendant.    :
------------------------------------------------------ x
NML CAPITAL, LTD.,                              :

                     Plaintiff,        :

             v.                         :         14-cv-8988 (TPG)

THE REPUBLIC OF ARGENTINA,           :

                  Defendant.    :
------------------------------------------------------ x
FFI FUND, LTD. and FYI LTD.,               :

                     Plaintiffs,        :

             v.                         :         14-cv-8630 (TPG)

THE REPUBLIC OF ARGENTINA,           :         *(captions continue on following pages)*

                  Defendant.    :
------------------------------------------------------ x

**RULE 62.1 INDICATIVE RULING**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/19/2016

```
-------------------------------------------------  x
PEREZ, et al.,                                      :
                                                    :
                        Plaintiffs,                 :
                                                    :
            v.                                      :   14-cv-8242 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                        Defendant.                  :
-------------------------------------------------  x
                                                    :
AURELIUS CAPITAL PARTNERS, LP, et al.,              :
                                                    :
                        Plaintiffs,                 :
                                                    :
            v.                                      :   14-cv-8946 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                        Defendant.                  :
-------------------------------------------------  x
BLUE ANGEL CAPITAL I LLC,                           :
                                                    :
                        Plaintiff,                  :
                                                    :
            v.                                      :   14-cv-8947 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                        Defendant.                  :
-------------------------------------------------  x
EM LTD.,                                            :
                                                    :
                        Plaintiff,                  :
                                                    :
            v.                                      :   14-cv-8303 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                        Defendant.                  :
-------------------------------------------------  x
```

```
-------------------------------------------------- x
LIGHTWATER CORP. LTD.,                             :
                                                   :
                         Plaintiff,                :
                                                   :
            v.                                     :
                                                   :   14-cv-4092 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                         Defendant.                :
-------------------------------------------------- :
                                                   x
OLD CASTLE HOLDINGS, LTD.,                          :
                                                   :
                         Plaintiff,                :
                                                   :
            v.                                     :
                                                   :   14-cv-4091 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                         Defendant.                :
                                                   :
-------------------------------------------------- x
SETTIN,                                             :
                                                   :
                         Plaintiff,                :
                                                   :
            v.                                     :
                                                   :   14-cv-8739 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                         Defendant.                :
-------------------------------------------------- x
CAPITAL VENTURES INTERNATIONAL,                     :
                                                   :
                         Plaintiff,                :
                                                   :
            v.                                     :
                                                   :   14-cv-7258 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                         Defendant.                :
                                                   :
-------------------------------------------------- x
```

```
------------------------------------------------- x
ADAMI, et al.,                                     :
                                                   :
                    Plaintiffs,                    :
                                                   :
              v.                                   :   14-cv-7739 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                    Defendant.                     :
------------------------------------------------- x
                                                   :
CAPITAL MARKETS FINANCIAL SERVICES                 :
INC., et al.,                                      :
                                                   :
                    Plaintiffs,                    :
                                                   :
              v.                                   :   15-cv-0710 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                    Defendant.                     :
------------------------------------------------- x
FOGLIA, et al.,                                    :
                                                   :
                    Plaintiffs,                    :
                                                   :
              v.                                   :   14-cv-8243 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                    Defendant.                     :
------------------------------------------------- x
PONS, et al.,                                      :
                                                   :
                    Plaintiffs,                    :
                                                   :
              v.                                   :   13-cv-8887 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                    Defendant.                     :
------------------------------------------------- x
```

```
-------------------------------------------------  x
GUIBELALDE, et al.,                                :
                                                   :
                            Plaintiffs,            :
                                                   :
                    v.                             :      11-cv-4908 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                            Defendant.             :
-------------------------------------------------  x
                                                   :
DORRA, et al.,                                     :
                                                   :
                            Plaintiffs,            :
                                                   :
                    v.                             :      14-cv-10141 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                            Defendant.             :
-------------------------------------------------  x
                                                   :
BELOQUI, et al.,                                   :
                                                   :
                            Plaintiffs,            :
                                                   :
                    v.                             :      14-cv-5963 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                            Defendant.             :
-------------------------------------------------  x
TORTUS CAPITAL MASTER FUND, LP,                    :
                                                   :
                            Plaintiff,             :
                                                   :
                    v.                             :      14-cv-1109 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                            Defendant.             :
-------------------------------------------------  x
```

```
-------------------------------------------------- x
TORTUS CAPITAL MASTER FUND, LP,                    :
                                                   :
                    Plaintiff,                     :
                                                   :
            v.                                     :      14-cv-3127 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                    Defendant.                     :
-------------------------------------------------- x
                                                   :
TRINITY INVESTMENTS LIMITED,                       :
                                                   :
                    Plaintiff,                     :
                                                   :
            v.                                     :      14-cv-10016 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                    Defendant.                     :
-------------------------------------------------- x
MONTREUX PARTNERS, L.P.,                           :
                                                   :
                    Plaintiff,                     :
                                                   :
            v.                                     :      14-cv-7171 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                    Defendant.                     :
-------------------------------------------------- x
LOS ANGELES CAPITAL,                               :
                                                   :
                    Plaintiff,                     :
                                                   :
            v.                                     :      14-cv-7169 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                    Defendant.                     :
-------------------------------------------------- x
```

```
----------------------------------------------------  x
CORDOBA CAPITAL,                                       :
                                                       :
                         Plaintiff,                    :
                                                       :
                 v.                                    :
                                                       :        14-cv-7164 (TPG)
THE REPUBLIC OF ARGENTINA,                             :
                                                       :
                         Defendant.                    :
----------------------------------------------------  x
                                                       :
WILTON CAPITAL, LTD.,                                  :
                                                       :
                         Plaintiff,                    :
                                                       :
                 v.                                    :
                                                       :        14-cv-7166 (TPG)
THE REPUBLIC OF ARGENTINA,                             :
                                                       :
                         Defendant.                    :
----------------------------------------------------  x
MCHA HOLDINGS, LLC,                                    :
                                                       :
                         Plaintiff,                    :
                                                       :
                 v.                                    :
                                                       :        14-cv-7637 (TPG)
THE REPUBLIC OF ARGENTINA,                             :
                                                       :
                         Defendant.                    :
----------------------------------------------------  x
MCHA HOLDINGS, LLC,                                    :
                                                       :
                         Plaintiff,                    :
                                                       :
                 v.                                    :
                                                       :        14-cv-10064 (TPG)
THE REPUBLIC OF ARGENTINA,                             :
                                                       :
                         Defendant.                    :
----------------------------------------------------  x
```

```
------------------------------------------------- x
ANDRAREX LTD.,                                     :
                                                   :
                            Plaintiff,             :
                                                   :
                                                   :
              v.                                   :      14-cv-9093 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                            Defendant.             :
------------------------------------------------- x
                                                   :
CLARIDAE, et al.,                                  :
                                                   :
                            Plaintiffs,            :
                                                   :
                                                   :
              v.                                   :      14-cv-10201 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                            Defendant.             :
------------------------------------------------- x
                                                   :
ARAG-A LIMITED, et al.,                            :
                                                   :
                            Plaintiffs,            :
                                                   :
                                                   :
              v.                                   :      14-cv-9855 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                            Defendant.             :
------------------------------------------------- x
                                                   :
ATTESTOR MASTER VALUE FUND LP,                     :
                                                   :
                            Plaintiff,             :
                                                   :
                                                   :
              v.                                   :      14-cv-5849 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                            Defendant.             :
------------------------------------------------- x
```

```
-------------------------------------------  x
ANGULO, et al.,                              :
                                             :
                      Plaintiffs,            :
                                             :
           v.                                :        15-cv-1470 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                      Defendant.             :
-------------------------------------------  x
LAMBERTINI, et al.,                          :
                                             :
                      Plaintiffs,            :
                                             :
           v.                                :        15-cv-1471 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                      Defendant.             :
-------------------------------------------  x
HONERO FUND I, LLC,                          :
                                             :
                      Plaintiff,             :
                                             :
           v.                                :        15-cv-1553 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                      Defendant.             :
-------------------------------------------  x
TRINITY INVESTMENTS LIMITED,                 :
                                             :
                      Plaintiff,             :
                                             :
           v.                                :        15-cv-1588 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                      Defendant.             :
-------------------------------------------  x
```

```
---------------------------------------------------  x
                                                     :
BANCA ARNER S.A., et al.,                            :
                                                     :
                          Plaintiffs,                :
                                                     :
            v.                                       :
                                                     :      15-cv-1508 (TPG)
THE REPUBLIC OF ARGENTINA,                           :
                                                     :
                          Defendant.                 :
                                                     :
---------------------------------------------------  x
                                                     :
TRINITY INVESTMENTS LIMITED,                         :
                                                     :
                          Plaintiff,                 :
                                                     :
            v.                                       :
                                                     :      15-cv-2611 (TPG)
THE REPUBLIC OF ARGENTINA,                           :
                                                     :
                          Defendant.                 :
                                                     :
---------------------------------------------------  x
TRINITY INVESTMENTS LIMITED,                         :
                                                     :
                          Plaintiff,                 :
                                                     :
            v.                                       :
                                                     :      15-cv-5886 (TPG)
THE REPUBLIC OF ARGENTINA,                           :
                                                     :
                          Defendant.                 :
                                                     :
---------------------------------------------------  x
MCHA HOLDINGS, LLC,                                  :
                                                     :
                          Plaintiff,                 :
                                                     :
            v.                                       :
                                                     :      15-cv-2577 (TPG)
THE REPUBLIC OF ARGENTINA,                           :
                                                     :
                          Defendant.                 :
                                                     :
---------------------------------------------------  x
```

```
------------------------------------------------- x
MCHA HOLDINGS, LLC,                               :
                                                  :
                        Plaintiff,                :
                                                  :
            v.                                    :   15-cv-5190 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                        Defendant.                :
------------------------------------------------- x
ERCOLANI, et al.,                                 :
                                                  :
                        Plaintiffs,               :
                                                  :
            v.                                    :   15-cv-4654 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                        Defendant.                :
------------------------------------------------- x
FAZZOLARI, et al.,                                :
                                                  :
                        Plaintiffs,               :
                                                  :
            v.                                    :   15-cv-3523 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                        Defendant.                :
------------------------------------------------- x
STONEHILL INSTITUTIONAL PARTNERS,                 :
L.P. et al.,                                      :
                                                  :
                        Plaintiffs,               :
                                                  :
            v.                                    :   15-cv-4284 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                        Defendant.                :
------------------------------------------------- x
```

```
----------------------------------------------------  x
WHITE HAWTHORNE, LLC,                                 :
                                                      :
                      Plaintiff,                      :
                                                      :
                                                      :
              v.                                      :          15-cv-4767 (TPG)
                                                      :
THE REPUBLIC OF ARGENTINA,                            :
                                                      :
                      Defendant.                      :
----------------------------------------------------  x
                                                      :
VR GLOBAL PARTNERS, LP,                               :
                                                      :
                      Plaintiff,                      :
                                                      :
                                                      :
              v.                                      :          11-cv-8817 (TPG)
                                                      :
THE REPUBLIC OF ARGENTINA,                            :
                                                      :
                      Defendant.                      :
----------------------------------------------------  x
                                                      :
HONERO FUND I, LLC,                                   :
                                                      :
                      Plaintiff,                      :
                                                      :
                                                      :
              v.                                      :          15-cv-6702 (TPG)
                                                      :
THE REPUBLIC OF ARGENTINA,                            :
                                                      :
                      Defendant.                      :
----------------------------------------------------  x
PROCELLA HOLDINGS, L.P.,                              :
                                                      :
                      Plaintiff,                      :
                                                      :
                                                      :
              v.                                      :          15-cv-3932 (TPG)
                                                      :
THE REPUBLIC OF ARGENTINA,                            :
                                                      :
                      Defendant.                      :
----------------------------------------------------  x
```



```
-------------------------------------------------- x
BYBROOK CAPITAL MASTER FUND LP et    :
al.,                                 :
                                     :
                    Plaintiffs,      :
                                     :
          v.                         :   15-cv-7367 (TPG)
                                     :
THE REPUBLIC OF ARGENTINA,           :
                                     :
                    Defendant.       :
-------------------------------------------------- x
BYBROOK CAPITAL MASTER FUND LP et    :
al.,                                 :
                                     :
                    Plaintiffs,      :
                                     :
          v.                         :   15-cv-2369 (TPG)
                                     :
THE REPUBLIC OF ARGENTINA,           :
                                     :
                    Defendant.       :
-------------------------------------------------- x
```

Plaintiffs in these forty-nine actions hold bonds issued by defendant, the Republic of Argentina. In October 2015, the court issued injunctions in these actions. Due to a pending appeal, the court does not presently have jurisdiction over the injunctions.

The Republic now moves for a Rule 62.1 Indicative Ruling that this court would vacate the injunctions if the Court of Appeals were to remand for that purpose. The motion under Rule 62.1 allows the court to state that it would grant a motion to vacate if it had the power to do so. Some plaintiffs support the Republic's motion to vacate; others do not. The court must therefore decide whether it would vacate the injunctions on remand.

Background

The court has often recounted the history of this prolonged litigation.  A brief summary will suffice.

**1. The Default**

In 1994, the Republic began issuing bonds pursuant to a Fiscal Agency Agreement ("FAA"), which contains the famed *pari passu* clause:

> The Securities will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preference among themselves.  The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness . . . .

After the Republic suffered an economic crisis in 2001, it defaulted on its debts, including the FAA bonds.  In an attempt to cure this default, the Republic twice invited bondholders to exchange their FAA bonds for new bonds worth only 25–29% of the FAA bonds' value.  In all, roughly 93% of the Republic's creditors ultimately accepted these exchange offers, and the Republic began making payments to the "exchange bondholders."

To buttress the first exchange offer, the Republic enacted Law 26,017— the "Lock Law"—which prohibited "any type of in-court, out-of-court or private settlement" with FAA bondholders who could have participated in the exchange offer but chose not to.  Then, in 2009, the Republic enacted Law 26,547, which barred the Republic from giving FAA bondholders who had filed lawsuits "more favorable treatment than what [was] offered to those who have not done so." Finally, in 2013, the Republic passed Law 26,886, which again forbade

bondholders who had filed lawsuits from getting any settlement worth more than the prior exchange offers.

For many years, the Republic never paid anything on the FAA bonds. Plaintiffs who held beneficial interests in those bonds began filing actions against the Republic in this court. Many obtained money judgments for the outstanding principal and interest. The Republic refused to pay, and the plaintiffs tried—usually in vain—to attach Argentine assets to satisfy their money judgments. *See, e.g.*, *EM Ltd. v. Republic of Argentina*, 865 F. Supp. 2d 415, 417 (S.D.N.Y. 2012) (observing that the Republic has "usually prevail[ed] in defeating the plaintiffs' attempts to recover" through attachment).

### 2. The Original Injunctions

In 2010, a group of plaintiffs in thirteen actions began seeking a different kind of relief.[1] They first filed motions for partial summary judgment, asking the court to declare that the Republic had violated the *pari passu* clause by paying the exchange bondholders while refusing to pay the plaintiffs. The court granted the motions. *See* Order, *NML Capital Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Dec. 7, 2011).

The plaintiffs then moved for specific performance, seeking a remedy for the Republic's violation of the *pari passu* clause. Although the *pari passu* clause does not itself require a particular remedy, the court exercised its inherent equitable discretion under Rule 65(d) to craft appropriate relief. It fashioned

---

[1] The index numbers of those thirteen actions are 08-cv-6978; 09-cv-1707; 09-cv-1708; 09-cv-8757; 09-cv-10620; 10-cv-1602; 10-cv-3507; 10-cv-3970; 10-cv-8339; 10-cv-4101; 10-cv-4782; 10-cv-9587; 10-cv-5338.

3

injunctions to address the Republic's steadfast refusal to pay plaintiffs anything. The result was that whenever the Republic paid on the exchange bonds, it needed to make a "ratable payment" to plaintiffs. *See* Order § 2(a), *NML Capital Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Feb. 23, 2012).

In issuing the injunctions, the court made findings that, at that time, supported such equitable relief. For example, the court explained that plaintiffs had no adequate remedy at law due to the Republic's passage of Law 26,017 (which prohibited settlement with plaintiffs who declined the exchange offers) and Law 26,547 (which prevented plaintiffs from receiving settlements more favorable than the exchange offers). *Id.* § 1(b). Moreover, the court found that both the equities and the public interest supported the injunctions because of the Republic's "repeated failures" to pay plaintiffs and its "unprecedented, systematic scheme" to pay other debts without paying plaintiffs. *Id.* § 1(c) & (d); *see also* Am. & Suppl. Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Oct. 3, 2014) (holding the Republic in contempt after it attempted to evade the injunctions by passing Law 26,984—the "Sovereign Payment Law").

The Court of Appeals affirmed the injunctions, but remanded for clarification as to how the injunctions would operate. *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 255 (2d Cir. 2012). On remand, the court explained the injunctions' payment formula and the effects the injunctions would have on third parties. Order, *NML Capital Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Nov. 21, 2012). The Republic again appealed, and the

Second Circuit again affirmed the injunctions in their entirety. *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 248 (2d Cir. 2013). After the Supreme Court denied *certiorari* in June 2014, *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2819 (2014), the injunctions went into effect.

In an attempt to encourage settlement, the court appointed a Special Master, Daniel A. Pollack, Esq., on June 23, 2014. The Special Master's mandate was "to conduct and preside over settlement negotiations." Order Appointment Special Master, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. June 23, 2014). Despite his untiring efforts to bring about a settlement, the Republic chose to default on the exchange bonds rather than pay anything to plaintiffs.

### 3. The "Me Too" Injunctions

In early 2015, "me too" plaintiffs in thirty-six actions filed motions for partial summary judgment. As their name suggests, these plaintiffs sought the same *pari passu* ruling that the other plaintiffs had obtained in the original thirteen actions. On June 5, 2015, the court granted the motions because of the Republic's "entire and continuing course of conduct" in refusing to pay plaintiffs anything at all. Op. & Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 14-cv-8601 (S.D.N.Y. June 5, 2015). "Me too" plaintiffs in fifteen other actions then filed similar motions for partial summary judgment, which the court granted on October 22, 2015. Op. & Order, *Trinity Invest. Ltd. v. Republic of Argentina*, No. 15-cv-2611 (S.D.N.Y. Oct. 22, 2015).

The result was that "me too" plaintiffs in fifty-one actions obtained judgments that the Republic violated the *pari passu* clause. Plaintiffs in forty-nine of those actions then filed motions for specific performance, seeking equitable relief akin to the injunctions obtained in the original thirteen actions.[2] The court granted those motions on October 30, 2015. This meant that plaintiffs in a total of sixty-two actions had obtained injunctions against the Republic.

When the court granted the "me too" injunctions, it again discussed the equities. The court highlighted "[t]he Republic's reluctance to entertain meaningful settlement discussions before the Special Master." Op. & Order 10, *NML Capital, Ltd. v. Republic of Argentina*, No. 14-cv-8601 (S.D.N.Y. Oct. 30, 2015). The court also explained that "[t]he Republic has done nothing in recent years to alleviate the court's concerns" and that, if anything, it had "escalated its scheme" of attempting to pay the exchange bondholders without paying plaintiffs. *Id.* at 8. An appeal followed, which is currently pending before the Second Circuit. Notice Civil Appeal, *NML Capital, Ltd. v. Republic of Argentina*, No. 15-3675 (2d Cir. Nov. 10, 2015).

### 4. The 2016 Settlement Negotiations

In November 2015, the Republic's voters elected Mauricio Macri as their president, ending the twelve-year reign of the previous ruling party led by former

---

[2] The index numbers of those forty-nine actions are 14-cv-8988; 14-cv-8601; 14-cv-8630; 14-cv-8303; 14-cv-8946; 14-cv-8947; 14-cv-7739; 11-cv-4908; 13-cv-8887; 14-cv-1109; 14-cv-3127; 14-cv-5963; 14-cv-7169; 14-cv-7171; 14-cv-7164; 14-cv-7166; 14-cv-7258; 14-cv-8242; 14-cv-8243; 14-cv-10141; 15-cv-0710; 15-cv-1470; 15-cv-1471; 14-cv-10016; 14-cv-10064; 14-cv-10201; 14-cv-7637; 15-cv-1588; 15-cv-2577; 15-cv-2611; 15-cv-5190; 15-cv-5886; 14-cv-9093; 14-cv-5849; 14-cv-4092; 14-cv-4091; 14-cv-8739; 15-cv-1508; 15-cv-3523; 15-cv-4654; 11-cv-8817; 14-cv-9855; 15-cv-3932; 15-cv-4284; 15-cv-4767; 15-cv-6702; 15-cv-1553; 15-cv-2369; 15-cv-7367.

President Cristina Kirchner. President Macri's election marked a turning point in the Republic's attitude and actions. Since the election, President Macri's government has consistently declared its desire to resolve the disputes and reopen the country to foreign investors. *See* Stephen Adler & Sujata Rao, *Argentina's Macri Hopes for Creditor Deal Early in 2016*, Reuters (Jan. 23, 2016), *available at* http://www.reuters.com/article/us-argentina-president-idUSKCN0V00UP ("I want to be clear: We want to reach a settlement. We want to find a fair agreement.").

In January 2016, the Argentine government reopened negotiations with the FAA bondholders through the Special Master. President Macri dispatched a delegation of senior government officials to hold talks with lead plaintiffs in New York. On January 13 and during the first week of February, discussions began under the aegis of the Special Master. The Republic presented an informal settlement offer, first to the Special Master, then to those plaintiffs. During the week of discussions before the Special Master, the Republic reached Agreements in Principle with five of those plaintiffs worth over $1.1 billion.[3] Other plaintiffs refused to settle, and the Republic then published its Proposal formally to them and to the world on February 5, 2016. *See* Propuesta, 5 de Febrero de 2016 (Paskin Decl. Ex. J, Dkt. 58, No. 14-cv-8988).

The Republic's Proposal contemplates two settlement categories. The first, known as the "Standard Offer," is open to *all* FAA bondholders, and provides for

---

[3] Those plaintiffs are EM Ltd. (No. 14-cv-8303); Montreux Partners, L.P. (No. 14-cv-7171); Los Angeles Capital (No. 14-cv-7169); Cordoba Capital (No. 14-cv-7164); and Wilton Capital, Ltd. (No. 14-cv-7166).

a cash payment equal to the original principal of the bond plus 50% of that principal, classified as interest. The second, known as the "*Pari Passu* Offer," extends only to FAA bondholders who have injunctions. Those bondholders with injunctions who have money judgments may receive a cash payment equal to the full amount of that judgment, less a 30% discount. Those without money judgments may receive a cash payment equal to the current accrued value of the claims, less a 30% discount. The Proposal also offers an "early-bird" incentive: for bondholders who reach agreements with the Republic by February 19, 2016, the 30% discount drops to 27.5%. Both the Proposal and the existing Agreements in Principle that the Republic has entered into contain two conditions precedent: (1) the approval of the Argentine Congress; and (2) the vacating of this court's injunctions. The Republic estimates that the settlement payments for the bondholders with injunctions, if made, would total approximately $6.5 billion in cash. It has not estimated the additional figure that might be involved in the Standard Offer. Some litigants may qualify under both categories and will have the option to select the category that best suits them.

In his statement issued February 5, 2016, the Special Master called the Republic's Proposal a "historic breakthrough." He noted that settlement would allow the Republic to return to the global financial markets to raise much-needed capital. Finally, he praised the Republic's leaders for their "courage and flexibility in stepping up to and dealing with this long-festering problem which was not of their making."

The U.S. government has also signaled its support.  Treasury Secretary Jacob Lew commended the Republic's good-faith efforts to resolve the disputes and expressed his "strong hope" that all bondholders would accept settlements soon.  Readout from a Treasury Spokesperson of Lew's Call with Argentine Finance Minister Alfonso Prat-Gay (Feb. 7, 2016), *available at* https://www.treasury.gov/press-center/press-releases/Pages/jl0339.aspx.

Meanwhile, the Republic intensified its efforts to settle with as many bondholders as possible.  Not only did government officials continue to negotiate with those plaintiffs who initially declined the Proposal, but they also reached out to plaintiffs who did not have injunctions in their actions.  To date, the Republic has successfully executed additional Agreements in Principle with a number of institutional plaintiffs, a group of class-action plaintiffs, and 50,000 Italian bondholders.[4]

To continue the process of effectuating all these settlements, the Republic now moves to vacate the injunctions in all forty-nine of the "me too" actions.  Because the Republic appealed the issuance of the injunctions through its prior counsel, the court cannot presently grant the Republic's motion to vacate.  Accordingly, the Republic has brought a motion for a Rule 62.1 Indicative Ruling.  Rule 62.1 "authorizes a district court whose jurisdiction has been divested by an appeal to 'state either that it would grant the motion if the court of appeals

---

[4] Paskin Decl. Ex. E, Dkt. 68, No. 14-cv-8988 (discussing Capital Markets Financial Services settlement); Nate Raymond, *Argentina Reaches Settlement in U.S. Debt Class Action: Mediator*, Reuters (Feb. 16, 2016), *available at* http://www.reuters.com/article/us-argentina-debt-idUSKCN0VP2QE (discussing class-action settlements); Bausili Decl. ¶ 5, Dkt. 59, No. 14-cv-8988 (discussing Italian settlements).

remands for that purpose or that the motion raises a substantial issue.'" *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 159 n.4 (2d Cir. 2014) (quoting Fed. R. Civ. P. 62.1(a)(3)). The court must therefore consider the merits of the Republic's motion to vacate in order to decide if it would grant the motion on remand.

Discussion

Courts have the inherent power to vacate their injunctions. *United States v. LoRusso*, 695 F.2d 45, 53 (2d. Cir. 1982); 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2961 (3d ed.) ("Wright & Miller"); *see also* Fed. R. Civ. P. 54(b) (giving courts the power to revise interlocutory orders). Courts may also rely on Federal Rule of Civil Procedure 60(b), which provides that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) . . . applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Courts have "wide discretion" to vacate injunctions. *Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 648 (1961); *see also Brown v. Plata*, 131 S. Ct. 1910, 1946 (2011) ("The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." (quoting *N.Y. State Ass'n of Retarded Children, Inc. v. Carey*, 706 F.2d 956, 967 (2d Cir. 1983))); *Milk Wagon Drivers Union v. Meadowmoor Dairies*, 312 U.S. 287, 298 (1941) ("Familiar equity procedure assures opportunity for modifying or vacating an injunction when its continuance is no longer warranted."); *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) ("We are not doubtful of the power of a court of equity to

10

modify an injunction in adaptation to changed conditions."); *Matarese v. Lefevre*, 801 F.2d 98, 106 (2d Cir. 1986) ("[Rule 60(b)(6)] confers broad discretion on the trial court to grant relief when appropriate to accomplish justice." (citations omitted)). Accordingly, the standard of review on appeal is whether a court abused of discretion; that is, whether a court's decision to vacate (1) "rests on an error of law or a clearly erroneous factual finding," or (2) "cannot be found within the range of permissible decisions." *In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 357 (2d Cir. 2013) (citation omitted).

This considerable discretion does have some limits. Generally, a court may vacate only when "there has been such a change in the circumstances as to make modification of the decree equitable." *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 257 (2d Cir. 1984); *see also Davis v. N.Y.C. Hous. Auth.*, 278 F.3d 64, 88 (2d Cir. 2002) (allowing modification "to accommodate changed circumstances" (citing Fed. R. Civ. P. 60(b)(5))). The ultimate question, then, is "whether an ongoing exercise of the court's equitable authority is supported by the prior showing of illegality, judged against the claim that changed circumstances have rendered prospective relief inappropriate." *Salazar v. Buono*, 559 U.S. 700, 718 (2010) (plurality opinion).

A court should also consider "whether the requested modification effectuates or thwarts the purpose behind the injunction." *Sierra Club*, 732 F.2d at 256 (citing *Chrysler Corp. v. United States*, 316 U.S. 556, 562 (1942)). Put differently, a court usually should not vacate an injunction "in the interest of the defendants if the purposes of the litigation as incorporated in the decree have

11

not been fully achieved." *Id.* at 256 (citing *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 248 (1968)). Nonetheless, "total compliance" with an injunction "is not an absolute precondition of any modification," *Badgley v. Santacroce*, 853 F.2d 50, 54 (2d Cir. 1988) (citation omitted), and, where equitable, a court may vacate an injunction "even though the purpose of the decree has not been achieved," *United States v. Eastman Kodak Co.*, 63 F.3d 95, 102 (2d Cir. 1995).

Finally, courts may recognize special circumstances that justify a more nuanced approach to the inherent power to vacate injunctions. For example, although changes in fact or law often "afford the clearest bases for altering an injunction," a court's equitable power "extend[s] also to cases where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." *King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 418 F.2d 31, 35 (2d Cir. 1969) (citations omitted). Moreover, a court may vacate "when a decree proves to be unworkable because of unforeseen obstacles; or when enforcement of the decree without modification would be detrimental to the public interest." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992) (citations omitted); *see also Salazar*, 559 U.S. at 714 ("[A] court should be particularly cautious when contemplating relief that implicates public interests."); Wright & Miller § 2942 ("[B]ecause of its discretionary character, an injunction . . . may be modified if circumstances change after it is issued or in the event that it fails to achieve its objectives."); Timothy Stoltzfus Jost, *From* Swift *to* Stotts *and Beyond: Modification of*

*Injunctions in the Federal Courts*, 64 Tex. L. Rev. 1101, 1138 (1986) (arguing that, if an injunction becomes "a tool of oppression" or "obviously inefficient," "the court ultimately has the power to, and should, modify a decree that imposes a burden disproportionate to the benefit it assures").

Here, the Republic and a number of plaintiffs ask the court to exercise its discretion to vacate the injunctions. They argue that the injunctions' continued effect is no longer equitable. The court agrees. The injunctions, once appropriate to address the Republic's recalcitrance, can no longer be justified. Significantly changed circumstances have rendered the injunctions inequitable and detrimental to the public interest.

## 1. Changed Circumstances Render the Injunctions Inequitable.

The original injunctive order explicitly gave this court the power to "modify and amend it as justice requires to achieve its equitable purposes and to account for changing circumstances." Order § 5, *NML Capital Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Feb. 23, 2012). Put simply, President Macri's election changed everything.

Most importantly, the Republic has shown a good-faith willingness to negotiate with the holdouts. Under prior Argentine administrations, plaintiffs had to accept severe haircuts on the value of their bonds, or else engage in a usually fruitless effort to attach property to satisfy their judgments. The Republic never seriously pursued negotiations toward settlement. Instead, the Republic's leadership engaged in rhetoric, calling plaintiffs "vultures" or "financial terrorists," while showing open contempt for this court's rulings. *See*

Robin Wigglesworth & Benedict Mander, *Argentina on the Cusp of Peace with Creditors*, Fin. Times (Feb. 16, 2016), *available at* http://on.ft.com/20B7FBk; *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 247 (2d Cir. 2013) (describing the Republic as "a uniquely recalcitrant debtor").  Despite the best efforts of the Special Master, he could not coax the Republic to negotiate with plaintiffs in good faith in 2014 and 2015.

All that has changed.  President Macri pledged during his campaign that he would seek to resolve these long-running lawsuits—and he has honored that promise.  Not long after President Macri's December 2015 inauguration, the Secretary of Finance approached the Special Master to begin negotiations in earnest.  The Republic's high-level officials met with the Special Master and a group of plaintiffs in January 2016 to establish a framework for substantive talks.  And, through the first week of February, the Special Master convened a series of meetings in New York.  As the Special Master continually informed the court, he communicated intensively with the Republic's officials and the plaintiffs' lead principals on virtually a daily basis.  The Republic's senior officials met with a substantial number of plaintiffs as a group, and also spoke separately with a number of those plaintiffs who sought private dialogue with the Republic. By the end of the first week of negotiations, the Republic had reached Agreements in Principle with plaintiffs in five actions, involving payments exceeding $1 billion.  At the end of the week, the Republic also issued its public Proposal to settle with all FAA bondholders.

Before the court actually vacates the injunctions, another circumstance must change. As part of the settlement agreements, the Republic must repeal legislative obstacles enacted by prior administrations. Gone will be the Lock Law—the legislation that led the court to fashion these injunctions in the first place—as well as other antagonistic legislation, such as the Sovereign Payment Law. *See generally* Order § 1(b) & (c), *NML Capital Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Feb. 23, 2012); *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 241 (2d Cir. 2013). Not only do the very terms of the Republic's Proposal contemplate repeal, but—in the Republic's own words—the lifting of the injunctions would require it. *See* Def.'s Mem. L. Supp. Mot. Vacate 3, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Feb. 11, 2016). These are truly "exceptional circumstances." *See Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009) (citation omitted).

The Republic's decisions in 2005 to outlaw "any type of in-court, out-of-court or private settlement" (Law 26,017), and in 2009 to pay plaintiffs no more than 29% of the original bonds' value (Law 26,547), are sharply inconsistent with the decisions taken by President Macri's administration. *Compare* Hr'g Tr. 29, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Sept. 28, 2011) (conceding that, in 2011, the Republic would offer plaintiffs no more than it offered the exchange bondholders), *with* Propuesta, 5 de Febrero de 2016 (offering all plaintiffs cash payments equal to the original principal amount of the bond plus 50% of that principal). The Republic's self-imposed conditions— repealing legislative obstacles and paying settlements in full—represent a

"dramatic shift in . . . policy" that justifies vacating the injunctions.  *See Horne v. Flores*, 557 U.S. 433, 461 (2009).

Although the court takes no position on the reasonableness of the Republic's Proposal, the court does recognize the Republic's earnest efforts to negotiate and its striking change in attitude toward settlement since President Macri assumed office.  Just as the Republic's conduct in 2012 and 2015 influenced the court's decision to issue the original and "me too" injunctions, so too must the court consider the Republic's present behavior.  The balance of equities has shifted, for no longer is the Republic exhibiting "reluctance to entertain meaningful settlement discussions before the Special Master."  Op. & Order 10, *NML Capital, Ltd. v. Republic of Argentina*, No. 14-cv-8601 (S.D.N.Y. Oct. 30, 2015).

Even the objecting plaintiffs have recognized that the Republic's willingness to negotiate a settlement impacts the balance of equities.  In arguing that the equities weigh in their favor, those plaintiffs previously invoked the Republic's "refus[al] to negotiate a settlement" and claimed that "[t]he biggest obstacle to settlement is Argentina itself."  Pls.' Reply Mem. L. Supp. Mot. Specific Performance 6, 11, *NML Capital, Ltd. v. Republic of Argentina*, No. 14-cv-8601 (S.D.N.Y. Oct. 9, 2015).  And those plaintiffs have acknowledged, from the beginning to the end, that the injunctions would promote settlement and that plaintiffs would support that kind of resolution.[5]

---

[5] *See* Pls.' Mem. L. Supp. Renewed Mot. Specific Enforcement 18, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Jan. 6, 2012) (arguing that the injunctions "could pave the way to a global resolution of this protracted dispute," while noting that a similar injunction

Yet another changed circumstance significantly alters the equities: a number of plaintiffs have now agreed in principle to settle. If the court refused to vacate the injunctions, it would unfairly deny those plaintiffs the opportunity to resolve their disputes amicably with the Republic. It might also create an incentive for the remaining holdout plaintiffs to shun settlement, knowing that they derive leverage from the ability to prevent the Republic and the other plaintiffs from consummating agreements. The injunctions must not be "turned through changing circumstances into an instrument of wrong." *See Swift*, 286 U.S. at 115.

It is also significant that the Republic has not requested the immediate and unconditional lifting of the injunctions. Rather, at the Republic's own urging, the injunctions would remain in effect until it actually makes full payment on all agreements in principle entered into by February 29, 2016, the day before the Argentine Congress reconvenes on March 1. *Cf. Badgley*, 853 F.2d at 51–52 (permitting modification of an equitable order upon fulfillment of certain conditions). The Republic's willingness to impose this condition on itself is compelling evidence of its sincerity and good faith, and stands in stark contrast to the contumacious policies of prior administrations. And the court's retention of jurisdiction should allay any concern that the Republic will return to its old ways.

---

in another case prompted the sovereign "to settle with the plaintiff"); Pls.' Reply Mem. L. Supp. Mot. Specific Performance 12, *NML Capital, Ltd. v. Republic of Argentina*, No. 14-cv-8601 (S.D.N.Y. Oct. 9, 2015) ("NML would most welcome meaningful settlement discussions with Argentina before the Special Master.").

In sum, circumstances have changed dramatically since the court first issued the injunctions in February 2012. The court finds and holds that maintaining the injunctions would now be inequitable.

**2. Vacating the Injunctions Serves the Public Interest.**

Vacating the injunctions would serve the public interest by ceasing the collateral effects they have on third parties. It would also promote amicable resolution of protracted legal disputes—both generally and in this particular litigation.

The most notable third parties affected by the injunctions are the exchange bondholders. But there are others, too: the financial intermediaries that the Republic engages to help it pay the exchange bondholders; the FAA bondholders who favor settlement but who are not parties to every single case; and the Argentine people generally. Each of these groups will benefit if the court vacates the injunctions.

The court has repeatedly voiced its concern about the exchange bondholders' plight. Hr'g Tr. 11, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Aug. 21, 2014) (bemoaning the injunctions' collateral damage to "very innocent third parties"); Hr'g Tr. 15, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Aug. 8, 2014) ("[S]ettling this case . . . will assist real human beings."). When some plaintiffs first sought injunctive relief, they reassured the court that there was "no evidence" that the injunctions would "stop or interfere or impair in any way those exchange offers." Hr'g Tr. 35, 4–5, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Sept. 28,

2011). Yet that is precisely what has happened. Of course, the Republic's decision to default on the exchange bonds was its own, and plaintiffs bear no blame for seeking these injunctions four years ago. But the court may still *now* recognize that it is in the public interest for the Republic to resume paying its restructured debt. If the court vacates the injunctions, the Republic may once again pay the exchange bondholders—something that has not happened for nearly two years.

Vacating the injunctions in all cases further benefits third parties by allowing any FAA bondholder to resolve claims against the Republic. For example, plaintiff EM Limited agreed to settle with the Republic for nearly $1 billion after signing a simple, one-page, handwritten Agreement in Principle.[6] If another plaintiff, armed with an injunction in a different action, could scupper that deal, EM—as a third party to that action—would suffer. The court never intended this result. *See* Hr'g Tr. 39, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Sept. 28, 2011) ("I have felt that the Republic of Argentina had a right to make an exchange offer, and that any bondholders who wished to take that exchange offer had a right to take it. And if they felt that it was beneficial to them, why, that was up to them to make that decision."). Accordingly, if the court lifts the injunctions, it will do so in all cases.

---

[6] Where there is good will toward each other, the parties have had no difficulty reaching agreements in principle that are uncomplicated and effective. The court commends the Special Master for helping those parties understand that complexity is not a requisite when agreeing to a monetary settlement of a judgment.

The Court of Appeals has also recognized this court's discretion to consider "the health of the nation" when considering appropriate remedies. *EM Ltd. v. Republic of Argentina*, 131 F. App'x 745, 747 (2d Cir. 2005) ("Exercising discretion with respect to pre- and post-judgment remedies, the District Court acted well within its authority to vacate the remedies in order to avoid a substantial risk to the successful conclusion of the debt restructuring. That restructuring is obviously of critical importance to the economic health of a nation."). Allowing the Republic to reenter the capital markets will undoubtedly help stimulate its economy and thus benefit its people. It might even encourage other indebted nations to choose compromise over intransigence.

Finally, vacating the injunctions serves the public interest by encouraging settlement to resolve disputes generally—particularly such protracted ones—as well as the concern for finality in this particular litigation. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (recognizing the "strong judicial policy in favor of settlements"). Although such aspirations are broad, the court is mindful that the two interests plaintiffs invoked to support the original injunctions were "enforcing agreements and upholding the rule of law." Pls.' Mem. L. Supp. Renewed Mot. Specific Enforcement 14, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Jan. 6, 2012). The public has a compelling interest in encouraging amicable resolution of longstanding legal battles and ending this massive litigation that dates back nearly fourteen years. *See* Compl., *Applestein v. Argentina Republic*, No. 02-cv-1773 (S.D.N.Y. Mar. 6, 2002). Allowing settlement will further these goals.

### 3. The Court May Exercise its Discretion to Vacate the Injunctions.

Some plaintiffs argue that the court does not have the power to vacate the injunctions. They claim that the court must protect the injunctions' purpose of enforcing the *pari passu* clause. Essentially, these plaintiffs believe the court cannot alter the injunctions if doing so would mean the Republic could pay the exchange bondholders without (1) ratably paying plaintiffs or (2) settling with plaintiffs for the full amount of their claims.

It is important to recall that the plaintiffs had no absolute legal right to the injunctions. An injunction is an extraordinary measure that is not normally available for breach of contract. The *pari passu* clause never *required* the equitable relief that the plaintiffs requested and the court granted. Rather, the court exercised its inherent equitable power to fashion a remedy for the Republic's breach of the plaintiffs' contractual rights. *See* Op., *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6979 (S.D.N.Y. Nov. 21, 2012) (explaining that the injunctions do "not literally to carry out the *pari passu* clause"). In short, the injunctions were a discretionary remedy, not a legal entitlement.

When the court was considering how to craft this equitable remedy, it stressed that the injunctions should not prevent bondholders from settling their claims with the Republic. *See* Hr'g Tr. 40, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Sept. 28, 2011) (expressing the court's desire to find a remedy that would provide "leverage" without "do[ing] something that would prejudice the rights and opportunities of the people who want to make exchanges"). For years, the court has repeatedly recognized that the only viable

21

way to end this litigation is through settlement—surely for less than the full claim, as the notion of "settlement" implies.[7]  To that end, the court appointed a Special Master, who has worked tirelessly and, now, effectively to encourage compromise.

Of course, the court does not have the power to force plaintiffs to accept a settlement.  The court notes, however, that the Republic and the Special Master worked diligently to give plaintiffs the opportunity to negotiate and settle their claims.  And that process may still continue.  Until February 29, 2016, *all* FAA bondholders have the right to accept the terms of the Republic's Proposal, and they are certainly free to make counteroffers.  If they reach agreements by that date, they will receive the protections incorporated by this ruling—namely, the Republic must pay their settlements in full before the injunctions are lifted.

Some plaintiffs may choose to reject the Republic's Proposal.  That is their right.  But that does not diminish the court's discretion to vacate injunctions that would prevent resolution of a meaningful portion of this litigation.  The court

---

[7]  *See* Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Aug. 4, 2014) ("It is most important to stay at the settlement table so that the issues in the case can be resolved."); Hr'g Tr. 29, *NML Capital, Ltd. v. Republic of Argentina*, No. 14-cv-8601 (S.D.N.Y. Oct. 28, 2015) ("I have to assume that on this late date in this very lengthy litigation . . . that the interested parties, all of them, will participate in settlement negotiations."); Hr'g Tr. 23–24, *NML Capital, Ltd. v. Republic of Argentina*, No. 14-cv-8601 (S.D.N.Y. May 29, 2015) ("[T]he way to ultimately resolve this litigation must come through settlement."); Hr'g Tr. 16, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Apr. 22, 2015) ("I hope the Republic at long last will be willing to negotiate."); Hr'g Tr. 10–11, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Aug. 21, 2014) ("[T]he thing that is of paramount necessity is to have a settlement."); Hr'g Tr. 8–9, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Aug. 8, 2014) ("[T]he really truly important thing is to recognize that this matter will not be resolved without a successful settlement.").  Indeed, even those plaintiffs who now oppose the motion to vacate have previously declared that resolution of these actions would come through settlement.  *See* Hr'g Tr. 7, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y. Aug. 21, 2014) ("[W]e, too, believe that a settlement is the way that this matter will ultimately be resolved.").

cannot countenance an equitable remedy that would allow some plaintiffs to hold other plaintiffs hostage. If that were truly the injunctions' effect, it would surely constitute a form of "unforeseen obstacle[]" the court had not previously contemplated. *See Rufo*, 502 U.S. at 383.

Lastly, the court wishes to note that the Special Master, Daniel Pollack, has devoted himself to a remarkable degree to carrying out his duties, and he has done so with great skill. His efforts will undoubtedly be of great value in the ultimate resolution of this litigation. He has the thanks of the court.

<u>Conclusion</u>

For these reasons, the court now indicates that it would vacate the injunctions upon the occurrence of two conditions precedent:

(1) The Republic repeals all legislative obstacles to settlement with the FAA bondholders, including the Lock Law and the Sovereign Payment Law;

(2) For all plaintiffs that enter into agreements in principle with the Republic on or before February 29, 2016, the Republic must make full payment in accordance with the specific terms of each such agreement. The Republic must also notify the court once those plaintiffs have all received full payment.

If the Court of Appeals remands to allow this court to grant the Republic's motion to vacate, the injunctions will be lifted automatically upon fulfillment of these two conditions.

SO ORDERED

Dated: New York, New York
      February 19, 2016

_____
Thomas P. Griesa
United States District Judge

23

# Exhibit D

File No.33-83954 Exhibit B
Rule 424(b)(4)

REC'D S.E.C.

12 4 1994

016

FISCAL AGENCY AGREEMENT

between

THE REPUBLIC OF ARGENTINA

and

BANKERS TRUST COMPANY, Fiscal Agent

Dated as of October 19, 1994

TABLE OF CONTENTS

Page

1. Securities Issuable in Series . . . . . . . . . . . . . . . 1

2. Appointment of Fiscal Agent; Paying Agents . . . . . . . . 3

3. Authentication . . . . . . . . . . . . . . . . . . . . . . 3

4. Registration, Transfers and Exchanges . . . . . . . . . . 4

5. Global Securities . . . . . . . . . . . . . . . . . . . . 6

6. Payment . . . . . . . . . . . . . . . . . . . . . . . . . 9

7. Additional Amounts . . . . . . . . . . . . . . . . . . . . 11

8. Mutilated, Destroyed, Stolen or Lost Certificates . . . . 11

9. Redemption and Purchases . . . . . . . . . . . . . . . . . 12

10. Cancellation and Destruction . . . . . . . . . . . . . . . 14

11. Negative Pledge and Covenants . . . . . . . . . . . . . . 14

12. Default; Acceleration of Maturity . . . . . . . . . . . . 17

13. Limit on Liability; Acceptance of Appointment . . . . . . 19

14. Expenses and Indemnity . . . . . . . . . . . . . . . . . . 20

15. Successor Fiscal Agent . . . . . . . . . . . . . . . . . . 20

16. Meetings of Holders of Securities; Modifications . . . . . 22

17. Further Issues . . . . . . . . . . . . . . . . . . . . . . 26

18. Reports . . . . . . . . . . . . . . . . . . . . . . . . . 26

19. Forwarding of Notice; Inquiries . . . . . . . . . . . . . 27

20. Listings . . . . . . . . . . . . . . . . . . . . . . . . . 27

21. Notices . . . . . . . . . . . . . . . . . . . . . . . . . 27

22. Consent to Service; Jurisdiction . . . . . . . . . . . . . 28

23. Governing Law and Counterparts . . . . . . . . . . . . . . 29

-i-

2

Page

24. Headings . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Exhibit A - Form of Registered Security

*3*.

THE REPUBLIC OF ARGENTINA

FISCAL AGENCY AGREEMENT dated as of October 19, 1994, between The Republic of Argentina (the "Republic") and Bankers Trust Company, a New York banking corporation, as fiscal agent.

1. <u>Securities Issuable in Series.</u> (a) The Republic may issue its notes, securities, debentures or other evidences of indebtedness (the "Securities") in separate series from time to time (each such series of Securities being hereinafter referred to as a "Series" or the "Securities of a Series"). The aggregate principal amount of the Securities of all Series which may be authenticated and delivered under this Agreement and which may be outstanding at any time is not limited by this Agreement. The text of the Securities of a Series delivered to the Fiscal Agent (as hereinafter defined) for authentication on original issuance pursuant to Section 3 of this Agreement shall establish (i) the specific designation of the Securities of such Series (which shall distinguish the Securities of such Series from all other Series); (ii) any limit on the aggregate principal amount of the Securities of such Series which may be authenticated and delivered under this Agreement (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of such Series pursuant to the provisions of this Agreement or of the Securities of such Series); (iii) the price or prices (expressed as a percentage of the aggregate principal amount thereof) at which the Securities of such Series will be issued; (iv) the date or dates on which the principal and premium, if any, of the Securities of such Series is payable; (v) the rate or rates (which may be fixed or floating) per annum at which the Securities of such Series shall bear interest, if any, the date or dates from which such interest, if any, shall accrue, the interest payment dates on which such interest shall be payable and the record dates for the determination of holders of the Securities of such Series to whom interest is payable; (vi) the place or places where the principal of, and premium, if any, and interest on the Securities of such Series are payable; (vii) the price or prices at which, the period or periods within which and the terms and conditions upon which Securities of such Series may be redeemed, in whole or in part, at the option of the Republic or otherwise; (viii) the obligation, if any, of the Republic to redeem, purchase or repay Securities of such Series pursuant to any sinking fund or analogous provisions and the price or prices at which, the

period or periods within which, and the terms and conditions upon which Securities of such Series shall be redeemed, purchased or repaid, in whole or in part, pursuant to such obligation; (ix) the minimum denomination and any multiples thereof of the Securities of such Series, which may be in U.S. dollars, another foreign currency, units of two or more currencies or amounts determined by reference to an index; (x) the currency or currencies in which the principal, premium, if any, or interest on such Securities may be payable; (xi) the manner in which the amount of payments of principal, premium, if any, or interest on such Securities is to be determined and if such determination is to be made with reference to any index; (xii) any covenants or agreements of the Republic and events which give rise to the right of a holder of a Security of such Series to accelerate the maturity of such Security other than such covenants, agreements or events specified herein; and (xiii) any other terms of the Securities of such Series. Securities may be issuable pursuant to warrants (if so provided in the text of such Securities) and the Fiscal Agent may act as warrant agent or in any similar capacity in connection therewith.

   (b)   The Securities of a Series are to be issued in fully registered form only, without interest coupons, and will be issuable in the denominations specified in the text of the Securities of such Series, substantially in the form of Exhibit A hereto ("registered Securities").   The Securities of a Series may also have such additional provisions, omissions, variations or substitutions as are not inconsistent with the provisions of this Agreement, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with any law or with any rules made pursuant thereto or with the rules of any securities exchange or governmental agency or as may, consistent herewith, be determined by the officials executing such Securities, as evidenced by their execution of such Securities.   All Securities of a particular Series shall be otherwise substantially identical except as to denomination and as provided herein.

   (c)   The Securities will constitute (except as provided in Section 11 below) direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves.   The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).

2

2.  Appointment of Fiscal Agent; Paying Agents.
(a)  The Republic hereby appoints Bankers Trust Company, at present having its office at 4 Albany Street, New York, New York 10006 as fiscal agent, transfer agent, registrar and principal paying agent of the Republic for the Securities, upon the terms and conditions set forth herein.  Bankers Trust Company accepts such appointments, and along with its successors as such fiscal agent, is hereinafter referred to as the "Fiscal Agent".  The Republic reserves the right to appoint different fiscal agents for different series of securities.

(b)  The Republic may appoint one or more additional agents (hereinafter called a "Paying Agent" or the "Paying Agents") for the payment (subject to the applicable laws and regulations) of the applicable payment of principal, premium, if any, and interest or Additional Amounts (as defined in Section 7 hereof), if any, on the Securities at such place or places as the Republic may determine pursuant to an agreement (each, a "Paying Agency Agreement"); provided that the Republic will maintain at all times until no Security is outstanding a Paying Agent (who may be the Fiscal Agent) in the Borough of Manhattan, The City of New York.  The Republic will keep the Fiscal Agent informed as to the name, address, and telephone and facsimile numbers of each Paying Agent appointed by it and will notify the Fiscal Agent of the resignation of any Paying Agent.  The Fiscal Agent shall arrange with each Paying Agent for the payment, as provided herein, of the principal and interest or Additional Amounts, if any, on the Securities on terms previously approved in writing by the Republic (further references herein to principal and interest shall be deemed to also refer to any Additional Amounts).

3.  Authentication.  (a)  The Fiscal Agent shall, upon delivery of the Securities to it by the Republic, and a written order or orders to authenticate and deliver Securities in a stated aggregate principal amount, (i) authenticate and register not more than said aggregate principal amount of Securities and deliver them in accordance with the written order or orders of the Republic and (ii) thereafter authenticate and register Securities and deliver them in accordance with the provisions of Sections 4, 5 and 9 of this Agreement.  The total principal amount of the Securities to be issued and outstanding at any time shall not be limited hereby.

(b)  The Fiscal Agent may, with the prior written consent of the Republic, appoint by an instrument or instruments in writing one or more agents (which may include

3

itself) for the authentication of Securities of a Series
and, with such consent, vary or terminate any such
appointment upon written notice and approve any change in
the office through which any authenticating agent acts. The
Republic (by written notice to the Fiscal Agent and the
authenticating agent whose appointment is to be terminated)
may also terminate any such appointment at any time. The
Fiscal Agent hereby agrees to solicit written acceptances
from the entities concerned (in form and substance
satisfactory to the Republic) of such appointments. In its
acceptance of such appointment; each such authenticating
agent shall agree to act as an authenticating agent pursuant
to the terms and conditions of this Agreement.

    (c) Until definitive Securities of a Series are
prepared, the Republic may execute, and there shall be
authenticated and delivered in accordance with the
provisions hereof (in lieu of definitive Securities of such
Series), temporary Securities of such Series. Such
temporary Securities of a Series shall be subject to the
same limitations and conditions and entitled to the same
rights and benefits as definitive Securities of such Series,
except as provided herein or therein. Temporary Securities
of a Series shall be exchangeable for definitive Securities
of such Series when such definitive Securities are available
for delivery; and upon the surrender for exchange of such
temporary Securities of a Series, the Republic shall execute
and there shall be authenticated and delivered, in
accordance with the provisions of Sections 3 and 4 hereof,
in exchange for such temporary Securities of a Series, a
like aggregate principal amount of definitive Securities of
such Series and of like tenor. The Republic shall pay all
charges, including (without limitation) stamp and other
taxes and governmental charges, incident to any exchange of
temporary Securities for definitive Securities. All
temporary Securities shall be identified as such and shall
describe the right of the holder thereof to effect an
exchange for definitive Securities and the manner in which
such an exchange may be effected.

    4.  Registration, Transfers and Exchanges. (a)
The Fiscal Agent, as agent of the Republic for such purpose,
will at all times keep at the office of the Fiscal Agent in
the Borough of Manhattan, The City of New York, a register
or registers for the registration and registration of
transfers and exchanges of Securities, in which shall be
entered the names and addresses of the registered holders of
Securities and the particulars of the Securities held by
such registered holders. Subject to Section 5 hereof, upon
surrender for transfer of any Security of any Series at said
office, the Fiscal Agent shall authenticate, register and

4

deliver in the name of the transferee or transferees a new Security or Securities of any Series for a like aggregate principal amount. Subject to Section 5 hereof, upon surrender of any Security at said office for exchange, the Fiscal Agent shall authenticate, register and deliver in exchange for such Security a new Security or new Securities of the appropriate authorized denomination(s) and for a like aggregate principal amount in accordance with the provisions of the Securities.

(b) All new Securities authenticated and delivered by the Fiscal Agent upon registration of transfer or in exchange for Securities of other denominations shall be so dated that neither gain nor loss of interest shall result from such registration of transfer or exchange.

(c) All Securities presented or surrendered for registration of transfer, exchange or payment shall be accompanied by a written instrument or instruments of transfer in form satisfactory to the Fiscal Agent, duly executed by the registered holder or its attorney duly authorized in writing and with the signatures thereon duly guaranteed by a commercial bank or trust company having its principal office in The City of New York or by a member of the New York Stock Exchange.

(d) The Fiscal Agent shall not impose any service charge on the registered holder on any such registration, transfer or exchange of Securities; however, the Republic may require of the party requesting such transfer or exchange, as a condition precedent to the exercise of any right of transfer or exchange contained in this Agreement or in the Securities, the payment of a sum sufficient to cover any stamp or other tax or other governmental charge payable in connection therewith.

(e) The Republic, the Fiscal Agent and any Paying Agent may treat the person in whose name any Security is registered as the owner of such Security for the purpose of receiving payment of principal of and interest on such Security, and all other purposes whatsoever, whether or not such Security be overdue, and none of the Republic, the Fiscal Agent or any Paying Agent shall be affected by any notice to the contrary and any such payment shall be a good and sufficient discharge to the Republic, the Fiscal Agent and any Paying Agent for the amount so paid.

(f) The Fiscal Agent shall not be required to register any transfer or exchange of Securities during the period from the Regular Record Date (as defined in such Securities) to the Interest Payment Date (as defined in such

5

Securities) and for the purposes of any interest payment
made in accordance with Section 6 hereof, such payment shall
be made to those persons in whose names the Securities are
registered on such Regular Record Date.

5.    Global Securities.   The Securities of any
Series may be issued in whole or in part in the form of one
or more global securities ("Global Securities") that will be
deposited with, or on behalf of, a depositary (the
"Depositary") relating to such Series.   Global Securities
may be issued only in fully registered form and in either
temporary or definitive form.   Unless and until it is
exchanged in whole or in part for Securities in definitive
form, a Global Security may not be transferred except as a
whole by the Depositary for such Global Security to a
nominee of such Depositary or by a nominee of such
Depositary to such Depositary or another nominee of such
Depositary or by such Depositary or any nominee of such
Depositary to a successor Depositary or any nominee of such
successor.

Upon the issuance of a Global Security, the
Depositary for such Global Security will credit on its book-
entry registration and transfer system the respective
principal amounts of the Securities represented by such
Global Security to the accounts of Persons that have
accounts with such Depositary ("Participants").   The
accounts to be credited shall be designated by the agents or
underwriters with respect to such Securities or by the
Republic if such Securities are offered and sold directly by
the Republic.   Ownership of beneficial interests in a Global
Security will be limited to Participants or Persons that may
hold interests through Participants.   Ownership of
beneficial interests in a Global Security will be shown on,
and the transfer of that ownership will be affected only
through, records maintained by the applicable Depositary
(with respect to interests of Participants) and records of
Participants (with respect to interests of Persons who hold
through Participants).   Owners of beneficial interests in a
Global Security (other than Participants) will not receive
written confirmation from the applicable Depositary of their
purchase.   Each beneficial owner is expected to receive
written confirmation providing details of the transaction,
as well as periodic statements of its holdings, from the
Depositary (if such beneficial owner is a Participant) or
from the Participant through which such beneficial owner
entered into the transaction (if such beneficial owner is
not a Participant).   The laws of some states require that
certain purchasers of securities take physical delivery of
such securities in definitive form.   Such limits and such

6

laws may impair the ability to own, pledge or transfer
beneficial interests in a Global Security.

So long as the Depositary for a Global Security,
or its nominee, is the registered owner of such Global
Security, such Depositary or such nominee, as the case may
be, will be considered the sole owner or holder of the
Securities represented by such Global Security for all
purposes under this Agreement. Except as specified below or
with respect to the terms of Securities of a Series, owners
of beneficial interests in a Global Security will not be
entitled to have any of the individual Securities
represented by such Global Security registered in their
names, and will not receive or be entitled to receive
physical delivery of any such Securities in definitive form
and will not be considered the owners or holders thereof
under such Securities or this Agreement. Accordingly, each
Person owning a beneficial interest in a Global Security
must rely on the procedures of the Depositary for such
Global Security and, if such Person is not a Participant, on
the procedures of the Participant through which such Person
owns its interest, to exercise any rights of a holder under
the Securities or this Agreement. The Republic understands
that under existing industry practices, if the Republic
requests any action of holders, or an owner of a beneficial
interest in such Global Security desires to take any action
which a holder is entitled to take under the Fiscal Agency
Agreement, the Depositary for such Global Security would
authorize the Participants holding the relevant interests to
take such action, and such Participants would authorize
beneficial owners owning through such Participants to take
such action or would otherwise act upon the instructions of
beneficial owners holding through them.

Payments of principal of and any premium and any
interest on Securities registered in the name of a
Depositary or its nominee will be made to the Depositary or
its nominee, as the case may be, as the holder of the Global
Security representing such Securities. None of the
Republic, any Paying Agent or the Fiscal Agent, in its
capacity as registrar for such Debt Securities, will have
any responsibility or liability for any aspect of the
records relating to or payments made on account of
beneficial interests in a Global Security or for
maintaining, supervising or reviewing any records relating
to such beneficial interests.

The Republic expects that the Depositary for a
series of Securities or its nominee, upon receipt of any
payment of principal, premium or interest in respect of a
Global Security representing such Securities will credit

7

*10*

Participants' accounts with payments in amounts
proportionate to their respective beneficial interests in
the principal amount of such Global Security as shown on the
records of such Depositary. The Republic also expects that
payments by Participants to owners of beneficial interests
in such Global Security held through such Participants will
be governed by standing instructions and customary
practices, as is now the case with securities held for the
accounts of customers in bearer form or registered in
"street name". Such payments will be the responsibility of
such Participants.

If at any time the Depositary notifies the
Republic that it is unwilling or unable to continue as
Depositary for the Securities, or if the Republic notifies
the Depositary that it will no longer continue as Depositary
for the Securities, or if at any time the Depositary ceases
to be a clearing agency registered under the United States
Securities Exchange Act of 1934, as amended, or otherwise
ceases to be eligible to be a Depositary, the Republic shall
appoint a successor Depositary with respect to such
Securities. If a successor Depositary for such Securities
is not appointed by the Republic within 90 days after the
Republic receives such notice or becomes aware of such
ineligibility, or if the Depositary notifies the Fiscal
Agent or the Republic of the acceleration of the
indebtedness under the Securities in accordance with the
terms of the Securities, the Republic will execute, and the
Fiscal Agent upon receipt of such executed definitive
Securities will authenticate and deliver, Securities in
definitive registered form without coupons, in denominations
of U.S.$1,000 and integral multiples thereof (unless some
other denomination is specified in terms of the Securities
of a Series), in an aggregate principal amount equal to the
aggregate principal amount of the Global Securities.

The Republic may at any time and in its sole
discretion determine not to have any of the Securities held
in the form of Global Securities. In such event, the
Republic will execute, and the Fiscal Agent, upon receipt of
such executed definitive Securities will authenticate and
deliver, Securities in definitive registered form without
coupons, in denominations of U.S.$1,000 and integral
multiples thereof (unless some other denomination is
specified in terms of the Securities of a Series, in an
aggregate principal amount equal to the aggregate principal
amount of the Global Securities.

Upon the exchange of the Global Securities for
Securities in definitive registered form the Global
Securities shall be cancelled by the Fiscal Agent.

8

Securities in definitive registered form issued in exchange
for the Global Securities pursuant to this section shall be
registered in such names as the Depositary, pursuant to
instructions from its direct or indirect participants or
otherwise, shall instruct the Fiscal Agent or the Republic.
The Fiscal Agent shall deliver such Securities in definitive
registered form to or as directed by the persons in whose
names such definitive registered Securities are so
registered and will direct all payments in
respect of such Securities in definitive registered form to
the registered holders thereof on or after such exchange
regardless of whether such exchange occurred after the
record date for such payment.

All Securities in definitive registered form,
issued upon the exchange of the Global Securities, shall be
valid obligations of the Republic, evidencing the same debt,
and entitled to the same benefits under this Agreement, as
the Global Securities surrendered upon such exchange.

6.    Payment.  (a)  The Republic will pay to the
Fiscal Agent, the amounts, at the times and for the purposes
set forth herein and in the text of the Securities of a
Series, not later than 1:00 p.m. New York City time to an
account to be specified by the Fiscal Agent, on the day on
which the same shall become due, all amounts to be paid on
the Securities of such Series as required by the terms of
the Securities, and the Republic hereby authorizes and
directs the Fiscal Agent, from the funds so paid to it, to
make payments in respect of the Securities in accordance
with their terms and the provisions set forth below.  If any
date for payment in respect of a Security is not a Business
Day, such payment shall be made on the next following
Business Day.  "Business Day" means a day on which banking
institutions in The City of New York and at the applicable
place of payment are not authorized or obligated by law or
executive order to be closed.  The Fiscal Agent shall
arrange directly with any Paying Agent who may have been
appointed pursuant to the provisions of Section 2 hereof for
the payment from funds so paid by the Republic of the
principal of (and premium, if any) and any interest on the
Securities of such Series as set forth herein and in the
text of said Securities.  Notwithstanding the foregoing,
where the terms of such Securities expressly so provide and
the Republic so notifies the Fiscal Agent the Republic may
provide directly a Paying Agent with funds for the payment
of the principal thereof and premium and interest, if any,
payable thereon under an agreement with respect to such
funds containing substantially the same terms and conditions
set forth in this Section; and the Fiscal Agent shall have

12

no responsibility with respect to any funds so provided by the Republic to any such Paying Agent.

(b) All payments with respect to the Global Securities shall be made by the Fiscal Agent to the Depositary in accordance with the regular procedures established from time to time by the Depositary.

(c) Payment of principal and premium, if any, in respect of Securities in definitive registered form issued pursuant hereto shall be made at the office of the Fiscal Agent in the Borough of Manhattan, The City of New York, or at the office of any Paying Agent appointed by the Republic for such purpose pursuant to this Agreement against surrender of such Securities. Any interest on Securities of a Series shall be paid, unless otherwise provided in the text of the Securities of such Series, to the persons in whose names such Securities are registered on the register maintained for such purposes at the close of business on the record dates designated in the text of the Securities of such Series. If so provided with respect to the Securities of a Series, payments of interest due prior to or on maturity may be made by forwarding by post or otherwise delivering a check to the registered addresses of registered holders of Securities, or, at the option of the Republic, otherwise transferring funds to the registered holders of the Securities. Such check shall be made payable to the order of the registered holder or, in the case of joint registered holders, to the order of all such joint holders (failing instructions from them to the contrary) and shall be sent to the address of that one of such joint holders whose name stands first in the register as one of such joint holders. The Fiscal Agent shall mail or otherwise deliver such checks to the names and addresses of registered holders of Securities sufficiently in advance of the relevant due date for payment that receipt of such checks by registered holders on or before the due date is reasonably assured.

(d) All money paid to the Fiscal Agent under Section 6(a) of this Agreement shall be held by it in a separate account from the moment when such money is received until the time of actual payment, in trust for the registered holders of Securities to be applied by the Fiscal Agent to payments due on the Securities at the time and in the manner provided for in this Agreement and the Securities. Any money deposited with the Fiscal Agent for the payment in respect of any Security remaining unclaimed for two years after such principal or interest shall have become due and payable shall be repaid to the Republic upon written request without interest, and the registered holder

10

of Security may thereafter look only to the Republic for any payment to which such holder may be entitled.

7. **Additional Amounts.** All payments of principal, premium, if any, and interest in respect of the Securities by the Republic will be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied, collected, withheld or assessed by or within the Republic or any authority therein or thereof having power to tax (together "Taxes"), unless such withholding or deduction is required by law. In such event, the Republic shall pay such additional amounts ("Additional Amounts") as will result in receipt by the holders of Securities of such amounts of principal, premium and interest as would have been received by them had no such withholding or deduction been required, except that no such Additional Amounts shall be payable with respect to any Security:

(a) to a holder (or to a third party on behalf of a holder) where such holder is liable for such Taxes in respect of any Security by reason of his having some connection with the Republic other than the mere holding of such Security or the receipt of principal, premium or interest in respect thereof; or

(b) presented for payment more than 30 days after the Relevant Date, as defined herein, except to the extent that the holder thereof would have been entitled to Additional Amounts on presenting the same for payment on the last day of such period of 30 days.

"Relevant Date" in respect of any Security means the date on which payment in respect thereof becomes due or (if the full amount of the money payable on such date has not been received by the Fiscal Agent on or prior to such due date) the date on which notice is duly given to the holders in the manner described in Section 21 below that such moneys have been so received and are available for payment. Any reference herein to "principal" and/or "interest" shall be deemed to include any Additional Amounts which may be payable under the Securities.

So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

11

14

8.   **Mutilated, Destroyed, Stolen or Lost**
**Certificates.**   (a)  In case any Security certificate is
mutilated, defaced, destroyed, stolen or lost, application
for replacement shall be made to the Fiscal Agent who shall
promptly transmit such application to the Republic.  Such
application shall be accompanied by the mutilated or defaced
certificate or receipt of proof, satisfactory to the
Republic in its discretion, of the destruction, theft or
loss of the certificate, and upon receipt by it of an
indemnity satisfactory to the Republic and the Fiscal Agent,
the Republic shall execute a new certificate of like tenor,
and upon written instructions from the Republic the Fiscal
Agent shall thereupon cancel the mutilated or defaced
certificate if applicable and authenticate, register and
deliver such new certificate in exchange for the mutilated
or defaced certificate or in substitution for the destroyed,
stolen or lost certificate.  Such new certificate will be so
dated that neither gain nor loss in interest will result
from such exchange or substitution.  All expenses associated
with procuring such indemnity and with the preparation,
authentication and delivery of a new certificate will be
borne by the registered holder of the mutilated, defaced,
destroyed, stolen or lost certificate.

(b)  Whenever any Security, alleged to have been
lost, stolen or destroyed in replacement for which a new
Security has been issued, is presented to the Fiscal Agent
or any Paying Agent for payment at maturity or at redemption
or for registration of transfer or exchange, the Fiscal
Agent or the Paying Agent, as the case may be, shall
immediately notify the Republic in respect thereof and shall
deal with such Security in accordance with the Republic's
instructions.

9.   **Redemption and Purchases.**  (a)  Unless
otherwise permitted by the terms of the Securities of a
Series, Securities will not be redeemable prior to maturity
at the option of the Republic or the registered holders
thereof.

(b)  The Republic hereby authorizes and directs
the Fiscal Agent to administer the sinking fund with respect
to the Securities of any Series having a mandatory sinking
fund or similar provision in accordance with the provisions
set forth in the terms of the Securities of such Series.  If
the provisions of the Securities of a Series permit the
Republic to redeem Securities of such Series at its option,
then the Republic shall, unless otherwise provided in the
terms of the Securities of such Series, give written notice
to the Fiscal Agent of the principal amount of Securities of
such Series to be so redeemed not less than 60 days prior to

12

/5

the optional redemption date. If the provisions of the
Securities of a Series permit the Republic to redeem
Securities of such Series only upon the occurrence or
satisfaction of a condition or conditions precedent thereto,
then prior to the giving of notice of redemption of the
Securities of such Series, the Republic shall deliver to the
Fiscal Agent a certificate stating that the Republic is
entitled to effect such redemption and setting forth in
reasonable detail a statement of facts showing that such
condition or conditions precedent have occurred or been
satisfied. If the provisions of the Securities of a Series
obligate the Republic at the request of the holders to
redeem Securities of such Series upon the occurrence of
certain events (each hereinafter referred to as a
"Redemption Event"), then the Republic shall promptly
deliver written notice to the Fiscal Agent that a Redemption
Event has occurred. Promptly after receiving written notice
of a Redemption Event, the Fiscal Agent shall deliver
written notice to each holder of the Securities of such
Series stating that a Redemption Event has occurred and that
such holder may tender its Securities by delivering written
notice of its election to tender for redemption, together
with the certificate or certificates for the Securities to
be redeemed, to the Fiscal Agent within 60 days of the
Fiscal Agent's notice (hereinafter referred to as the
"Option Period"). Thereafter, the Republic shall (i) in the
manner provided in the provisions of the Securities of such
Series and as contemplated by Section 6 hereof, arrange with
the Fiscal Agent (and each Paying Agent for the purpose, if
applicable) for the provision of funds sufficient to make
payments to such holders in respect of such redemptions, and
(ii) redeem such Securities within 60 days of the expiration
of the Option Period. The Fiscal Agent shall provide the
Republic from time to time during and upon expiration of the
Option Period with reasonable detailed information as to
Securities tendered for redemption.

All notices of redemption of or Redemption Events
relating to Securities of a Series to the holders thereof
shall be made in the name and at the expense of the Republic
and shall be given in accordance with the provisions
applicable thereto set forth in the terms of the Securities
of such Series.

Whenever less than all the Securities of a Series
with the same interest rate and maturity at any time
outstanding are to be redeemed at the option of the
Republic, the particular Securities of such Series with such
interest rate and maturity to be redeemed shall be selected
not more than 60 days prior to the redemption date by the
Fiscal Agent from the outstanding Securities of such Series

not previously called for redemption by such usual method as
the Fiscal Agent shall deem fair and appropriate, which
method may provide for the selection for redemption of
portions of the principal amount of registered Securities of
such Series the minimum denominations of which, if any, will
be specified in the terms of the Securities of such Series.
Upon any partial redemption of a registered Security of a
Series, the Fiscal Agent shall authenticate and deliver in
exchange therefor one or more registered Securities of such
Series, of any authorized denomination and like tenor as
requested by the holder thereof, in aggregate principal
amount equal to the unredeemed portion of the principal of
such Security.

(c)  The Republic may at any time purchase
Securities at any price in the open market or otherwise,
provided that in any such case such purchase or purchases
are in compliance with all relevant laws, regulations and
directives.  Securities so purchased by the Republic, may,
at the Republic's discretion, be held, resold or surrendered
to the Fiscal Agent for cancellation.  The Securities so
purchased, while held by or on behalf or for the benefit of
the Republic shall not entitle the registered holder thereof
to vote at any meetings of registered holders of Securities
and shall not be deemed to be outstanding for the purposes
of calculating quorums at meetings of the registered holders
of the Securities.  Notwithstanding the foregoing, the
Republic will not acquire any beneficial interest in any
Securities unless it gives prior written notice of each
acquisition to the Fiscal Agent.  The Fiscal Agent will be
entitled to rely without further investigation on any such
notification (or lack thereof).

(d)  If the Republic elects to cancel any
Securities when Securities have been issued in the form of a
Global Security, it may request the Fiscal Agent to instruct
the Depositary to reduce the outstanding aggregate principal
amount of the Global Securities in accordance with the
regular procedures of the Depositary in effect at such time.

10.  Cancellation and Destruction.  All Securities
which are paid at maturity or upon earlier repurchase, or
are mutilated, defaced or surrendered in exchange for other
certificates, shall be cancelled by the Fiscal Agent who
shall register such cancellation.  The Fiscal Agent shall,
as soon as practicable after the date of any such
cancellation, furnish the Republic with a certificate or
certificates stating the serial numbers and total number of
Securities that have been cancelled.  The Fiscal Agent shall
destroy all cancelled Securities in accordance with the
instructions of the Republic and shall furnish to the

14

Republic, on a timely basis, certificates of destruction stating the serial numbers, dollar value and total number of all securities destroyed hereunder.

11. Negative Pledge and Covenants. So long as any Security remains outstanding, save for the exceptions set forth below, the Republic will not create or permit to subsist any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness of the Republic unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by the holders of the Securities (as provided in Section 16).

Notwithstanding the foregoing, the Republic may permit to subsist:

(i) any Lien upon property to secure Public External Indebtedness of the Republic incurred for the purpose of financing the acquisition of such property; any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(ii) any Lien existing on such property at the time of its acquisition to secure Public External Indebtedness of the Republic and any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(iii) any Lien created in connection with the transactions contemplated by the Republic of Argentina 1992 Financing Plan dated June 23, 1992 sent to the international banking community with the communication dated June 23, 1992 from the Minister of Economy and Public Works and Services of Argentina (the "1992 Financing Plan") and the implementing documentation therefor, including any Lien to secure obligations under the collateralized securities issued thereunder (the "Par and Discount Bonds") and any Lien securing indebtedness outstanding on the date hereof to the extent required to be equally and ratably secured with the Par and Discount Bonds;

15

(iv)  any Lien in existence on the date of this Agreement;

(v)  any Lien securing Public External Indebtedness of the Republic issued upon surrender or cancellation of any of the Par and Discount Bonds or the principal amount of any indebtedness outstanding as of June 23, 1992, in each case, to the extent such Lien is created to secure such Public Indebtedness on a basis comparable to the Par and Discount Bonds;

(vi)  any Lien on any of the Par and Discount Bonds; and

(vii)  any Lien securing Public External Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project provided that (a) the holders of such Public External Indebtedness expressly agree to limit their recourse to the assets and revenues of such project as the principal source of repayment of such Public External Indebtedness and (b) the property over which such Lien is granted consists solely of such assets and revenues.

For purposes of this Agreement:

"External Indebtedness" means obligations (other than the Securities) for borrowed money or evidenced by securities, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic provided that no Domestic Foreign Currency Indebtedness, as defined below, shall constitute External Indebtedness.

"Public External Indebtedness" means, with respect to the Republic, any External Indebtedness of, or guaranteed by, the Republic which (i) is publicly offered or privately placed in securities markets, (ii) is in the form of, or represented by, securities, notes or other securities or any guarantees thereof and (iii) is, or was intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system or over-the-counter or other securities market (including, without prejudice to the generality of the foregoing, securities eligible for PORTAL or a similar market for the trading of securities eligible for sale pursuant to Rule 144A under the U.S. Securities Act of 1933 (or any successor law or regulation of similar effect)).

16

"Domestic Foreign Currency Indebtedness" means (i) the following indebtedness: (a) Bonos del Tesoro issued under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos de Consolidación issued under Law No. 23,982 and Decree No. 2140/91, (c) Bonos de Consolidación de Deudas Previsionales issued under Law No. 23,982 and Decree No. 2140/91, (d) Bonos de la Tesorería a 10 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería a 5 Años Plazo issued under Decree No. 211/92 nd Decree No. 526/92, (f) Ferrobonos issued under Decree No. 52/92 and Decree No. 526/92 and (g) Bonos de Consolidación de Regalías Hidrocarburíferas a 16 Años de Plazo issued under Decree No 2284/92 and Decree No. 54/93; (ii) any indebtedness issued in exchange, or as replacement, for the indebtedness referred to in (i) above; and (iii) any other indebtedness payable by its terms, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic of Argentina which is (a) offered exclusively within the Republic of Argentina or (b) issued in payment, exchange, substitution, discharge or replacement of indebtedness payable in the lawful currency of the Republic of Argentina; provided that in no event shall the following indebtedness be deemed to constitute "Domestic Foreign Currency Indebtedness": (1) Bonos Externos de la República Argentina issued under Law No. 19,686 enacted on June 15, 1972 and (2) any indebtedness issued by the Republic in exchange, or as replacement, for any indebtedness referred to (1) above.

12. Default; Acceleration of Maturity. If any of the following events ("Events of Default") with respect to the Securities of any Series occurs and is continuing:

(a) Non-Payment: the Republic fails to pay any principal of any of the Securities of such Series when due and payable or fails to pay any interest on any of the Securities of such Series when due and payable and such failure continues for a period of 30 days; or

(b) Breach of Other Obligations: the Republic does not perform or comply with any one or more of its other obligations in the Securities of such Series or in this Agreement, which default is incapable of remedy or is not remedied within 90 days after written notice of such default shall have been given to the Republic by the Fiscal Agent; or

(c) Cross Default: any event or condition shall occur which results in the acceleration of the maturity (other than by optional or mandatory prepayment or redemption) of the Securities of any other Series or of any

Public External Indebtedness of the Republic having an
aggregate principal amount of U.S. $30,000,000 or more, or
any default in the payment of principal of, or premium or
prepayment charge (if any) or interest on, the Securities of
any other Series or any such Public External Indebtedness
having an aggregate principal amount of U.S. $30,000,000 or
more, shall occur when and as the same shall become due and
payable, if such default shall continue for more than the
period of grace, if any, originally applicable thereto; or

(d) Moratorium: a moratorium on the payment of
principal of, or interest on, the Public External
Indebtedness of the Republic shall be declared by the
Republic or;

(e) Validity: the validity of the Securities of
such Series shall be contested by the Republic;

then the holders of not less than 25 percent in aggregate
principal amount of the Securities of such Series by notice
in writing to the Republic at the specified office of the
Fiscal Agent shall declare the principal amount of all the
Securities of such Series to be due and payable immediately,
and, in the case of (a) and (d) above, each holder of
Securities of such Series may by such notice in writing
declare the principal amount of Securities of such Series
held by it to be due and payable immediately, and upon any
such declaration the same shall become and shall be
immediately due and payable upon the date that such written
notice is received by the Republic unless prior to such date
all Events of Default in respect of all the Securities of
such Series shall have been cured; provided that in the case
of (b), (d) and (e) above, such event is materially
prejudicial to the interests of the holders of the
Securities of such Series, and provided further, that if, at
any time after the principal of the Securities of such
Series shall have been so declared due and payable, and
before any sale of property under any judgment or decree for
the payment of the monies due shall have been obtained or
entered as hereinafter provided, the Republic shall pay or
shall deposit with the Fiscal Agent a sum sufficient to pay
all matured amounts of interest and principal upon all the
Securities which shall have become due and otherwise than
solely by declaration (with interest on overdue amounts of
interest, to the extent permitted by law, and on such
principal of each of the Securities at the rate of interest
applicable thereto, to the date of such payment or deposit;
and the expenses of the Fiscal Agent, its agents, legal
advisers, and any and all defaults under the Securities of
such Series, other than the non-payment of principal on the

18

Securities of such Series which shall have become due solely
by declaration, shall have been remedied, then, and in every
such case, the holders of 75 percent in aggregate principal
amount of the Securities of such Series then outstanding,
after a meeting of holders of Securities held in accordance
with the procedures described in Section 16 below, by
written notice to the Republic at the specified office of
the Fiscal Agent, may on behalf of the holders of all of the
Securities of such Series waive all defaults and rescind and
annul such declaration and its consequences: but no such
waiver or rescission and annulment shall extend to or shall
affect any subsequent default, or shall impair any right
consequent thereon.

13. (a) Limit on Liability. In acting under
this Agreement the Fiscal Agent and any Paying Agent are
acting solely as agents of the Republic and do not assume
any obligation or relationship of agency or trust for or
with any of the holders of the Securities, except that all
funds held by the Fiscal Agent for payment of principal or.
interest shall be held in trust, subject to the provisions
of Section 6.

(b) Acceptance of Appointment. The Fiscal Agent
and each Paying Agent accepts its obligations set forth in
or arising under this Agreement, the Paying Agency
Agreements and the Securities upon the terms and conditions
hereof and thereof, including the following, to all of which
the Republic agrees and to all of which the holders of the
Securities shall be subject:

(i) the Fiscal Agent may consult as to legal
matters with lawyers selected by it, who may be
employees of or regular independent counsel to the
Republic, and the Fiscal Agent shall be protected and
shall incur no liability for action taken, or suffered
to be taken, with respect to such matters in good faith
and in accordance with the opinion of such lawyers; and

(ii) the Fiscal Agent and each Paying Agent, and
their officers, directors and employees, may become the
holder of, or acquire any interest in, any Securities,
with the same rights that it or they would have if it
were not the Fiscal Agent or a Paying Agent hereunder,
or they were not such officers, directors, or
employers, and may engage or be interested in any
financial or other transaction with the Republic and
may act on, or as depository, trustee or agent for, any
committee or body of holders of Securities or other
obligations of the Republic as freely as if it were not

19

the Fiscal Agent or a Paying Agent hereunder or they
were not such officers, directors, or employees.

14.  Expenses and Indemnity.  (a)  In connection
with the Fiscal Agent's appointment and duties as Fiscal
Agent, the Republic will pay the Fiscal Agent compensation
agreed upon by them.  The Republic will indemnify the Fiscal
Agent and each Paying Agent against any loss or liability
and agrees to pay or reimburse the Fiscal Agent and each
Paying Agent for any reasonable expense, which loss,
liability or reasonable expense may be incurred by the
Fiscal Agent or any Paying Agent by reason of, or in
connection with, the Fiscal Agent's or any Paying Agent's
appointment and duties as such, except as such result from
the negligence, bad faith or wilful misconduct of the Fiscal
Agent or any Paying Agent or their respective directors,
officers, employees or agents.  In addition, the Republic
shall pursuant to arrangements separately agreed upon by the
Republic and the Fiscal Agent, transfer to the Fiscal Agent,
upon presentation of substantiating documentation
satisfactory to the Republic, amounts sufficient to
reimburse the Fiscal Agent for certain out-of-pocket
expenses reasonably incurred by it and by any Paying Agent
in connection with their services.  The obligation of the
Republic under this paragraph shall survive payment of the
Securities and resignation or removal of the Fiscal Agent.

(b)  The Fiscal Agent and each Paying Agent agrees
to indemnify and hold harmless the Republic against all
direct claims, actions, demands, damages, costs, losses and
liabilities (excluding consequential and punitive damages)
arising out of or relating to the bad faith or wilful
misconduct of the Fiscal Agent or any Paying Agent or their
respective directors, officers, employees or agents.

15.  Successor Fiscal Agent.  (a)  The Republic
agrees that there shall at all times be a Fiscal Agent
hereunder, and that the Fiscal Agent shall be a bank or
trust company organized and doing business under the laws of
the United States of America or of the State of New York, in
good standing and having a place of business in the Borough
of Manhattan, The City of New York, and authorized under
such laws to exercise corporate trust powers.

Any corporation or bank into which the Fiscal
Agent hereunder may be merged or converted, or any
corporation with which the Fiscal Agent may be consolidated,
or any corporation or bank resulting from any merger,
conversion or consolidation to which the Fiscal Agent shall
sell or otherwise transfer all or substantially all of the
corporate trust business of the Fiscal Agent, provided that

20

23

it shall be qualified as aforesaid, shall be the successor
Fiscal Agent under this Agreement without the execution or
filing of any paper or any further act on the part of any of
the parties hereto, but subject to prior notice to and the
prior approval of the Republic.

(b) The Fiscal Agent may at any time resign by
giving written notice to the Republic of its resignation,
specifying the date on which its resignation shall become
effective (which shall not be less than 120 days after the
date on which such notice is given unless the Republic shall
agree to a shorter period); provided that no such notice
shall expire less than 30 days before or 30 days after the
due date for any payment of principal or interest in respect
of the Securities. The Republic may remove the Fiscal Agent
at any time by giving written notice to the Fiscal Agent
specifying the date on which such removal shall become
effective. Such resignation or removal shall only take
effect upon the appointment by the Republic of a successor
Fiscal Agent and upon the acceptance of such appointment by
such successor Fiscal Agent. Any Paying Agent may resign or
may be removed at any time upon like notice, and the
Republic in any such case may appoint in substitution
therefor a new Paying Agent or Paying Agents.

(c) The appointment of the Fiscal Agent hereunder
shall forthwith terminate, whether or not notice of such
termination shall have been given, if at any time the Fiscal
Agent becomes incapable of performing its duties hereunder,
or is adjudged bankrupt or insolvent, or files a voluntary
petition on bankruptcy or makes an assignment for the
benefit of its creditors or consents to the appointment of a
liquidator or receiver of all or any substantial part of its
property or admits in writing its inability to pay or meet
its debts as they mature or suspends payment thereof, or if
a resolution is passed or an order made for the winding up
or dissolution of the Fiscal Agent, or if a liquidator or
receiver of the Fiscal Agent of all or any substantial part
of its property is appointed, or if any order of any court
is entered approving any petition filed by or against it
under the provisions of any applicable bankruptcy or
insolvency law or if any public officer takes charge or
control of the Fiscal Agent or its property or affairs for
the purposes of rehabilitation, conservation or liquidation.

(d) Prior to the effective date of any such
resignation or removal of the Fiscal Agent, or if the Fiscal
Agent shall become unable to act as such or shall cease to
be qualified as aforesaid, the Republic shall appoint a
successor Fiscal Agent, qualified as aforesaid. Upon the
appointment of a successor Fiscal Agent and its acceptance

21

of such appointment, the retiring Fiscal Agent shall, at the
direction of the Republic and upon payment of its
compensation and expenses then unpaid, deliver and pay over
to its successor any and all securities, money and any other
properties then in its possession as Fiscal Agent and shall
thereupon cease to act hereunder.

Any successor Fiscal Agent appointed hereunder
shall execute, acknowledge and deliver to its predecessor
and to the Republic an instrument accepting such appointment
hereunder, and thereupon such successor without any further
act, deed or conveyance, shall become vested with all the
authority, rights, powers, trusts, immunities, duties and
obligations of such predecessor, with like effect as if
originally named Fiscal Agent hereunder.

(e) If the Fiscal Agent resigns or ceases to act
as the Republic's fiscal agent in respect of the Securities
pursuant to Section 15(o) of this Agreement, the Fiscal
Agent shall only be entitled to annual fees otherwise
payable to it under this Agreement on a pro rata basis for
that period since the most recent anniversary of this
Agreement during which the Fiscal Agent has acted as fiscal
agent hereunder. In the event that the Fiscal Agent ceases
to act as the Republic's fiscal agent in respect of the
Securities for any other reason, the Fiscal Agent shall be
entitled to receive the full amount of the annual fees
payable to it in respect of the Securities pursuant to
Section 14 of this Agreement.

16. Meetings of Holders of Securities;
Modifications. (a) A meeting of registered holders of
Securities of any Series may be called at any time and from
time to time to make, give or take any request, demand,
authorization, direction, notice, consent, waiver or other
action provided by this Agreement or the Securities of any
Series to be made, given or taken by registered holders of
Securities of any Series or to modify, amend or supplement
the terms of the Securities of any Series or this Agreement
as hereinafter provided. The Fiscal Agent may at any time
call a meeting of registered holders of Securities of any
Series for any such purpose to be held at such time and at
such place as the Fiscal Agent shall determine. Notice of
every meeting of registered holders of Securities of any
Series, setting forth the time and the place of such meeting
and in general terms the action proposed to be taken at such
meeting, shall be given as provided in the terms of the
Securities of any Series, not less than 30 nor more than 60
days prior to the date fixed for the meeting. In case at
any time the Republic or the registered holders of at least
10% in aggregate principal amount of the Outstanding

22

Securities of any Series (as defined in subsection (d) of this Section) shall have requested the Fiscal Agent to call a meeting of the registered holders of Securities of any Series for any such purpose, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Fiscal Agent shall call such meeting for such purposes by giving notice thereof.

To be entitled to vote at any meeting of registered holders of Securities of any Series, a person shall be a registered holder of Outstanding Securities of any Series or a person duly appointed by an instrument in writing as proxy for such a holder. Any person appointed by an instrument in writing as proxy for a registered holder need not be a registered holder of Outstanding Securities of any Series. At any meeting each registered holder shall be entitled to one vote for each of those amounts held by such holder which represent the lowest denomination in which Securities of such Series as to which such holder is a holder may be transferred. The persons entitled to vote a majority in principal amount of the Outstanding Securities of any Series shall constitute a quorum. At the reconvening of any meeting adjourned for a lack of a quorum, the persons entitled to vote 25% in principal amount of the Outstanding Securities of any Series shall constitute a quorum for the taking of any action set forth in the notice of the original meeting. The Fiscal Agent may make such reasonable and customary regulations as it shall deem advisable for any meeting of registered holders of Securities of any Series with respect to the appointment of proxies in respect of registered holders of Securities, the record date for determining the registered holders of Securities who are entitled to vote at such meeting (which date shall be set forth in the notice calling such meeting hereinabove referred to and which shall be not less than 30 nor more than 90 days prior to such meeting, the adjournment and chairmanship of such meeting) the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate.

(b)  (i)  At any meeting of registered holders of Securities of a Series duly called and held as specified above, upon the affirmative vote, in person or by proxy thereunto duly authorized in writing, of the registered holders of not less than 66 2/3% in aggregate principal amount of the Securities of any Series then Outstanding (or of such other percentage as may be set forth in the Securities of any Series with respect to the action being taken), or (ii) with the written consent of the owners of

not less than 66 2/3% in aggregate principal amount of the Securities of any Series then Outstanding (or of such other percentage as may be set forth in the text of the Securities of any Series with respect to the action being taken), the Republic and the Fiscal Agent may modify, amend or supplement the terms of the Securities of any Series or this Agreement, in any way, and the registered holders of Securities of any Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Securities of any Series to be made, given, or taken by registered holders of Securities of any Series; provided, however, that no such action may, without the consent of the registered holder of each Security of such Series, (A) change the due date for the payment of the principal of (or premium, if any,) or any installment of interest on any Security of such Series, (B) reduce the principal amount of any Security of such Series, the portion of such principal amount which is payable upon acceleration of the maturity of such Security, the interest rate thereon or the premium payable upon redemption thereof, (C) change the coin or currency in which or the required places at which payment with respect to interest, premium or principal in respect of Securities of such Series is payable, (D) amend the definition of Redemption Event in the Securities of such Series or the procedures provided therefore, (E) shorten the period during which the Republic is not permitted to redeem the Securities of such Series if, prior to such action, the Republic is not permitted to do so, (F) reduce the proportion of the principal amount of Securities of such Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Securities of such Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (G) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Securities of any Series, to (i) any modification of any provisions of the Fiscal Agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in this Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of this Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Securities. Any such modification, authorization or waiver shall be binding on the registered holders of Securities of any Series and, if the Fiscal Agent so requires, such

24

27.

modification shall be notified to the registered holders of Securities of any Series as soon as practicable.

It shall not be necessary for the vote or consent of the registered holders of the Securities of any Series to approve the particular form of any proposed modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action, but it shall be sufficient if such vote or consent shall approve the substance thereof.

(c) Any instrument given by or on behalf of any registered holder of a Security in connection with any consent to or vote for any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be irrevocable once given and will be conclusive and binding on all subsequent registered holders of such Security or any Security issued directly or indirectly in exchange or substitution therefor or in lieu thereof. Any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of a Series will be conclusive and binding on all registered holders of Securities of such Series, whether or not they have given such consent or cast such vote, and whether or not notation of such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action is made upon the Securities of such Series. Notice of any modification or amendment or, supplement to, or request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of such Series or this Agreement (other than for purposes of curing any ambiguity or of curing, correcting or supplementing any defective provision hereof or thereof) shall be given to each registered holder of Securities of such Series, in all cases as provided in the Securities of such Series.

Securities of any Series authenticated and delivered after the effectiveness of any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to such Series may bear a notation in the form approved by the Fiscal Agent and the Republic as to any matter provided for in such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action. New Securities modified to conform, in the opinion of the Fiscal Agent and the Republic, to any such modification, amendment, supplement, request, demand, authorization, direction,

25

notice, consent, waiver or other action may be prepared by the Republic, authenticated by the Fiscal Agent (or any authenticating agent appointed pursuant to Section 3 hereof) and delivered in exchange for Outstanding Securities of any Series.

(d) For purposes of the provisions of this Agreement and the Securities of any Series, any Security authenticated and delivered pursuant to this Agreement shall, as of any date of determination, be deemed to be "Outstanding", except:

(i) Securities of any Series theretofore cancelled by the Fiscal Agent or delivered to the Fiscal Agent for cancellation or held by the Fiscal Agent for reissuance but not reissued by the Fiscal Agent; or

(ii) Securities of any Series which have become due and payable at maturity or otherwise and with respect to which monies sufficient to pay the principal thereof, premium, if any, and any interest thereon shall have been made available to the Fiscal Agent;

provided, however, that in determining whether the registered holders of the requisite principal amount of Outstanding Securities of any Series are present at a meeting of registered holders of Securities for quorum purposes or have consented to or voted in favor of any request, demand, authorization, direction, notice, consent, waiver, amendment, modification or supplement hereunder, Securities of any Series owned directly or indirectly by the Republic shall be disregarded and deemed not to be Outstanding.

17. Further Issues. The Republic may from time to time, without notice to or the consent of the registered holders of the Securities of a Series, create and issue further securities ranking pari passu with the Securities of such Series in all respects (or in all respects except for the payment of interest accruing prior to the issue date of such further securities or except for the first payment of interest following the issue date of such further securities) and so that such further securities shall be consolidated and form a single series with the Securities of such Series and shall have the same terms as to status, redemption or otherwise as the Securities.

18. Reports. (a) The Fiscal Agent shall furnish to the Republic such reports as may be required by the Republic relative to the Fiscal Agent's performance under

this Agreement. The Republic may, whenever it deems it necessary, inspect books and records maintained by the Fiscal Agent pursuant to this Agreement, if any.

(b) The Fiscal Agent shall (on behalf of the Holders) submit such reports or information as may be required from time to time in relation to the issue and purchase of Securities by applicable law, regulations and guidelines promulgated by the United States government.

(c) The Republic covenants to notify the Fiscal Agent in writing immediately on becoming aware of any Event of Default or any event or circumstance which could with the giving of notice or lapse of time become an Event of Default (a "Potential Event of Default").

(d) The Republic will send to the Fiscal Agent, on or before December 31 in each year (beginning with December 31, 1994), and within 14 days after any written notice by the Fiscal Agent, a certificate of the Republic signed by a duly authorized official of the Republic to the affect that, having made all reasonable inquiries, to the best knowledge of such duly authorized official, no Event of Default or Potential Event of Default has occurred and is continuing on the date of such certificate or, if an Event of Default or a Potential Event of Default has occurred, the circumstances surrounding it and the steps that the Republic has taken or proposes to take to remedy it.

(e) The Republic will send to the Fiscal Agent as soon as practicable after being so requested by the Fiscal Agent a certificate of the Republic, signed by a duly authorized official of the Republic stating the aggregate principal amount of the Securities held by or on behalf of the Republic at the date of such certificate.

19. <u>Forwarding of Notice; Inquiries</u>. (a) If the Fiscal Agent shall receive any notice or demand addressed to the Republic pursuant to the provisions of the Securities, the Fiscal Agent shall promptly forward such notice or demand to the Republic.

(b) The Fiscal Agent shall respond promptly to any inquiries received from any registered holder of Securities regarding the matters covered by paragraphs (b), (c) or (d) of Section 18 of this Agreement.

20. <u>Listings</u>. In the event that the terms of the Securities of any Series provide for a listing on any stock exchange, the Republic agrees to use all reasonable endeavors to maintain the listing of the Securities on such

27

30

exchange. If, however, it is unable to do so, having used
such endeavors, or if the maintenance of such listing is
agreed by the Fiscal Agent to be unduly onerous and the
Fiscal Agent is satisfied that the interests of registered
holders of the Securities would not thereby be materially
prejudiced, it will instead use all reasonable endeavors to
obtain and maintain a listing of the Securities on such
other stock exchange or exchanges as it may decide.

21.  Notices.  (a)  Any communications from the
Republic to the Fiscal Agent with respect to this Agreement
shall be addressed to Bankers Trust Company, 4 Albany
Street, New York, New York 10006, Fax No.: 212-250-6961 or
212-250-6392, Tel. No.: 212-250-6871 and any communications
from the Fiscal Agent to the Republic with respect to this
Agreement shall be addressed to the Subsecretaría de
Financiamiento, Hipolito Yrigoyen 250, Piso 10 - Oficina
1001, 1310 - Buenos Aires, Attention: Deuda Externa, Fax
No.: 011-54-1-349-6080, Tel. No.: 011-541-349-6242 (or such
other address as shall be specified in writing by the Fiscal
Agent or by the Republic, as the case may be) and shall be
delivered in person or sent by first class prepaid post or
by facsimile transmission subject, in the case of facsimile
transmission, to confirmation by telephone to the foregoing
addresses.  Such notice shall take effect in the case of
delivery in person, at the time of delivery, in the case of
delivery by first class prepaid post seven (7) business days
after dispatch and in the case of delivery by facsimile
transmission, at the time of confirmation by telephone.

(b)  All notices to the registered holders of
Securities of a Series will be published in such
publications at such locations as any of the Securities of
such Series are listed for the period of time of such
listing and as otherwise provided pursuant to the terms of
the Securities of such Series.  If at any time publication
in any such publication is not practicable, notices will be
valid if published in an English language newspaper with
general circulation in the respective market regions as the
Republic with the approval of the Fiscal Agent, shall
determine.  [In addition, notices will be published in
Spanish in a newspaper of general circulation in Argentina,
as the Republic shall determine.]  Any such notice shall be
deemed to have been given on the date of such publication
or, if published more than once or on different dates, on
the first date on which publication is made.  Written notice
will also be given to the Depositary, if at the time of such
notice any of the Securities is represented by a Global
Security.

22. Consent to Service; Jurisdiction. The Republic hereby appoints Banco de la Nación Argentina, at its office located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose] as its authorized agent (the "Authorized Agent") upon whom process may be served in any action arising out of or based on the Securities or this Agreement by the holder of any Security which may be instituted in any state or federal court in The City of New York, and expressly accepts the jurisdiction of any such court in respect of such action. Such appointment shall be irrevocable until all amounts in respect of the principal of and any interest due and to become due on or in respect of all the Securities have been provided to the Fiscal Agent pursuant to the terms hereof, except that, if for any reason, such Authorized Agent ceases to be able to act as Authorized Agent or to have an address in the Borough of Manhattan, The City of New York, the Republic will appoint another person in the Borough of Manhattan, The City of New York, selected in its discretion, as such Authorized Agent. Prior to the date of issuance of any Securities hereunder, the Republic shall obtain the consent of Banco de la Nación Argentina to its appointment as such Authorized Agent, a copy of which acceptance it shall provide to the Fiscal Agent. The Republic shall take any and all action, including the filing of any and all documents and instruments, that may be necessary to continue such appointment or appointments in full force and effect as aforesaid. Upon receipt of such service of process, the Authorized Agent shall advise the Subministry of Finance promptly by telecopier at 011-54-1-349-6080. Service of process upon the Authorized Agent at the address indicated above, as such address may be changed within the Borough of Manhattan, The City of New York by notice given by the Authorized Agent to each party hereto, shall be deemed, in every respect, effective service of process upon the Republic. The Republic hereby irrevocably and unconditionally waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any aforesaid action arising out of or in connection with this Agreement brought in any such court has been brought in an inconvenient forum. Neither such appointment nor such acceptance of jurisdiction shall be interpreted to include actions brought under the United States federal securities laws. This appointment and acceptance of jurisdiction is intended to be effective upon execution of this agreement without any further act by the Republic before any such court and introduction of a true copy of this Agreement into evidence shall be conclusive and final evidence of such waiver.

32

Notwithstanding the foregoing, any action arising out of or based on the Securities may be instituted by the holder of any Security in any competent court in the Republic of Argentina.

The Republic hereby irrevocably waives and agrees. not to plead any immunity from the jurisdiction of any such court to which it might otherwise be entitled in any action arising out of or based on the Securities or this Agreement by the holder of any Security.

23. <u>Governing Law and Counterparts</u>. This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of New York. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

24. <u>Headings</u>. The headings for the sections of this Agreement are for convenience only and are not part of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Fiscal Agency Agreement as of the date first above written.

THE REPUBLIC OF ARGENTINA

By:   /s/ Noemi LaGreca
      Name:  Noemi LaGreca
      Title: Financial
             Representative of
             Argentina in the
             United States

BANKERS TRUST COMPANY

By:   /s/ Wanda Camacho
      Name:  Wanda Camacho
      Title: Assistant
             Secretary

31

EXHIBIT A

FORM OF REGISTERED SECURITY

[Form of Face
of Security]

[If the Security is a global Security, insert a legend
relating to limitations on the transferability of such
global Security in such form as may be required by the U.S.
Depositary.]

[INSERT ANY LEGEND(S) REQUIRED BY THE INTERNAL REVENUE CODE]

THE REPUBLIC OF ARGENTINA

[Title of Series of Securities]

No. R-_____

[Principal Amount]

Issue Price:

Original Issue Date:

Maturity Date:

Currency of Denomination:

Option to Receive Payments
in Specified Currency:                   _____Yes   _____No

Authorized Denominations:

Form:                                    ( )  Book-Entry
                                         ( )  Certificated

Initial Interest
Payment Date:

Interest Rate:

Interest Rate Reset:                     ( )  The Interest Rate may not
                                              be changed prior to
                                              Maturity Date.

35

( ) The Interest Rate may be changed prior to Stated Maturity (see attached).

Optional Reset Dates (if applicable):

Interest Payment Dates:

Optional Extension of Maturity Date: _____Yes _____No

    Final Maturity:

Total Amount of OID:

Yield to Maturity:

Initial Accrual Period OID:

Optional Redemption: _____Yes _____No

    Optional Redemption Dates:

If applicable as described above, the Redemption Price shall initially be _____% of the principal amount of this Security to be redeemed and shall decline at each anniversary of the Initial Redemption Date by _____% of the principal amount to be redeemed until the Redemption Price is 100% of such principal amount; provided, however, that if this Security is a Discount Note (as defined below), the Redemption Price shall be the Amortized Face Amount (as defined below) of this Note.

Optional Repayment: _____Yes _____No

    Optional Repayment Dates:

    Optional Repayment Prices:

Conversion into or Exchange for Other Securities

    ( ) This Security may not be converted into or exchanged for other securities.

    ( ) This Security may be converted into or

2

*36*

exchanged for _____
[specify securities].

Terms of Conversion
or Exchange
(if applicable):

Indexed Note:  _____ Yes (see attached) _____ No

Exchange Rate Agent:

Other Terms:
                              _____ Yes _____ No

A-3

*37*

THE REPUBLIC OF ARGENTINA (herein called the
"Republic"), for value received, hereby promises to pay to

or registered assigns, the principal sum of _____ U.S.
Dollars (U.S.$_____ ) [other currency] on _____
[If the Security is to bear interest prior to maturity.
insert--, and to pay interest thereon from _____ or
from the most recent Interest Payment Date to which interest
has been paid or duly provided for, [specify frequency] in
arrears on     [and _____ ) in each year,
commencing _____ (each an "Interest Payment Date"), at
the rate [of ___ % per annum) [to be determined in
accordance with the provisions hereinafter set forth], until
the principal hereof is paid or made available for payment.
The interest so payable, and punctually paid or duly
provided for, on any Interest Payment Date will, as provided
in the Fiscal Agency Agreement hereinafter referred to, be
paid to the person (the "registered Holder") in whose name
this Security (or one or more predecessor Securities) is
registered in the register of such Securities maintained
pursuant to the Fiscal Agency Agreement at the close of
business on the date (whether or not a business day) [, as
the case may be] (each a "Regular Record Date") [,] [_____
calendar days] next preceding such Interest Payment Date;
provided, however, that the first payment of interest on any
Security originally issued on a date between a Regular
Record Date and an Interest Payment Date or on an Interest
Payment Date will be made on the Interest Payment Date
following the next succeeding Regular Record Date to the
registered Holder on such next succeeding Regular Record
Date.  Any such interest not so punctually paid or duly
provided for will forthwith cease to be payable to the
registered Holder on such Regular Record Date and may either
be paid to the person in whose name this Security (or one or
more predecessor Securities) is registered at the close of
business on a special record date for the payment of such
interest to be fixed by the Republic, notice whereof shall
be given to registered Holders of Securities of this Series
not less than 10 days prior to such special record date, or
be paid at any time in any other lawful manner [not
inconsistent with the requirements of any securities
exchange on which the Securities of this series may be
listed, and upon such notice as may be required by such
exchange.]

          [Insert floating interest rate provisions, if
applicable.]

          [If the Security is not to bear interest prior to
maturity, insert--(the "Stated Maturity").  The principal of

*38*

this Security shall not bear interest except in the case of a default in payment of principal upon acceleration, upon redemption or at Stated Maturity.)

Principal of (and premium, if any, on) [and interest payable at maturity or upon earlier redemption or repayment in respect of] this Security shall be payable in immediately available funds against surrender hereof at the corporate trust office of the Fiscal Agent hereinafter referred to and at the offices of such other Paying Agents as the Republic shall have appointed pursuant to the Fiscal Agency Agreement. Payments of principal of (and premium, if any[, on]) [and interest on] this Security shall be made in same-day funds in accordance with the foregoing and subject to applicable laws and regulations, by [(if the Republic so elects) transfer to an account denominated in U.S. dollars which is maintained by the payee with (any) (a) bank [located in _____]. If the Republic does not so elect, payments of principal (and premium, if any) shall be made against surrender of this Security [if applicable, insert--, and payments of interest shall be made,] by] forwarding by post or otherwise delivering a check [on or before the due date for such payment] to the registered address of the registered Holder of this Security. [If applicable, insert payment provisions for Securities denominated in a currency other than U.S. dollars]. This Security is a direct obligation of the Republic and does not have the benefit of any separate undertaking of other government entities (including Banco Central). The Republic covenants that until all amounts in respect of the principal and interest due and to become due on or in respect of this Security have been paid as provided herein or in the Fiscal Agency Agreement, it will at all times maintain offices or agencies in the Borough of Manhattan, The City of New York for the payment of the principal of (and premium, if any[, on]) [and interest on] the Securities as herein provided.

Reference is hereby made to the further provisions of this Security set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

Unless the certificate of authentication hereon has been executed by the Fiscal Agent by manual signature, this Security shall not be valid or obligatory for any purpose.

*39*

IN WITNESS WHEREOF, the Republic has caused this instrument to be duly executed.

Dated:

THE REPUBLIC OF ARGENTINA

By_____
[Title]

Attest:

_____
[Title]

Date of Authentication:

This is one of the Securities of the series designated therein referred to in the within-mentioned Fiscal Agency Agreement.

BANKERS TRUST COMPANY,
as Fiscal Agent

By_____
Authorized Signatory

A-6

[Form of reverse
of Security]

This Security is one of a duly authorized issue of
securities of the Republic (herein called the "Securities")
issued and to be issued in one or more series in accordance
with a Fiscal Agency Agreement, dated as of _____
(herein called the "Fiscal Agency Agreement"), between the
Republic and Bankers Trust Company, as Fiscal Agent (herein
called the "Fiscal Agent"), which term includes any
successor fiscal agent under the Fiscal Agency Agreement),
copies of which Fiscal Agency Agreement are on file and
available for inspection at the corporate trust office of
the Fiscal Agent in the Borough of Manhattan, The City of
New York. This Security is one of the Securities of the
Series designated on the face hereof[, limited in aggregate
principal amount to U.S.$_____]. The Fiscal Agency
Agreement may be amended from time to time in accordance
with the terms thereof.

The Securities will constitute the direct,
unconditional, unsecured and unsubordinated obligations of
the Republic. Each Series will rank pari passu with each
other Series, without any preference one over the other by
reason of priority of date of issue or currency of payment
or otherwise, and at least equally with all other present
and future unsecured and unsubordinated External
Indebtedness (as defined in the Fiscal Agency Agreement) of
the Republic.

The Securities of this Series are issuable only in
fully registered form. The Securities are issuable in [the]
authorized denomination[s] of [currency/U.S.$_____ [and
[any integral multiple thereof] [integral multiples of
[currency/U.S.$_____ above that amount]].

Until all amounts in respect of the principal and
interest due and to become due on or in respect of this
Security have been paid, the Republic shall maintain in the
Borough of Manhattan, The City of New York, an office or
agency where Securities may be surrendered for registration
of transfer or exchange. The Republic has initially
appointed the corporate trust office of the Fiscal Agent as
its agent in the Borough of Manhattan, The City of New York,
for such purpose and has agreed to cause to be kept at such
office a register in which subject to such reasonable
regulations as it may prescribe, the Republic will provide
for the registration of Securities and of transfers of
Securities. The Republic reserves the right to vary or
terminate the appointment of the Fiscal Agent as security

A-7

registrar or transfer agent or to appoint additional or
other registrars or transfer agents or to approve any change
in the office through which any security registrar or any
transfer agent acts, provided that there will at all times
be a security registrar in the Borough of Manhattan, The
City of New York.

Subject to the provisions on the face hereof
concerning transfer restrictions, the transfer of a Security
is registrable on the aforementioned register upon surrender
of such Security at the corporate trust office of the Fiscal
Agent duly endorsed by, or accompanied by a written
instrument of transfer in form attached hereto duly executed
by, the registered Holder thereof or his attorney duly
authorized in writing. Upon such surrender of this Security
for registration of transfer, the Republic shall execute,
and the Fiscal Agent shall authenticate and deliver, in the
name of the designated transferee or transferees, one or
more new Securities, dated the date of authentication
thereof, of any authorized denominations and of a like
aggregate principal amount.

Subject to the provisions on the face hereof
concerning transfer restrictions, at the option of the
registered Holder upon request confirmed in writing,
Securities may be exchanged for Securities of any authorized
denominations and of a like aggregate principal amount, upon
surrender of the Securities to be exchanged at the corporate
trust office of the Fiscal Agent. Any registration of
transfer or exchange will be effected upon the Fiscal Agent
being satisfied with the documents of title and identity of
the person making the request and subject to such reasonable
regulations as the Republic may from time to time agree with
the Fiscal Agent. Whenever any Securities are so
surrendered for exchange, the Republic shall execute, and
the Fiscal Agent shall authenticate and deliver, the
Securities which the registered Holder making the exchange
is entitled to receive. The new Security issued upon such
exchange shall be so dated that neither gain nor loss of
interest shall result from such exchange. [If the Security
is a permanent global Security, insert--Notwithstanding the
foregoing, the exchange of this Security is subject to
certain limitations set forth in the Fiscal Agency Agreement
and on the face hereof.]

[In the event of a redemption of the Securities of
this series in part, the Republic shall not be required (i)
to register the transfer of or exchange any Security during
a period beginning at the opening of business 15 days
before, and continuing until, the date notice is given
identifying the Securities to be redeemed, or (ii) to

A-8

register the transfer of or exchange any Security, or
portion thereof, called for redemption.]

All Securities issued upon any registration of
transfer or exchange of Securities shall be the valid
obligation of the Republic evidencing the same indebtedness
and entitled to the same benefits this Security has at the
time of such registration of transfer or exchange.

No service charge shall be made for any
registration of transfer or exchange, but the Republic may
require payment of a sum sufficient to cover any tax or
other governmental charge payable in connection therewith,
other than an exchange in connection with a partial
redemption of a Security not involving any registration of a
transfer.

Prior to due presentment of this Security for
registration of transfer, the Republic, the Fiscal Agent and
any agent of the Republic or the Fiscal Agent may treat the
person in whose name this Security is registered as the
owner hereof for all purposes, whether or not this Security
is overdue, and neither the Republic nor the Fiscal Agent
nor any such agent shall be affected by notice to the
contrary.

In any case where the due date or the payment of
the principal of (and premium, if any[, on]) [or interest
on] any Security[, or the date fixed for redemption of any
Security,] shall be, at any place from which any check in
respect thereof is to be mailed or where such Security is to
be surrendered for payment [or, in the case of payments by
transfer, where such transfer is to be made], a day on which
banking institutions [If the Securities are denominated in
U.S. dollars, insert--in The City of New York] [If the
Securities are denominated in a currency other than U.S.
Dollars, insert--in [name of financial center of the country
in whose currency the securities are denominated] are
authorized or obligated by law to close [If the Securities
are denominated in a currency other than U.S. Dollars,
insert--or a day on which banking institutions in [name of
non-U.S. financial center] are not carrying out transactions
in [name of non-U.S. currency]], then such payment need not
be made on such date at such place but may be made on the
next succeeding day at such place which is not a day on
which banking institutions are authorized or obligated by
law to close, with the same force and effect as if made on
the date for such payment payable in respect of any such
delay.

43

The Republic shall provide to the Fiscal Agent at its principal office in the Borough of Manhattan, The City of New York, prior to each date on which a payment on or in respect of the Securities of this series shall become due, monies in such amounts which (together with any amounts then held by the Fiscal Agent and available for the purpose) are sufficient to make such payment. Any monies provided by the Republic to the Fiscal Agent for the payment on or in respect of the Securities of this series and remaining unclaimed at the end of two years after such payment shall have become due shall then be returned to the Republic, and upon the return of such monies all liabilities of the Fiscal Agent with respect thereto shall cease, without, however, limiting in any way any obligation the Republic may have to pay the principal of (or premium, if any[, on]) [or interest on] this Security as the same shall become due.

So long as any Security remains outstanding, save for the exceptions set forth in the Fiscal Agency Agreement, the Republic will not create or permit to subsist, or permit Banco Central to create or permit to subsist, any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness (as defined in the Fiscal Agency Agreement) of the Republic or Banco Central unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by not less than 66 2/3% of the registered holders of Securities of any Series then outstanding.

If an Event of Default (as defined in the Fiscal Agency Agreement) occurs and is continuing then the holders of not less than 25 percent in aggregate principal amount of the Securities of this Series, by notice in writing to the Republic at the specified office of the Fiscal Agent, shall declare the principal amount of all the Securities of this Series to be due and payable as set forth in the Fiscal Agency Agreement.

All payments of principal, premium, if any, and interest on this Security by the Republic will be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied collected, withheld or assessed by or within the Republic or any authority therein or thereof having power to tax

(together "Taxes"), unless such withholding or deduction is required by law. In such event, the Republic shall pay such Additional Amounts as will result in receipt by the holders of Securities of this Series of such amounts of principal, premium and interest which would have been received by them had no such withholding or deduction been required, save for the exceptions set forth in the Fiscal Agency Agreement.

So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

[The Securities of this Series will not be subject to any sinking fund and will not be redeemable except as described below.]

[The Securities of this Series are subject to redemption upon not less than 30 days' notice given as hereinafter provided, [if applicable, insert--(1) on _____ in any year commencing with the year ____ and ending with the year ____ through operation of the sinking fund for this series at a redemption price equal to 100% of the principal amount, (2)] [at any time [on or after _____, 19__], as a whole or in part, at the election of the Republic, at the following redemption prices (expressed as percentages of the principal amount of the Securities to be redeemed): If redeemed [on or before _____, ____%, _____ of the years indicated,

| Year | Redemption Price | Year | Redemption Price |
|------|------------------|------|------------------|
|      |                  |      |                  |

and there after at a redemption price equal to ____% of the principal amount, and (3)] under the circumstances described in the next succeeding paragraph at a redemption price equal to 100% of the principal amount of the Securities to be redeemed, together in each case with accrued interest (except if the redemption date is an Interest Payment Date) to the redemption date, but interest installments on Securities that are due on or prior to such redemption date will be payable to the holders of such Securities of record at the close of business on the relevant Record Dates referred to above; provided, that if the redemption date occurs between a Record Date and an Interest Payment Date, the interest due and payable will be paid to the holders of

such Securities of record at the close of business on such
Record Date. [Partial redemptions must be in an amount not
less than U.S.$_____ principal amount of Securities.]

[As and for a sinking fund for the retirement of
the Securities of this Series, the Republic will, until all
Securities of this Series are paid or payment thereof
provided for, deposit with the Fiscal Agent, prior to
_____ in each year, commencing in ____ and ending in ____,
an amount in cash sufficient to redeem on such _____
[not less than U.S.$_____ and not more than]
U.S.$_____ principal amount of Securities of this Series
at the redemption price specified above for redemption
through operation of the sinking fund. [The minimum amount
of any sinking fund payment as specified in this Paragraph
is herein referred to as a "mandatory sinking fund payment",
and any payment in excess of such minimum amount is herein
referred to as an "optional sinking fund payment".] The
cash amount of any [mandatory] sinking fund payment is
subject to reduction as provided below. Each sinking fund
payment shall be applied to the redemption of Securities in
this Series on such _____ as herein provided. [The
right to redeem Securities of this Series through optional
sinking fund payments shall not be cumulative and to the
extent not availed of on any sinking fund redemption date
will terminate.]]

[Notwithstanding the foregoing, the Republic may
not, prior to _____, redeem any Securities of this Series
as [and optional sinking fund payment] contemplated by the
preceding paragraph as a part of, or in anticipation of, any
refunding operation by the application, directly or
indirectly, of monies borrowed having an interest cost to
the Republic (calculated in accordance with general accepted
financial practice) of less than __% per annum.]

[Securities of this Series acquired or redeemed by
the Republic otherwise than through [mandatory] sinking fund
payments may be credited against subsequent [mandatory]
sinking fund payments otherwise required to be made [in the
inverse order in which they become due].]

[The Republic (i) may deliver outstanding
Securities of this Series (other than any previously called
for redemption) and (ii) may apply as a credit Securities of
this series which have been redeemed otherwise than through
the application of [mandatory] sinking fund payments, in
each case in satisfaction of all or any part of any
[mandatory] sinking fund payment and the amount of such
[mandatory] sinking fund payment shall be reduced
accordingly.]

[In the case of any partial redemption of Securities of this Series pursuant to the sinking fund or at the option of the Republic, the Securities to be redeemed shall be selected by the Fiscal Agent not more than 60 days prior to the redemption date from the outstanding Securities not previously called for redemption, by such method as the Fiscal Agent shall deem fair and appropriate and which may provide for the selection for redemption of portions (equal to U.S.$_____ or any integral multiple thereof) of the principal amount of Securities of a denomination larger than U.S.$_____].

[This Security shall be redeemed, at the option of the registered Holder thereof, upon the occurrence, on or after _____, of a Redemption Event (as hereinafter defined), at the redemption price equal to 100% of the principal amount of this Security, together with interest accrued thereon to the date of redemption; provided, however, that the right of the registered Holder to present this Security [if the Security is a permanent global Security, insert--, or evidence of ownership of the Securities represented by this permanent global Security (as hereinafter provided),] for redemption shall, if the Republic gives a Notice of Redemption Event (as hereinafter defined), terminate upon expiration of the Option Period (as hereinafter defined) relating to such Redemption Event. In the event of the occurrence of more than one Redemption Event, each such Redemption Event shall be deemed to confer upon the registered Holder of this Security a separate right of redemption.]

[The Republic agrees that, if a Redemption Event occurs, it will promptly give written notice thereof to the Fiscal Agent (a "Notice of Redemption Event"). Promptly after receiving such Notice of Redemption Event, the Fiscal Agent shall give written notice to the registered Holder of this Security (a "Notice of Right to Tender") stating that a Redemption Event has occurred and including a form of notice (a "Redemption Notice") pursuant to which the registered Holder of this Security may elect to cause redemption. The Republic may, but shall not be obligated to, fix a record date for the purpose of determining the registered Holders of Securities of this series entitled to elect to cause redemption of any such Holder elects to cause redemption of this Security, deliver the Redemption Notice, together with the certificate or certificates representing the Securities to be redeemed [if the Security is a permanent global Security, insert--, or evidence of ownership of the Securities represented by this permanent global Security (as hereinafter provided),] to the Fiscal Agent within a period of 60 days (the "Option Period") of the date of the Notice

A-13

47

of Right to Tender, and (ii) the Republic shall select a
date for redemption (the "Redemption Date"), which shall be
within 60 days from the end of the Option Period, and, on
the Redemption Date, shall redeem the Securities tendered
for redemption within the Option Period. At least 10 days
prior to the Redemption Date, the Republic shall [(i)]
deliver notice of the Redemption Date in the manner provided
for herein to each registered Holder who requested
redemption[, or (ii) publish notice of the Redemption Date
in the manner provided for herein, as the case may be].]

[If the Security is a permanent global Security,
insert--It is understood that, notwithstanding the foregoing
provisions relating to redemption at the option of a
registered Holder and without otherwise limiting any right
of any other registered Holder to act by agent or proxy, the
Fiscal Agent may treat a person authorized, in a manner
satisfactory to the Fiscal Agent, by the U.S. Depositary to
take action in respect of a portion of this permanent global
Security as the registered Holder of such portion of such
Security and may make arrangements satisfactory to it, the
Republic and the U.S. Depositary in connection with this
partial redemption of this permanent global Security.]

[Insert description of those events, if any, which
constitute Redemption Events.]

[If notice of redemption has been given in the
manner set forth herein, the Securities so to be redeemed
shall become due and payable on the redemption date
specified in such notice and upon presentation and surrender
of the Securities [if the Security is a permanent global
Security, insert--, or evidence of ownership of the
Securities represented by this permanent global Security
satisfactory to the Fiscal Agent,] at the place or places
specified in such notice, the Securities shall be paid and
redeemed by the Republic at the places, in the manner and
currency and at the redemption price herein specified
together with accrued interest (unless the redemption date
is an Interest Payment Date) to the redemption date. From
and after the redemption date, if monies for the redemption
of Securities called for redemption shall have been made
available at the corporate trust office of the Fiscal Agent
for redemption on the redemption date, the Securities called
for redemption shall cease to bear interest, and the only
right of the holder of such Securities shall be to receive
payment of the redemption price together with accrued
interest (unless the redemption date is an Interest Payment
Date) to the redemption date as aforesaid. If monies for
the redemption of the Securities are not made available for
payment until after the redemption date, the Securities

A-14



called for redemption shall not cease to bear interest until
such monies have been so made available.]

[Any Security which is to be redeemed only in part
shall be surrendered with, if the Republic or the Fiscal
Agent so requires, due endorsement by, or a written
instrument of transfer in form satisfactory to the Republic
and the Fiscal Agent duly executed by, the holder thereof or
such holder's attorney duly authorized in writing, and the
Republic shall execute, and the Fiscal Agent shall
authenticate and deliver to the registered Holder of such
Security without service charge, a new Security or
Securities of this Series, of any authorized denomination as
required by such Holder, in aggregate principal amount equal
to and in exchange for the unredeemed portion of the
principal of the Security so surrendered.]

A meeting of registered holders of Securities of
this Series may be called at any time and from time to time
to make, give or take any request, demand, authorization,
direction, notice, consent, waiver or other action provided
by the Fiscal Agency Agreement or the Securities of this
Series to be made, given or taken by registered holders of
Securities of this Series or to modify, amend or supplement
the terms of the Securities of this Series or the Fiscal
Agency Agreement as hereinafter provided. The Fiscal Agent
may at any time call a meeting of registered holders of
Securities of this Series for any such purpose to be held at
such time and at such place as the Fiscal Agent shall
determine. Notice of every meeting of registered holders of
Securities of this Series, setting forth the time and the
place of such meeting and in general terms the action
proposed to be taken at such meeting, shall be given as
provided in the terms of the Securities of this Series, not
less than 30 nor more than 60 days prior to the date fixed
for the meeting. In case at any time the Republic or the
registered holders of at least 10% in aggregate principal
amount of the Outstanding Securities of this Series (as
defined in the Fiscal Agency Agreement) shall have requested
the Fiscal Agent to call a meeting of the registered holders
of Securities of this Series for any such purpose, by
written request setting forth in reasonable detail the
action proposed to be taken at the meeting, the Fiscal Agent
shall call such meeting for such purposes by giving notice
thereof.

At any meeting of registered holders of Securities
duly called and held as specified above, upon the
affirmative vote, in person or by proxy thereunto duly
authorized in writing, of the registered holders of not less
than 66-2/3% (or ___ %) in aggregate principal amount of the

Securities of this Series then Outstanding, or (ii) with the
written consent of the registered holders of not less than
66-2/3% [or ___ %] in aggregate principal amount of the
Securities of this Series then Outstanding, the Republic
[and the Fiscal Agent] may modify, amend or supplement the
terms or provisions contained in the Securities of this
Series, in any way, and the registered holders of Securities
of this Series may make, take or give any request, demand,
authorization, direction, notice, consent, waiver or other
action provided by the Fiscal Agency Agreement or the
Securities of this Series to be made, given, or taken by
registered holders of Securities of this Series; provided,
however, that no such action may, without the consent of the
registered holder of each Security, (A) change the due date
for the payment of the principal of or any installment of
interest on any Security, (B) reduce the principal amount of
any Security, the portion of such principal amount which is
payable upon acceleration of the maturity of such Security
or the interest rate thereon, (C) change the coin or
currency in which or the required places at which payment
with respect to interest or principal in respect of the
Securities of this Series is payable, (D) reduce the
proportion of the principal amount of Securities of this
Series the vote or consent of the holders of which is
necessary to modify, amend or supplement this Agreement or
the terms and conditions of the Securities of this Series or
to make, take or give any request, demand, authorization,
direction, notice, consent, waiver or other action provided
hereby or thereby to be made, taken or given, or (E) change
the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree,
without the consent of the registered holders of Securities
of this Series to (i) any modification of any provisions of
the Fiscal agency Agreement which is of a formal, minor or
technical nature or is made to correct a manifest error and
(ii) any other modification (except as mentioned in the
Fiscal Agency Agreement), and any waiver or authorization of
any breach or proposed breach, of any of the provisions of
the fiscal Agency Agreement which is in the opinion of the
Fiscal Agent not materially prejudicial to the interests of
the registered holders of Securities. Any such
modification, authorization or waiver shall be binding on
the registered holders of Securities of this Series and, if
the Fiscal Agent so requires, such modification shall be
notified to the registered holders of Securities of this
Series as soon as practicable.

All notices to the registered holders of
Securities will be published in such publications at such
locations as any of the Securities are listed for the period

of time of such listing and as otherwise provided pursuant to the terms of the Securities of this Series. If at any time publication in any such publication is not practicable, notices will be valid if published in an English language newspaper with general circulation in the respective market regions as the Republic with the approval of the Fiscal Agent, shall determine. In addition, notices will be published in Spanish in a newspaper of general circulation in Argentina, as the Republic shall determine. Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made.

No reference herein to the Fiscal Agency Agreement and no provision of this Security or of the Fiscal Agency Agreement shall alter or impair the obligation of the Republic to pay the principal of (and premium, if any[, on]) [and interest on] this Security at the times, place and rate, and in the coin or currency, herein prescribed.

Claims against the Republic for payment in respect of the Securities of this Series and interest payments thereon shall be prescribed and become void unless made within 10 years (in the case of principal) and 5 years (in the case of interest) from the appropriate Relevant Date in respect thereof.

This Security shall be governed by and construed in accordance with the laws of the State of New York, except with respect to authorization and execution by the Republic.

The Republic has in the Fiscal Agency Agreement irrevocably submitted to the jurisdiction of any New York state or federal court sitting in the Borough of Manhattan, The City of New York and the courts of the Republic of Argentina (the "Specified Courts") over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Securities of this Series or the Fiscal Agency Agreement (a "Related Proceeding"). The Republic has in the Fiscal Agency Agreement waived any objection to Related Proceedings in such courts whether on the grounds of venue, residence or domicile or on the ground that the Related Proceedings have been brought in an inconvenient forum. The Republic agrees that a final non-appealable judgment in any such Related Proceeding (the "Related Judgment") shall be conclusive and binding upon it and may be enforced in any Specified Court or in any other courts to the jurisdiction of which the Republic is or may be subject (the "Other Courts"), by a suit upon such judgment.

51

The Republic has in the Fiscal Agency Agreement agreed that (i) service of all writs, process and summonses in any Related Proceeding or any action or proceeding to enforce or execute any Related Judgment brought against it in the State of New York may be made upon Banco de la Nación Argentina, presently located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose.

To the extent that the Republic or any of its revenues, assets or properties shall be entitled, in any jurisdiction in which any Specified Court is located, in which any Related Proceeding may at any time be brought against it or any of its revenues, assets or properties, or in any jurisdiction in which any Specified Court or other Court is located in which any suit, action or proceeding may at any time be brought solely for the purpose of enforcing or executing any Related Judgment, to any immunity from suit, from the jurisdiction of any such court, from set-off, from attachment prior to judgment, form attachment in aid of execution of judgment, from execution of a judgment or from any other legal or judicial process or remedy, and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Republic has irrevocably agreed not to claim and has irrevocably waived such immunity to the fullest extent permitted by the laws of such jurisdiction (and consents generally for the purposes of the Foreign Sovereign Immunities Act to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment), provided that such waiver shall not be effective (i) with respect to the assets which constitute freely available reserves pursuant to Article 6 of the Convertibility Law (the "Convertibility Law"), the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of Banco Central consistently prepared pursuant to Article 5 of the Convertibility Law and (ii) with respect to property of the public domain located in the territory of The Republic of Argentina or property owned by the Republic and located in its territory which is dedicated to the purpose of an essential public service, and provided further that such agreement and waiver, insofar as it relates to any jurisdiction other than a jurisdiction in which a Specified Court is located, is given solely for the purpose of enabling the Fiscal Agent or a holder of Securities of this Series to enforce or execute a Related Judgment. The waiver of immunities referred to herein constitutes only a limited and specific waiver for the purpose of the Securities of this Series and the Fiscal Agency Agreement and under no

52

circumstances shall it be interpreted as a general waiver of the Republic or a waiver with respect to proceedings unrelated to the Securities of this Series or the Fiscal Agency Agreement.

Unless the certificate of authentication hereon has been executed by the Fiscal Agent by manual signature, this Security shall not be entitled to any benefit under the Fiscal Agency Agreement or be valid or obligatory for any purpose.

A-19

FOR VALUE RECEIVED the undersigned hereby sell(s), assigns
or transfers unto
PLEASE INSERT SOCIAL SECURITY OR OTHER
  IDENTIFYING NUMBER OF ASSIGNEE

_____

Please print or typewrite name and address including postal

zip code of assignee

the within Security and all rights thereunder, hereby

irrevocably constituting and appointing to transfer such

Security on the books of the Trustee, with full power of

substitution in the premises.

Dated: _____        Signature: _____

                                       Notice: the signature to
                                       this assignment must
                                       correspond with the name
                                       as written upon the face
                                       of the written instrument
                                       in every particular,
                                       without alteration or
                                       enlargement or any change
                                       whatever.

A-20

# Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                                                 :
NML CAPITAL, LTD.,                               :
                                                 :
                              Plaintiff,         :        08 Civ. 6978 (TPG)
                                                 :        09 Civ. 1707 (TPG)
                    – against –                  :        09 Civ. 1708 (TPG)
                                                 :
REPUBLIC OF ARGENTINA,                           :            **ORDER**
                                                 :
                              Defendant.         :
                                                 :
------------------------------------------------x

Upon consideration of the motion by NML Capital, Ltd. ("NML") for partial

summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil

Procedure ("FRCP") and for injunctive relief and/or specific performance

pursuant to FRCP 65(d) and the court's inherent equitable powers, the

response of the Republic of Argentina (the "Republic") thereto, NML's reply, and

all other arguments submitted to the court in the parties' papers and at the

hearing held on September 28, 2011;

WHEREAS the uncontested facts establish that:

1.     The Republic issued bonds pursuant to a 1994 Fiscal Agency

Agreement ("FAA").

2.     Paragraph 1(c) of the FAA provides, among other things, that:

The Securities [i.e., the bonds] will constitute . . . direct,
unconditional, unsecured and unsubordinated obligations of the
Republic and shall at all times rank pari passu and without any
preference among themselves.  The payment obligations of the
Republic under the Securities shall at all times rank at least
equally with all its other present and future unsecured and

unsubordinated External Indebtedness (as defined in this Agreement).

3.      The bonds issued pursuant to the FAA contain the following clause, as quoted in EM Ltd. v. The Republic of Argentina, 720 F.Supp.2d 273, 278 (S.D.N.Y. 2010):

>       The Republic has in the Fiscal Agency Agreement irrevocably submitted to the jurisdiction of any New York state or federal court sitting in the Borough of Manhattan, The City of New York and the courts of the Republic of Argentina (the "Specified Courts") over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Securities of this Series or the Fiscal Agency Agreement (a "Related Proceeding") except with respect to any actions brought under the United States federal securities laws.  The Republic has in the Fiscal Agency Agreement waived any objection to Related Proceedings in such courts whether on the grounds of venue, residence or domicile or on the ground that the Related Proceedings have been brought in an inconvenient forum. The Republic agrees that a final nonappealable judgment in any such Related Proceeding (the "Related Judgment") shall be conclusive and binding upon it and may be enforced in any Specified Court or in any other courts to the jurisdiction of which the Republic is or may be subject (the "Other Courts"), by a suit upon such judgment.

4.      NML owns bonds issued pursuant to the FAA ("NML's Bonds").

5.      The Republic issued other bonds in its 2005 and 2010 Exchange Offers ("Exchange Bonds"), thereby creating new unsecured and unsubordinated External Indebtedness.

6.      The Republic has satisfied the payment obligations that have come due to date under the Exchange Bonds.

7.      The Republic has not paid principal or interest on NML's Bonds since December, 2001.

8. NML has brought the captioned actions to recover on the defaulted bonds, pursuant to its legal rights, and also pursuant to the express undertakings in the bonds.

9. On February 10, 2005, Argentina enacted Law 26,017, providing that the "national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to bonds" that were eligible to participate in the 2005 Exchange Offer.

10. On December 9, 2009, Argentina enacted Law 26,547, which, *inter alia*, suspended the effect of Law 26,017 for a period of time during which the 2010 Exchange Offer was launched, closed, and consummated. Law 26,547 also provides that the "Republic of Argentina . . . is prohibited to offer holders of government bonds [including those issued pursuant to the FAA] who may have initiated judicial, administrative, arbitration or any other type of action [to enforce their rights], more favorable treatment than what is offered to those who have not done so."

WHEREAS NML claims that the Republic breached (and continues to breach) its contractual duty to rank its payment obligations under NML's Bonds at least equally with all its other present and future unsecured and unsubordinated External Indebtedness, NML seeks summary judgment on the Republic's liability for that breach, and NML seeks an injunction that would restore it to its bargained-for position among other creditors;

It is HEREBY ORDERED that:

1.     The motion for partial summary judgment pursuant to Rule 56(a) is GRANTED.

2.     It is DECLARED, ADJUDGED, and DECREED that the Republic is required under Paragraph 1(c) of the FAA at all times to rank its payment obligations pursuant to NML's Bonds at least equally with all the Republic's other present and future unsecured and unsubordinated External Indebtedness.

3.     It is DECLARED, ADJUDGED, and DECREED that the Republic's payment obligations on the bonds include its payment obligations to bondholders who have brought actions to recover on their defaulted bonds, and on judgments entered pursuant to judicial action brought by bondholders.

4.     It is DECLARED, ADJUDGED, and DECREED that the Republic violates Paragraph 1(c) of the FAA whenever it lowers the rank of its payment obligations under NML's Bonds below that of any other present or future unsecured and unsubordinated External Indebtedness, including (and without limitation) by relegating NML's bonds to a non-paying class by failing to pay the obligations currently due under NML's Bonds while at the same time making payments currently due to holders of other unsecured and unsubordinated External Indebtedness or by legislative enactment.

5.     It is DECLARED, ADJUDGED, and DECREED that the Republic lowered the rank of NML's bonds in violation of Paragraph 1(c) of the FAA when it made payments currently due under the Exchange Bonds, while persisting in its refusal to satisfy its payment obligations currently due under NML's Bonds.

6.    It is DECLARED, ADJUDGED, and DECREED that the Republic lowered the rank of NML's bonds in violation of Paragraph 1(c) of the FAA when it enacted Law 26,017 and Law 26,547.

7.    It is DECLARED, ADJUDGED, and DECREED that the aforesaid laws were in direct violation of the right of NML under the FAA and the bond agreements to bring a legal action in court to recover on the defaulted bonds.

8.    The motion for injunctive relief and/or specific performance pursuant to FRCP 65(d) and the court's inherent equitable powers is DENIED at the present time to permit further consideration by the court regarding the means of enforcement of the present ORDER.

    SO ORDERED.

Dated:  New York, New York
        December 7, 2011

_____
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/7/11

# Exhibit F

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/23/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

NML CAPITAL, LTD.                              08 Civ. 6978 (TPG)
                                              09 Civ. 1707 (TPG)
                  Plaintiff,                  09 Civ. 1708 (TPG)

        v.

REPUBLIC OF ARGENTINA,

                  Defendant.
--------------------------------------------------------x

### [PROPOSED] ORDER

WHEREAS, in an Order dated December 7, 2011, this Court found that, under Paragraph 1(c) of the 1994 Fiscal Agency Agreement ("FAA"), the Republic is "required . . . at all times to rank its payment obligations pursuant to NML's Bonds at least equally with all the Republic's other present and future unsecured and unsubordinated External Indebtedness."

WHEREAS, in its December 7, 2011 Order, this Court granted partial summary judgment to NML on its claim that the Republic repeatedly has breached, and continues to breach, its obligations under Paragraph 1(c) of the FAA by, among other things, "ma[king] payments currently due under the Exchange Bonds, while persisting in its refusal to satisfy its payment obligations currently due under NML's Bonds."

And WHEREAS NML Capital, Ltd. ("NML") has filed a renewed motion for equitable relief as a remedy for such violations pursuant to Rule 65(d) of the Federal Rules of Civil Procedure and the Court's inherent equitable powers.

14293534

Upon consideration of NML's renewed motion, the response of the Republic of Argentina (the "Republic") thereto, NML's reply, and all other arguments submitted to the Court in the parties' papers and at oral argument, it is HEREBY ORDERED that:

1.    It is DECLARED, ADJUDGED, and DECREED that NML is irreparably harmed by and has no adequate remedy at law for the Republic's ongoing violations of Paragraph 1(c) of the FAA, and that the equities and public interest strongly support issuance of equitable relief to prevent the Republic from further violating Paragraph 1(c) of the FAA, in that:

      a.   Absent equitable relief, NML would suffer irreparable harm because the Republic's payment obligations to NML would remain debased of their contractually-guaranteed status, and NML would never be restored to the position it was promised that it would hold relative to other creditors in the event of default.

      b.   There is no adequate remedy at law for the Republic's ongoing violations of Paragraph 1(c) of the FAA because the Republic has made clear—indeed, it has codified in Law 26,017 and Law 26,547—its intention to defy any money judgment issued by this Court.

      c.   The balance of the equities strongly supports this Order in light of the clear text of Paragraph 1(c) of the FAA and the Republic's repeated failures to make required payments to NML.   In the absence of the equitable relief provided by this Order, the Republic will continue to violate Paragraph 1(c) with impunity, thus subjecting NML to harm.   On the other hand, the Order requires of the Republic only that which it

2

promised NML and similarly situated creditors to induce those creditors to purchase the Republic's bonds.  Because the Republic has the financial wherewithal to meet its commitment of providing equal treatment to both NML (and similarly situated creditors) and those owed under the terms of the Exchange Bonds, it is equitable to require it to do so.  Indeed, equitable relief is particularly appropriate here, given that the Republic has engaged in an unprecedented, systematic scheme of making payments on other external indebtedness, after repudiating its payment obligations to NML, in direct violation of its contractual commitment set forth in Paragraph 1(c) of the FAA.

d. The public interest of enforcing contracts and upholding the rule of law will be served by the issuance of this Order, particularly here, where creditors of the Republic have no recourse to bankruptcy regimes to protect their interests and must rely upon courts to enforce contractual promises.  No less than any other entity entering into a commercial transaction, there is a strong public interest in holding the Republic to its contractual obligations.

2. The Republic accordingly is permanently ORDERED to specifically perform its obligations to NML under Paragraph 1(c) of the FAA as follows:

a. Whenever the Republic pays any amount due under terms of the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the

3

2005 and 2010 Exchange Offers that may occur in the future (collectively, the "Exchange Bonds"), the Republic shall concurrently or in advance make a "Ratable Payment" (as defined below) to NML.

b.      Such "Ratable Payment" that the Republic is ORDERED to make to NML shall be an amount equal to the "Payment Percentage" (as defined below) multiplied by the total amount currently due to NML in respect of the bonds at issue in these cases (08 Civ. 6978, 09 Civ. 1707, and 09 Civ. 1708), including pre-judgment interest (the "NML Bonds").

c.      Such "Payment Percentage" shall be the fraction calculated by dividing the amount actually paid or which the Republic intends to pay under the terms of the Exchange Bonds by the total amount then due under the terms of the Exchange Bonds.

d.      The Republic is ENJOINED from violating Paragraph 1(c) of the FAA, including by making any payment under the terms of the Exchange Bonds without complying with its obligation pursuant to Paragraph 1(c) of the FAA by concurrently or in advance making a Ratable Payment to NML.

e.      Within three (3) days of the issuance of this ORDER, the Republic shall provide copies of this ORDER to all parties involved, directly or indirectly, in advising upon, preparing, processing, or facilitating any payment on the Exchange Bonds (collectively, "Agents and Participants"), with a copy to counsel for NML. Such Agents and Participants shall be bound by the terms of this ORDER as provided by Rule 65(d)(2) and

4

prohibited from aiding and abetting any violation of this ORDER, including any further violation by the Republic of its obligations under Paragraph 1(c) of the FAA, such as any effort to make payments under the terms of the Exchange Bonds without also concurrently or in advance making a Ratable Payment to NML.

f.  Concurrently or in advance of making a payment on the Exchange Bonds, the Republic shall certify to the Court and give notice of this certification to its Agents and Participants, and to counsel for NML, that the Republic has satisfied its obligations under this ORDER to make a Ratable Payment to NML.

3.  NML shall be entitled to discovery to confirm the timing and amounts of the Republic's payments under the terms of the Exchange Bonds; the amounts the Republic owes on these and other obligations; and such other information as appropriate to confirm compliance with this ORDER;

4.  The Republic is permanently PROHIBITED from taking action to evade the directives of this ORDER, render it ineffective, or to take any steps to diminish the Court's ability to supervise compliance with the ORDER, including, but not limited to, altering or amending the processes or specific transfer mechanisms by which it makes payments on the Exchange Bonds, without obtaining prior approval of the Court;

5. This Court shall retain jurisdiction to monitor and enforce this ORDER, and to modify and amend it as justice requires to achieve its equitable purposes and to account for changing circumstances.

Dated: Feb. 23, 2012

Thomas P. Griesa

# Exhibit G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x

NML CAPITAL, LTD.,

                        Plaintiff,

         - against -

THE REPUBLIC OF ARGENTINA,

                    Defendant.

------------------------------------------------- x

NML CAPITAL, LTD.,

                        Plaintiff,

         - against -

THE REPUBLIC OF ARGENTINA,

                    Defendant.

------------------------------------------------- x

FFI FUND, LTD. and FYI LTD.,

                        Plaintiffs,

         - against -

THE REPUBLIC OF ARGENTINA,

                    Defendant.

------------------------------------------------- x

14 Civ. 8601 (TPG)

14 Civ. 8988 (TPG)

14 Civ. 8630 (TPG)

*(captions continue on following pages)*

**<u>OPINION AND ORDER</u>**

```
-------------------------------------------------- x
PEREZ, et al.,                                     :
                        Plaintiffs,                :
                                                   :
             - against -                           :
                                                   :    14 Civ. 8242 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                        Defendant.                 :
-------------------------------------------------- x
AURELIUS CAPITAL PARTNERS, LP, et al.,             :
                        Plaintiffs,                :
                                                   :
             - against -                           :
                                                   :    14 Civ. 8946 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                        Defendant.                 :
-------------------------------------------------- x
BLUE ANGEL CAPITAL I LLC,                          :
                        Plaintiff,                 :
                                                   :
             - against -                           :
                                                   :    14 Civ. 8947 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                        Defendant.                 :
-------------------------------------------------- x
EM LTD.,                                           :
                        Plaintiff,                 :
                                                   :
             - against -                           :
                                                   :    14 Civ. 8303 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                        Defendant.                 :
-------------------------------------------------- x
```

```
-------------------------------------------------- x
LIGHTWATER CORP. LTD.,                             :
                          Plaintiff,               :
                                                   :
               - against -                         :
                                                   :    14 Civ. 4092 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                          Defendant.               :
-------------------------------------------------- :
                                                   x
OLD CASTLE HOLDINGS, LTD.,                          :
                          Plaintiff,               :
                                                   :
               - against -                         :
                                                   :    14 Civ. 4091 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                          Defendant.               :
-------------------------------------------------- x
SETTIN,                                             :
                          Plaintiff,               :
                                                   :
               - against -                         :
                                                   :    14 Civ. 8739 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                          Defendant.               :
-------------------------------------------------- x
CAPITAL VENTURES INTERNATIONAL,                    :
                          Plaintiff,               :
                                                   :
               - against -                         :
                                                   :    14 Civ. 7258 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                          Defendant.               :
-------------------------------------------------- x
```

```
----------------------------------------------- x
ADAMI, et al.,                                    :
                    Plaintiffs,                   :
                                                  :
          - against -                             :
                                                  :   14 Civ. 7739 (TPG)
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                    Defendant.                    :
----------------------------------------------- :
                                                  x
CAPITAL MARKETS FINANCIAL SERVICES               :
INC., et al.,                                     :
                                                  :
                    Plaintiffs,                   :
                                                  :
          - against -                             :   15 Civ. 0710 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                    Defendant.                    :
----------------------------------------------- x
FOGLIA, et al.,                                   :
                                                  :
                    Plaintiffs,                   :
                                                  :
          - against -                             :
                                                  :   14 Civ. 8243 (TPG)
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                    Defendant.                    :
----------------------------------------------- x
PONS, et al.,                                     :
                                                  :
                    Plaintiffs,                   :
                                                  :
          - against -                             :
                                                  :   13 Civ. 8887 (TPG)
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                    Defendant.                    :
----------------------------------------------- x
```

```
----------------------------------------------- x
GUIBELALDE, et al.,                             :
                        Plaintiffs,             :
                                                :
          - against -                           :
                                                :      11 Civ. 4908 (TPG)
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                        Defendant.              :
----------------------------------------------- :
                                                x
DORRA, et al.,                                  :
                                                :
                        Plaintiffs,             :
                                                :
          - against -                           :
                                                :      14 Civ. 10141 (TPG)
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                        Defendant.              :
----------------------------------------------- x
BELOQUI, et al.,                                :
                                                :
                        Plaintiffs,             :
                                                :
          - against -                           :
                                                :      14 Civ. 5963 (TPG)
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                        Defendant.              :
----------------------------------------------- x
TORTUS CAPITAL MASTER FUND, LP,                 :
                                                :
                        Plaintiff,              :
                                                :
          - against -                           :
                                                :      14 Civ. 1109 (TPG)
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                        Defendant.              :
----------------------------------------------- x
```

```
-------------------------------------------------- x
TORTUS CAPITAL MASTER FUND, LP,           :
                          Plaintiff,      :
                                          :
              - against -                 :
                                          :   14 Civ. 3127 (TPG)
THE REPUBLIC OF ARGENTINA,                :
                                          :
                          Defendant.      :
-------------------------------------------------- x
                                          :
TRINITY INVESTMENTS LIMITED,              :
                          Plaintiff,      :
                                          :
              - against -                 :
                                          :   14 Civ. 10016 (TPG)
THE REPUBLIC OF ARGENTINA,                :
                                          :
                          Defendant.      :
-------------------------------------------------- x
MONTREUX PARTNERS, L.P.,                  :
                          Plaintiff,      :
                                          :
              - against -                 :
                                          :   14 Civ. 7171 (TPG)
THE REPUBLIC OF ARGENTINA,                :
                                          :
                          Defendant.      :
-------------------------------------------------- x
LOS ANGELES CAPITAL,                      :
                          Plaintiff,      :
                                          :
              - against -                 :
                                          :   14 Civ. 7169 (TPG)
THE REPUBLIC OF ARGENTINA,                :
                                          :
                          Defendant.      :
-------------------------------------------------- x
```

```
------------------------------------------------- x
CORDOBA CAPITAL,                                   :
                        Plaintiff,                 :
                                                   :
            - against -                            :
                                                   :   14 Civ. 7164 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                        Defendant.                 :
------------------------------------------------- x
WILTON CAPITAL, LTD.,                              :
                        Plaintiff,                 :
                                                   :
            - against -                            :
                                                   :   14 Civ. 7166 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                        Defendant.                 :
------------------------------------------------- x
MCHA HOLDINGS, LLC,                                :
                        Plaintiff,                 :
                                                   :
            - against -                            :
                                                   :   14 Civ. 7637 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                        Defendant.                 :
------------------------------------------------- x
MCHA HOLDINGS, LLC,                                :
                        Plaintiff,                 :
                                                   :
            - against -                            :
                                                   :   14 Civ. 10064 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                        Defendant.                 :
------------------------------------------------- x
```

```
----------------------------------------------------- x
ANDRAREX LTD.,
                                            :
                        Plaintiff,          :
                                            :
           - against -                      :
                                            :    14 Civ. 9093 (TPG)
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                        Defendant.          :
----------------------------------------------------- :
                                            x
CLARIDAE, et al.,                           :
                                            :
                        Plaintiffs,         :
                                            :
           - against -                      :
                                            :    14 Civ. 10201 (TPG)
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                        Defendant.          :
----------------------------------------------------- x
ARAG-A LIMITED, et al.,                     :
                                            :
                        Plaintiffs,         :
                                            :
           - against -                      :
                                            :    14 Civ. 9855 (TPG)
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                        Defendant.          :
----------------------------------------------------- x
ATTESTOR MASTER VALUE FUND LP,              :
                                            :
                        Plaintiff,          :
                                            :
           - against -                      :
                                            :    14 Civ. 5849 (TPG)
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                        Defendant.          :
----------------------------------------------------- x
```

```
-------------------------------------------------- x
ANGULO, et al.,                                    :
                        Plaintiffs,                :
                                                   :
            - against -                            :
                                                   :    15 Civ. 1470 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                        Defendant.                 :
-------------------------------------------------- :
                                                   x
LAMBERTINI, et al.,                                :
                        Plaintiffs,                :
                                                   :
            - against -                            :
                                                   :    15 Civ. 1471 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                        Defendant.                 :
-------------------------------------------------- x
HONERO FUND I, LLC,                                :
                        Plaintiff,                 :
                                                   :
            - against -                            :
                                                   :    15 Civ. 1553 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                        Defendant.                 :
-------------------------------------------------- x
TRINITY INVESTMENTS LIMITED,                       :
                        Plaintiff,                 :
                                                   :
            - against -                            :
                                                   :    15 Civ. 1588 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                        Defendant.                 :
-------------------------------------------------- x
```

```
--------------------------------------------------- x
BANCA ARNER S.A., et al.,                           :
                           Plaintiffs,              :
                                                    :
                  - against -                       :
                                                    :   15 Civ. 1508 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                           Defendant.               :
--------------------------------------------------- x
                                                    :
TRINITY INVESTMENTS LIMITED,                        :
                                                    :
                           Plaintiff,               :
                                                    :
                  - against -                       :
                                                    :   15 Civ. 2611 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                           Defendant.               :
--------------------------------------------------- x
TRINITY INVESTMENTS LIMITED,                        :
                                                    :
                           Plaintiff,               :
                                                    :
                  - against -                       :
                                                    :   15 Civ. 5886 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                           Defendant.               :
--------------------------------------------------- x
MCHA HOLDINGS, LLC,                                 :
                                                    :
                           Plaintiff,               :
                                                    :
                  - against -                       :
                                                    :   15 Civ. 2577 (TPG)
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                           Defendant.               :
--------------------------------------------------- x
```

```
--------------------------------------------------- x
MCHA HOLDINGS, LLC,                                 :
                        Plaintiff,                  :
                                                    :
            - against -                             :       15 Civ. 5190 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                        Defendant.                  :
--------------------------------------------------- x
ERCOLANI, et al.,                                   :
                                                    :
                        Plaintiffs,                 :
                                                    :
            - against -                             :       15 Civ. 4654 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                        Defendant.                  :
--------------------------------------------------- x
FAZZOLARI, et al.,                                  :
                                                    :
                        Plaintiffs,                 :
                                                    :
            - against -                             :       15 Civ. 3523 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                        Defendant.                  :
--------------------------------------------------- x
STONEHILL INSTITUTIONAL PARTNERS,                   :
L.P. et al.,                                        :
                                                    :
                        Plaintiffs,                 :
                                                    :
            - against -                             :       15 Civ. 4284 (TPG)
                                                    :
THE REPUBLIC OF ARGENTINA,                          :
                                                    :
                        Defendant.                  x
---------------------------------------------------
```

```
-------------------------------------------------- x
WHITE HAWTHORNE, LLC,                              :
                          Plaintiff,               :
                                                   :
             - against -                           :        15 Civ. 4767 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                          Defendant.               :
-------------------------------------------------- :
VR GLOBAL PARTNERS, LP,                            x
                                                   :
                          Plaintiff,               :
                                                   :
             - against -                           :        11 Civ. 8817 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                          Defendant.               :
-------------------------------------------------- x
HONERO FUND I, LLC,                                :
                          Plaintiff,               :
                                                   :
             - against -                           :        15 Civ. 6702 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                          Defendant.               :
-------------------------------------------------- x
PROCELLA HOLDINGS, L.P.,                           :
                          Plaintiff,               :
                                                   :
             - against -                           :        15 Civ. 3932 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                          Defendant.               :
-------------------------------------------------- x
```

```
------------------------------------------------------- x
BYBROOK CAPITAL MASTER FUND LP et        :
al.,                                      :
                                          :
                      Plaintiffs,         :
                                          :
            - against -                   :        15 Civ. 7367 (TPG)
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                      Defendant.          :
------------------------------------------------------- x
BYBROOK CAPITAL MASTER FUND LP et        :
al.,                                      :
                                          :
                      Plaintiffs,         :
                                          :
            - against -                   :        15 Civ. 2369 (TPG)
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                      Defendant.          :
------------------------------------------------------- x
```

Plaintiffs in these forty-nine actions hold defaulted bonds issued by defendant, the Republic of Argentina. Plaintiffs have already obtained partial summary judgment that the Republic violated, and continues to violate, the *pari passu* clause of the underlying bond agreement. Plaintiffs now seek a remedy. They request an order granting specific performance of the *pari passu* clause. For the following reasons, the court grants plaintiffs' motions for specific performance.

## Background

In 1994, the Republic began issuing bonds pursuant to a Fiscal Agency Agreement ("FAA"). The FAA contains a provision, the *pari passu* clause, which

reads:

> The Securities will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preference among themselves. The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness . . . .

FAA ¶ 1(c).   In 2001, the Republic experienced an economic crisis and defaulted on its public debts, including the FAA bonds.  Each year since 2002, the Republic has passed legislation prohibiting payment on the FAA bonds.  As a result, many FAA bondholders began filing actions against the Republic in this court.

### 1. The 2005 and 2010 Exchange Offers

In 2005 and 2010, the Republic issued exchange offers inviting creditors, including FAA bondholders, to exchange their old bonds for newly issued bonds worth 25% to 29% of the original bonds' value.   The Republic took certain steps to encourage participation in the exchange offers, and to discourage "holdouts" from pursuing better terms.  For example, the Republic enacted Law 26,017 (the "Lock Law"), prohibiting settlement with those who declined the 2005 exchange.  *See* Law 26,017 art. 4.  In all, an estimated 93% of the Republic's creditors accepted the 2005 and 2010 exchange offers.  After each exchange, the Republic made regular payments on the Exchange Bonds but continuously refused to pay on the FAA bonds.

## 2. The Lead Plaintiffs and the *Pari Passu* Injunction

In 2010, a group of plaintiffs led by NML Capital, Ltd. (the "Lead Plaintiffs") filed motions seeking a different kind of judgment. These plaintiffs, by motion for partial summary judgment, asked the court to declare that the Republic had violated a portion of the *pari passu* clause, the "Equal Treatment Provision," by "creating a class of creditors who are guaranteed payment while formally condemning [plaintiffs] to a lower rank that is barred from receiving any payment at all." *See* Mem. L. Supp. Mot. Part. Summ. J. at 2, *NML Capital Ltd. v. Republic of Argentina*, No. 08-cv-6978 (Oct. 20, 2010). After extensive briefing, the court agreed with the Lead Plaintiffs and adjudged that the Republic had violated the *pari passu* clause of the FAA when it "lowered the rank of [plaintiffs'] bonds . . . [and] when it made payments currently due under the Exchange Bonds[] while persisting in its refusal to satisfy its payment obligations currently due under [plaintiffs'] Bonds." Order at 4–5, *NML Capital Ltd. v. Republic of Argentina*, No. 08-cv-6978 (Dec. 7, 2011).

On February 23, 2012, the court fashioned an injunction to enforce its judgment that the Republic had violated the *pari passu* clause. *See* Order, *NML Capital Ltd. v. Republic of Argentina*, No. 08-cv-6978 (Feb. 23, 2012). In granting equitable relief, the court found that each plaintiff "is irreparably harmed by and has no adequate remedy at law for the Republic's ongoing violations of [the *pari passu* clause], and that the equities and public interest strongly support issuance of equitable relief to prevent the Republic from further violating [the *pari passu* clause]." *Id.*

3

The Court of Appeals for the Second Circuit affirmed the injunction, but remanded to this court "to clarify precisely how it intends this injunction to operate." *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 255 (2d Cir. 2012) (*NML I*). On remand, the court issued an order clarifying that:

> a. Whenever the Republic pays any amount due under terms of the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future (collectively, the "Exchange Bonds"), the Republic shall concurrently or in advance make a "Ratable Payment" to [plaintiffs].
>
> b. Such "Ratable Payment" that the Republic is ORDERED to make to [plaintiffs] shall be an amount equal to the "Payment Percentage" . . . multiplied by the total amount currently due to [plaintiffs] in respect of the bonds at issue in these cases . . . , including pre-judgment interest . . . .

Order at ¶ 2 (a)–(b), *NML Capital Ltd. v. Republic of Argentina*, No. 08-cv-6978 (Nov. 21, 2012). This order became known as "the Amended Injunction."

The Republic appealed the Amended Injunction to the Court of Appeals.[1] The Second Circuit affirmed the Amended Injunction in its entirety. *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 248 (2d Cir. 2013) (*NML II*). Nonetheless, it stayed the injunction to allow the Republic to file a petition for a writ of *certiorari*. *Id.* The Republic filed its petition, and the Supreme Court denied it on June 16, 2014. *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2819 (2014). Soon thereafter, the Court of Appeals lifted the stay of the Amended Injunction and the Republic chose to default on the Exchange Bonds.

---

[1] Despite taking an appeal, at oral argument before the Court of Appeals in February 2013, counsel for the Republic "told the panel that it 'would not voluntarily obey' the district court's injunctions, even if those injunctions were upheld . . . ." *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 238 (2d Cir. 2013).

### 3. The Republic's Post-Injunction Conduct

Less than a month after the Court of Appeals affirmed the Amended Injunction, the Republic passed Law 26,886, reopening the exchanges but again prohibiting those who wished to participate from receiving terms more favorable than it had already offered. *See* Law 26,886 art. 2. Moreover, the Republic continued to forbid settlement with the holdouts who had filed lawsuits unless those holdouts accepted the same terms given in 2005 and 2010. *Id.* art. 4. In response, this court again ordered the Republic not to take any steps to evade its orders and held that the proposed evasion scheme would be illegal. Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (Oct. 3, 2013).

The day after the Supreme Court denied the Republic's petition for a writ of *certiorari*, the Republic announced a plan to pay on the Exchange Bonds without making a payment to the FAA bondholders. *See* Statement of the Minister of the Economy at 4 (June 17, 2014) ("We are initiating steps to initiate a debt exchange that would permit us to pay in Argentina under Argentine law."). Six days later, the Republic attempted to make a payment of $832 million on the Exchange Bonds without making a ratable payment to the Lead Plaintiffs. It has attempted to make additional payments since then. *See* Op. & Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 14-cv-8601 (June 5, 2015).

On September 11, 2014, the Republic enacted legislation with the stated purpose of paying on the Exchange Bonds without observing this court's orders

in the Lead Cases.  *See* Law 26,984 art. 2.  The legislation purported to appoint

an Argentine entity as trustee of the Exchange Bonds and establish a process

for Exchange Bondholders to swap their Exchange Bonds for securities

governed by French Law.  *Id.* arts. 3, 7.  Law 26,984 also declared this court's

orders as "illegitimate and illegal obstruction" of the payment process on the

Exchange Bonds.  *Id.* art. 2.

In response, the court held the Republic in contempt of court at a

hearing on September 29, 2014.  *See* Am. & Suppl. Order, *NML Capital, Ltd. v.*

*Republic of Argentina*, No. 08-cv-6978 (Oct. 3, 2014).  The very next day the

Republic purported to make yet another payment on the Exchange Bonds and

has apparently attempted to do so again in March and June 2015.  Cohen Decl.

Exs. 22, 23, 30.

### 4. The "Me Too" Plaintiffs and the Motions for Partial Summary Judgment

As discussed, in 2011 the Lead Plaintiffs obtained judgments from this

court that the Republic violated the *pari passu* clause of the FAA when it

lowered the rank of their FAA bonds.  In early 2015, so-called "me too"

plaintiffs in thirty-six actions filed motions for partial summary judgment

seeking a similar ruling.  On June 5, 2015, the court granted those motions,

finding that:

> By issuing the Exchange Bonds and passing legislation prohibiting
> payment on the FAA bonds, the Republic has created a superior class
> of debt to that held by plaintiffs.  By making payments on this
> superior class of debt, the Republic has violated its promise to rank
> plaintiffs' bonds equally with its later-issued external indebtedness.
> Thus, the court holds, in light of the Republic's entire and continuing
> course of conduct, that it has breached the *pari passu* clause of the
> FAA.

Op. & Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 14-cv-8601 (June 5, 2015). Plaintiffs in fifteen additional actions then filed similar motions for partial summary judgment, which the court granted on October 22, 2015. Op. & Order, *Trinity Invest. Ltd. v. Republic of Argentina*, No. 15-cv-2611 (Oct. 22, 2015).

### 5. The "Me Too" Plaintiffs and the Motions for Specific Performance

In total, "me too" plaintiffs in fifty-one actions have obtained judgments that the Republic violated, and continues to violate, the *pari passu* clause of the FAA. Plaintiffs in forty-nine of those actions now move for specific performance.[2] Plaintiffs seek equitable relief akin to the Amended Injunction obtained by the Lead Plaintiffs—and upheld by the Court of Appeals in August 2013—namely, an order requiring the Republic to make ratable payments to plaintiffs any time it makes, or attempts to make, payments on the Exchange Bonds. *See* Fed. R. Civ. P. 65(d).

<u>Discussion</u>

"Specific performance may be ordered where no adequate monetary remedy is available and that relief is favored by the balance of equities, which may include the public interest." *NML I*, 699 F.3d at 261 (citations omitted).

---

[2] The two actions where plaintiffs have obtained summary judgment but have not moved for specific performance are *Yellow Crane Holdings, LLC v. Republic of Argentina*, No. 14-cv-5675, and *Yellow Crane Holdings, LLC v. Republic of Argentina*, No. 15-cv-3336.

### 1. The Republic's conduct causes plaintiffs irreparable harm for which there is no adequate remedy at law.

The Republic's ongoing violations of the *pari passu* clause cause plaintiffs irreparable harm for which there is no adequate remedy at law. The Republic has violated its promise to rank plaintiffs' bonds equally with its later-issued external indebtedness by making payments on the Exchange Bonds and not on plaintiffs' bonds. The Republic has made clear its intention to defy any money judgment issued by this court, and plaintiff has no other means to enforce its rights under the *pari passu* clause. *See id.* at 262 ("[I]t is clear to us that monetary damages are an ineffective remedy for the harm plaintiffs have suffered as a result of Argentina's breach.").

### 2. The balance of equities favors specific performance.

The balance of equities tips in plaintiffs' favor because the Republic has engaged in a scheme of making payments on other external indebtedness after repudiating its payment obligations to plaintiffs. As far back as 2012, the court held that the Republic's evasive tactics meant the balance of equities "strongly supports" an award of specific performance. The Republic has done nothing in recent years to alleviate the court's concerns. If anything, it has escalated its scheme of attempting to make payments on the Exchange Bonds while refusing to make any payment on the FAA bonds. *See, e.g.*, Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (Oct. 3, 2013) (finding that the Republic's proposed evasion scheme would contravene the Amended Injunction).

The relief sought would also not unfairly prejudice the rights of third parties. The order does not affect the Exchange Bondholders' contractual right to be paid by the Republic, and the Republic's threat not to pay the Exchange Bondholders "does not make an otherwise lawful injunction 'inequitable.'" *See NML II*, 727 F.3d at 242. Moreover, the injunction is not unfair to the Exchange Bondholders because, as the Court of Appeals stressed, "before accepting the exchange offers, they were expressly warned by Argentina in the accompanying prospectus that there could be 'no assurance' that litigation over the FAA Bonds would not 'interfere with payments' under the Exchange Bonds." *Id.*

The Republic's arguments concerning its ability to pay all its debts in full are unavailing. Nothing in this order requires—or coerces—the Republic to pay plaintiffs anything at all.[3] The Republic laments that it will have no choice but to default if it is subject to an injunction requiring it to pay all plaintiffs if it wants to pay the Exchange Bondholders. But this argument ignores the obvious fact that the Republic has *already* chosen to default on its Exchange Bonds. Granting plaintiffs' motion here will therefore cause no new harm that would alter the equities.

---

[3] That said, the Republic has repeatedly shown it can pay its debts when it chooses to do so—such as its October 2015 payment of nearly $6 billion to creditors; its February 2014 settlement with Repsol S.A. for $5 billion; and its May 2014 settlement with the Paris Club nations for $9.7 billion. *See* Cohen Decl. Exs. 2–4. *Cf. NML II*, 727 F.3d at 242 (noting the importance of the Republic's failure "to present the district court with any record evidence to support its assertions" that it could not service its defaulted debt).

The Republic also claims the court should not issue additional injunctions because they would impede settlement. The Republic's reluctance to entertain meaningful settlement discussions before the Special Master should not prevent plaintiffs from vindicating their rights under the *pari passu* clause. If anything, the equities cut the other way. It would be inequitable to give injunctive relief to one group of bondholders while denying that relief to other, similarly situated bondholders. Ordering specific performance therefore ensures basic fairness by placing these plaintiffs on equal footing with the Lead Plaintiffs.

### 3. The public interest supports granting specific performance.

Finally, an order of specific performance serves the public interest of enforcing contracts, maintaining confidence in debt markets, and upholding the rule of law. As the Court of Appeals held back in 2013, "the interest—one widely shared in the financial community—in maintaining New York's status as one of the foremost commercial centers is advanced by requiring debtors, including foreign debtors, to pay their debts." *Id.* at 248. The same holds true today.

Nor will relief in this "exceptional" case "imperil future sovereign debt restructurings." *See id.* at 247. As the Court of Appeals observed, "cases like this one are unlikely to occur in the future because Argentina has been a uniquely recalcitrant debtor and because newer bonds almost universally include collective action clauses ("CACs") which permit a super-majority of

bondholders to impose a restructuring on potential holdouts." *Id.* An order of specific performance therefore serves the public interest.

### 4. The FSIA poses no bar to the relief sought by the post-judgment plaintiffs.

The Republic asserts that § 1609 of the Foreign Sovereign Immunities Act ("FSIA") prohibits the injunctions sought by the *post-judgment* plaintiffs here. Although the Court of Appeals held that the FSIA posed no bar to the Amended Injunction, the Republic argues that it did so only because plaintiffs in the earlier cases had not yet obtained judgments, unlike many of the plaintiffs here. The injunction sought by the post-judgment plaintiffs would therefore be in "aid of execution" of their judgments and subject to the execution immunity afforded to sovereign property under the FSIA.

The Republic's attempt to evade the Court of Appeals' decision is unpersuasive. The Court of Appeals placed no weight on the pre-judgment status of those plaintiffs, instead holding generally that the FSIA has no relation to an order requiring the Republic to honor its contractual promise to pay all of its creditors ratably if it chooses to pay any of them. *NML I*, 699 F.3d at 262 ("[B]ecause compliance with the Injunctions would not deprive Argentina of control over any of its property, they do not operate as attachments of foreign property prohibited by the FSIA."). Just as with the Amended Injunction, the injunctions sought here "do not attach, arrest, or execute upon any property," nor do they require "seizure and control over specific property." *Id.* Indeed, as the Court of Appeals made clear, these injunctions "can be complied with without the court's ever exercising dominion

over sovereign property." *See id.* And, if it so chooses, the Republic may pay its debts "with whatever resources it likes." *See NML II*, 727 F.3d at 240–41.

At oral argument, counsel for the Republic repeatedly claimed that, because the Amended Injunction is already in effect, the post-judgment plaintiffs' request for additional injunctions is redundant and necessarily shows that plaintiffs seek only to enforce their money judgments since the injunctions could serve no other purpose. *See, e.g.*, Hr'g Tr. at 27:11–14 (Oct. 28, 2015) ("[S]ince we have injunctions in place, the question becomes why are they insisting on this additional amount. And my submission to your Honor is that it is this issue of coercing a payment in full to them and to others . . . ."). Not so. Plaintiffs here are equally entitled to enforce their rights under the *pari passu* clause and understandably seek the same relief as the Lead Plaintiffs. Absent an injunction, plaintiffs in these actions would be left without the protection guaranteed to them under the FAA if the Lead Plaintiffs were to withdraw their claims against the Republic. The relief plaintiffs' seek is reasonable and has nothing to do with coercing payment or enforcement money judgments.

### 5. Compliance with the injunction is not impossible.

The Republic also argues that the court must deny all plaintiffs' motions because specific performance is unavailable where compliance is impossible. The Republic claims that "no sovereign . . . could afford to reduce its Central Bank reserves by the amount of the Republic's outstanding defaulted debt" because those reserves "are vital to maintaining the healthy functioning of the

Republic's economy, and the requested orders would subject the Republic to an unacceptable degree of catastrophic risk." Mem. L. Opp'n Mot. Specific Performance at 2–3, *NML Capital, Ltd. v. Republic of Argentina*, No. 14-cv-8601 (Sept. 25, 2015).

Again, the Republic fundamentally misapprehends the nature of the *pari passu* clause and these injunctions. The injunctions are not meant to coerce payment—they seek to fulfill a promise to treat the Republic's obligations under the FAA equally with its obligations on other external indebtedness, both in ranking and through ratable payments. The *pari passu* clause does not ensure that plaintiffs' bonds will be paid in full—or even paid at all. Rather, it ensures that *if* the Republic chooses to pay some external indebtedness, it must pay the same ratable share to plaintiffs. The Republic can comply with the injunction even if it never pays plaintiffs, so long as it affords the same treatment to other holders of its external indebtedness.

## Conclusion

For these reasons, the court grants plaintiffs' motions for specific performance. The Republic is ordered to specifically perform its obligations to plaintiffs under the *pari passu* clause by making ratable payments to plaintiffs any time it makes, or attempts to make, payments on the Exchange Bonds. The Republic is enjoined from violating the *pari passu* clause and from taking any action to evade the purposes and directives of this order. Within three days, the Republic shall provide copies of this order to all participants in the payment process of the Exchange Bonds. These participants shall be bound by this order, as provided by Rule 65(d)(2), and prohibited from aiding and abetting any violation of this order.

SO ORDERED

Dated: New York, New York
      October 30, 2015

Thomas P. Griesa
U.S. District Judge

14

# Exhibit H

1

G31dnmla

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     NML CAPITAL, LTD.,
 3
                    Plaintiff,
 4
            v.                        08 Civ. 6978(TPG)
 5                                    09 Civ. 1707(TPG)
     THE REPUBLIC OF ARGENTINA,       09 Civ. 1708(TPG)
 6                                    14 Civ. 8601(TPG)
                    Defendant.        14 Civ. 8988(TPG)
 7
     ------------------------------x
 8   AURELIUS CAPITAL MASTER, LTD.,
     AURELIUS OPPORTUNITIES FUND II,
 9   LLC, AURELIUS CAPITAL PARTNERS,
     LP, et al.,
10
                    Plaintiffs,
11
            v.                        09 Civ. 8757(TPG)
12                                    09 Civ. 10620(TPG)
                                      10 Civ. 1602(TPG)
13   THE REPUBLIC OF ARGENTINA,       10 Civ. 3507(TPG)
                                      10 Civ. 3970(TPG)
14                  Defendant.        10 Civ. 8339(TPG)
                                      14 Civ. 8946(TPG)
15   ------------------------------x
     BLUE ANGEL CAPITAL I LLC,
16
                    Plaintiff,
17
            v.                        10 Civ. 4101(TPG)
18                                    10 Civ. 4782(TPG)
     THE REPUBLIC OF ARGENTINA,       14 Civ. 8947(TPG)
19
                    Defendant.
20   ------------------------------x   (Caption continues)

21

22

23

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G31dnmla

```
 1     -----------------------------x

 2     Related cases:

 3     10 Civ. 9587(TPG)
       10 Civ. 5338(TPG)
 4     14 Civ. 8630(TPG)
       14 Civ. 8303(TPG)
 5     14 Civ. 8242(TPG)
       14 Civ. 4092(TPG)
 6     14 Civ. 4091(TPG)
       14 Civ. 7258(TPG)
 7     14 Civ. 10016(TPG)
       15 Civ. 1588(TPG)
 8     15 Civ. 2611(TPG)
       15 Civ. 5886(TPG)
 9     14 Civ. 10064(TPG)
       14 Civ. 7637(TPG)
10     15 Civ. 2577(TPG)
       15 Civ. 5190(TPG)
11     14 Civ. 8739(TPG)
       15 Civ. 3932(TPG)
12     11 Civ. 4908(TPG)
       14 Civ. 10141(TPG)
13     14 Civ. 5963(TPG)
       14 Civ. 1109(TPG)
14     14 Civ. 3127(TPG)
       14 Civ. 7739(TPG)
15     15 Civ. 0710(TPG)
       14 Civ. 8243(TPG)
16     13 Civ. 8887(TPG)
       14 Civ. 9093(TPG)
17     14 Civ. 10201(TPG)
       14 Civ. 7171(TPG)
18     14 Civ. 7169(TPG)
       14 Civ. 7164(TPG)
19     14 Civ. 7166(TPG)
       14 Civ. 9855(TPG)
20     14 Civ. 5849(TPG)
       15 Civ. 1470(TPG)
21     15 Civ. 1471(TPG)
       15 Civ. 6702(TPG)
22     15 Civ. 1553(TPG)
       15 Civ. 1508(TPG)
23     15 Civ. 4767(TPG)
       15 Civ. 4654(TPG)
24     15 Civ. 3523(TPG)
       15 Civ. 4284(TPG)
25     -----------------------------x
```

                                                                    3
          G31dnmla

  1     ------------------------------x

  2     Related Cases continued:

  3     11 Civ. 8817(TPG)
        15 Civ. 2369(TPG)
  4     15 Civ. 7367(TPG)

  5     ------------------------------x

  6

  7                                          New York, N.Y.

  8                                          March 1, 2016
                                             1:34 p.m.
  9
        Before:
 10
                          HON. THOMAS P. GRIESA,
 11
                                             District Judge
 12
                     APPEARANCES OF PARTICIPATING COUNSEL
 13
        DECHERT LLP
 14          Attorneys for Plaintiff NML Capital
        BY:  ROBERT A. COHEN
 15
        FRIEDMAN KAPLAN SEILER & ADELMAN LLP
 16          Attorneys for Aurelius Plaintiffs, Blue Angel
        BY:  EDWARD A. FRIEDMAN
 17
        DEBEVOISE & PLIMPTON
 18          Attorneys for EM, Ltd.
        BY:  MICHAEL B. MUKASEY
 19
        GIBSON,  DUNN & CRUTCHER LLP
 20          Attorneys for NML
        BY:  THEODORE B. OLSON
 21
        HOLWELL SHUSTER & GOLDBERG LLP
 22          Attorneys for Montreux Partners,
             Cordoba Capital, Wilton Capital
 23     BY:  MICHAEL S. SHUSTER

 24

 25

                          SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300

4

G31dnmla

```
 1                    APPEARANCES CONTINUED

 2
     CRAVATH, SWAINE & MOORE LLP
 3        Attorneys for Defendant Republic of Argentina
     BY:  MICHAEL A PASKIN
 4
     LATHAM & WATKINS LLP
 5        Attorneys for Euro Bondholders for Order
     BY:  CHRISTOPHER J. CLARK
 6
     MILBERG LLP
 7        Attorneys for Plaintiffs in Varela
          and 10 other actions (small bondholders)
 8   BY:  MICHAEL C. SPENCER

 9   DUANE MORRIS LLP
          Attorneys for nonsettling plaintiffs group
10   BY:  ANTHONY J.COSTANTINI

11   WEIL, GOTSHAL & MANGES LLP
          Attorneys  for Attestor Master Value Fund LP,
12        Bybrook Capital Master Fund LP,
          Trinity Investments Limited, White Hawthorne, LLC
13        Yellow Crane
     BY:  RICHARD L. LEVINE
14
     GLEASON & KOATZ, LLP
15        Attorneys for Fazzolari and Julio Roberto Perez
     BY:  ANU BHARGAVA
16
     PROSKAUER ROSE LLP
17        Attorneys for small noteholders
     BY:  JENNIFER R. SCULLION
18
     MORGAN, LEWIS & BOCKIUS LLP
19        Attorneys for Red Pines and Trinity Intervenors
     BY: P. SABIN WILLETT
20
     ANDERSEN SLEATER, LLC
21        Attorneys for Intervenor Mohammad Ladjevardian
     BY:  JESSICA J. SLEATER
22
     REED SMITH LLP
23        Attorneys for The Bank of New York Mellon
          as Indenture Trustee
24   BY:  ERIC A. SCHAFFER

25
```

G31dnmla

```
 1              THE CLERK:  Conference on the request for orders

 2    granting the Republic's motion, NML Capital limited versus the

 3    Republic of Argentina and all affiliated case captions.

 4              All parties are present, your Honor.

 5              THE COURT:  Good afternoon.  Please be seated.

 6              Today's hearing is to give those who favor my

 7    indicative ruling and those who oppose my indicative ruling the

 8    opportunity to be heard.  So I think that it has been organized

 9    to the order of which you'll speak and so forth.  So let's

10    proceed with the order that has been established.

11              THE CLERK:  Your Honor, speaking for the motion, this

12    first speaker will be Mr. Michael Mukasey.

13              Mr. Mukasey, if you would please stand at the podium

14    and make your presentation.

15              MR. MUKASEY:  May it please the Court:

16              Good afternoon, your Honor.  I am Michael Mukasey, of

17    Debevoise Plimpton.  I'm here for EM Limited, which is one of

18    the plaintiffs that has signed an agreement in principle to

19    settle its claims against Argentina and therefore supports

20    entry of a final order lifting the pari passu injunctions as

21    provided in your Honor's indicative ruling.

22              Before counsel for Argentina present their legal

23    position, I just want to go through a little bit of history

24    that got us here.

25              THE COURT:  Could you speak just a little slower so I
```

6

G31dnmla

1    can absolutely hear you.

2        MR. MUKASEY:  OK.  The Court now has before it all of

3    the actions, 62 in all, in which plaintiffs have secured

4    injunctions to specifically enforce the pari passu clause and

5    the 1994 fiscal agency agreement.  Argentina has moved before

6    this Court to issue a final order providing that you would

7    vacate the injunctions issued in all of those cases.

8        To use the terminology from your Honor's February 19

9    indicative ruling, Argentina is asking that this Court lift

10   both the original injunctions and the "me too" injunctions, the

11   original injunctions having been entered in February of 2012

12   and the "me too" injunctions in 2015.  As the Court correctly

13   stated in the indicative ruling, the Court has to lift the

14   injunctions in all cases in order to avoid harming plaintiffs,

15   like my client EM and others, that have reached agreement in

16   principle with Argentina.

17       Argentine filed motions in this Court seeking relief

18   from the pari passu injunctions because the "me too" injunction

19   was then on appeal in Circuit Court.  Your Honor issued an

20   indicative ruling that should the case be remanded from the

21   Second Circuit, your Honor would vacate the injunction based on

22   strong evidence of recently changed circumstances.  And on

23   February 19th, after full briefing by plaintiffs and Argentina,

24   your Honor issued an indicative ruling, saying that if the

25   cases were remanded from the Court of Appeals, your Honor would

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G31dnmla

1    enter an order conditionally lifting the pari passu injunctions

2    if, and only if, two conditions were met -- that is the Lock

3    Law, that was enacted by the Argentine Legislature that

4    prevented payment, would have to be repealed, and, second, that

5    Argentina would have to make full payment to all plaintiffs who

6    entered into agreements in principle with Argentine on or

7    before February 29, which was yesterday.

8         Argentina then took that indicative ruling to the

9    Second Circuit, asked that Court remand the "me too" cases to

10   this Court so that your Honor could enter a final order

11   conditionally lifting the injunctions.  On February 24,

12   Argentina went further and dismissed its appeal pending before

13   the Court of Appeals seeking review of the "me too" injunction,

14   did that with prejudice.  On the same day, they dismissed a

15   related appeal contesting the scope of the original injunction,

16   did that with prejudice as well.  And the Second Circuit

17   immediately issued a mandate restoring jurisdiction to this

18   Court in all of those cases.

19        In its order dismissing the appeals, the Second

20   Circuit said that dismissal was subject to two conditions,

21   agreed to by the parties:  First, that Argentina would request

22   a hearing before this Court at which all parties could be heard

23   before any final order is entered -- and that's why we're here

24   today -- and, second, that any final order vacating the

25   injunctions would be stayed for up to two weeks so that anybody

G31dnmla

1   who opposed the order could take an appeal to the Second

2   Circuit and ask for a further stay if they thought one was

3   warranted.  Now, Argentina has moved this Court to enter a

4   final order conditionally vacating the injunctions in all cases

5   and has also asked, as the Second Circuit directed, that this

6   Court hold this hearing.

7           Now, the arguments supporting Argentina's request to

8   lift the pari passu injunctions are, if anything, even stronger

9   today than they were when your Honor issued the indicative

10  ruling on February 19.  Argentina has now entered into

11  agreements in principle covering over $8 billion of claims in

12  these cases, but in order for any of those to go forward, the

13  pari passu injunction has to be lifted in all cases.

14          Your Honor unquestionably has the power to vacate an

15  injunction, that being an equitable remedy.  You have the power

16  to vacate it in light of changed circumstances.  And here the

17  evidence of changed circumstances is overwhelming.  Your Honor

18  wrote in the indicative ruling that President Macri's election

19  changed everything, but since then a great deal more has

20  happened.

21          First, the substantial settlement agreements in the

22  records really speak for themselves.  After years of

23  obstruction under the prior regime, in a short period of time

24  Argentina has managed to come to terms with the vast majority

25  of its creditors, leaving only a few parties who are holding

G31dnmla

1    out for more while preventing any of the settlements from going

2    forward.  These holdouts may or may not agree to the terms

3    offered by Argentina.  But whether they do or not, the

4    injunction has clearly served its purpose of encouraging

5    Argentina to engage in meaningful settlement negotiations.

6              Second, since the Court's indicative ruling, Argentina

7    has voluntarily abandoned its appeals challenging the Court's

8    authority to issue the injunctions.  That, too, is evidence of

9    changed circumstances.

10             And, finally, Argentina has agreed that any relief

11   from the injunction should be conditioned both on repealing the

12   Lock Laws and payment of the settlements under the agreements

13   that were reached as of yesterday.

14             At this point, I think it's fair to say it's the

15   injunction itself, not Argentina, that stands in the way of

16   resolving this dispute.  As your Honor found in the indicative

17   ruling, these changed circumstances have rendered the

18   injunctions inequitable and detrimental to the public interest.

19             The injunction is inequitable because it prevents

20   settling plaintiffs from receiving payment of their claims.  My

21   client EM, for example, obtained a final judgment in this Court

22   more than 12 years ago, and it stands to receive approximately

23   $850 million by settling with Argentina.  Allowing the

24   injunction to remain in place would only serve to empower

25   plaintiffs who have not settled to hold out for a better deal

G31dnmla

1    while preventing the settling plaintiffs from receiving the

2    settlement that they have agreed to.  In order to avoid this

3    inequitable result, the injunction should be lifted in every

4    case in which it is entered because otherwise nothing can go

5    forward in any case.

6         The question before the Court is whether the interests

7    of the remaining holdouts in negotiating a better deal outweigh

8    the interest of the settling plaintiffs in resolving their

9    disputes, the interest of the exchange bondholders from

10   receiving payment of their bonds, and the interest of the

11   Argentine people generally in securing a better economic future

12   for their country.

13        For the reasons that are stated in the Court's

14   indicative ruling, the Court should exercise its discretion to

15   lift the injunctions entered in all cases upon the fulfillment

16   of two conditions, as your Honor set forth in the injunctive

17   ruling -- in the indicative ruling:  First, termination of the

18   Lock Laws, and, second, payment to the parties who reached

19   agreements in principle on or before February 29.

20        Unless your Honor has specific questions of me, I'm

21   happy to yield to counsel for Argentina, Michael Paskin, and

22   I'll be happy to respond later on, if necessary, to any points

23   that get made by those who oppose lifting the injunction.

24        Thank you.

25        THE CLERK:  Thank you, Mr. Mukasey.

G31dnmla

1         The next speaker will be Mr. Shuster.

2         Mr. Shuster, thank you.

3         MR. SHUSTER:  Thank you.

4         Michael Shuster, your Honor, from Holwell Shuster &

5    Goldberg.  I represent four of the settling plaintiffs --

6    Montreux Partners, Los Angeles Capital, Cordoba Capital and

7    Wilton Capital -- in four of the separate individual actions.

8

9         Your Honor, my clients favor the indicative ruling and

10   support Argentina's motion now that the ruling be made

11   permanent.  The indicative ruling was correctly decided.  My

12   plaintiffs were an early settler.  My plaintiffs settled early

13   because it was obvious to them that Argentina had changed

14   dramatically its approach to this dispute, that it was very

15   serious about settling and resolving this and putting the case

16   behind it, and because it made an offer that was fair and

17   reasonable, and because the offer was fair and reasonable my

18   clients accepted it.

19        The case has reached this posture because the lead

20   plaintiffs, and other plaintiffs, have successfully pursued a

21   strategy in this court.  We're here because of the Court's good

22   and wise decision making over the course of ten years, and

23   we're here because of the constructive and indispensable role

24   that the Special Master has played in bringing the parties

25   together so that this decade-long litigation can finally be put

G31dnmla

1    behind Argentina, the Court, and the parties.

2           From our perspective, the equities here have shifted

3    dramatically.  We are highly sensible of the fact that on the

4    other side of this dispute is a sovereign state, a sovereign

5    state whose public finances have been handcuffed by virtue of

6    the injunctions that have been in place for a decade, properly

7    so given its conduct, but it's conduct has changed.  Argentina

8    fought an election over this issue.  President Macri was

9    elected in part over this issue.  This is a matter of central

10   concern to the national life of a sovereign state -- and not a

11   wealthy state, a state which needs to be able to now gain

12   access to the capital markets so that it can raise capital not

13   only to settle this litigation but so that it can benefit its

14   people who are by no means wealthy.

15          So the government is prepared and has been prepared to

16   settle all of these claims.  It has indicated that it will

17   actually repeal legislation that stands in the way of resolving

18   these matters.  It is simply doing everything it can to be

19   responsive to the will of this Court, to the needs of the

20   parties, and to its own needs.

21          From our perspective, there are some parties here who

22   seem to want to snatch still more litigation from the jaws of

23   settlement.  We think that would be a mistake.  We think that a

24   historic resolution of this case is at hand not only for this

25   Court but for the Republic of Argentina and its people.  To us

G31dnmla

1    the equities have shifted decisively in favor of lifting the

2    injunction, and for the sake of all concerned we strongly

3    support the motion and your Honor's indicative ruling.

4            THE CLERK:  Thank you very much, sir.

5            Mr. Michael Paskin.

6            MR. PASKIN:  Good afternoon, your Honor.  Michael

7    Paskin from Cravath, Swaine & Moore for Argentina.

8            As Mr. Mukasey and Mr. Shuster have indicated, we are

9    in favor of the motion to convert into an order your Honor's

10   indicative ruling of eleven days ago.  The indicative ruling

11   was based on sound findings of fact and an observation of the

12   changed circumstances that have obtained in the time since the

13   original injunctions were entered and, most specifically, in

14   the time since President Macri came into office just over two

15   months ago.

16           The issue to be decided today, your Honor, is really

17   quite simple.  It's whether those circumstances that your Honor

18   has found have changed are still the case.  And we believe that

19   they are even more so in place because your Honor's indicative

20   ruling also -- subsequent to your Honor's indicative ruling,

21   there have been additional settlements that have been agreed

22   upon, and Argentina has further demonstrated its willingness

23   and eagerness to put these issues behind it because it has

24   withdrawn appeals that were currently pending before the Second

25   Circuit because it is fully invested in the opportunity that

G31dnmla

1    your Honor is presenting them with to resolve these disputes

2    once and for all.

3            There are a few issues that have been raised in the

4    various submissions made over the last several days objecting

5    to the indicative ruling and suggesting that your Honor should

6    not convert it into a final order, and I'd like to address a

7    few of those.

8            Perhaps the most important one is the suggestion that

9    in some way it would be OK if the order vacating the

10   injunctions in place were not done across all cases but were

11   perhaps done on some cases but not others depending on whether

12   a party has agreed to a settlement or not.  I submit, your

13   Honor, that while there are injunctions that have been entered

14   in multiple nonconsolidated cases, the injunctive relief in

15   play here is not a plural thing.  It is a singular thing that

16   has been prescribing Argentina's conduct, that has been

17   preventing Argentina from boosting its economy through

18   resolving these cases and accessing the international capital

19   markets, and your Honor entered those rulings both in 2012, and

20   subsequently, based on a common set of circumstances that the

21   Court had observed at that time.  Those circumstances, which

22   were common at the time to Argentina's conduct, have changed in

23   a way that is common to all cases.

24           So I respectfully submit that to the extent your Honor

25   converts the indicative ruling into a final order, which the

G31dnmla

1    Republic obviously believes should be done, that it be done

2    across all cases regardless of whether a settlement has been

3    reached in that particular case or not.  And as a practical

4    matter, your Honor, this issue is critical.  The reason that

5    it's critical is because if the injunction remains in place in

6    any single case, then the relief exists exactly as it has for

7    these past several years.  It gives any nonsettling party not

8    only a veto power and the ability to exercise its own will to

9    settle or not settle as it sees fit, which, of course, is any

10   party's right, but it allows that party, whether it is a large

11   plaintiff such as NML or any of the smaller individual

12   plaintiffs who your Honor will probably be hearing from today,

13   it gives any one of them the ability to blow apart the entire

14   global settlement across all cases and across all parties,

15   because if the injunction remains in any one case, the relief

16   that the injunction prescribes remains in place regardless of

17   whether the order has been vacated in other cases.

18          Another issue that's been raised, your Honor, is that

19   certain parties have suggested that rather than enter an order

20   following on what the indicative order said that would set

21   conditions upon performance of which the injunctions in place

22   would automatically be vacated, there are certain objecting

23   parties who believe that the Court should hold a separate

24   hearing down the road after those conditions have been

25   satisfied and only at that time make a determination about

G31dnmla

```
 1    whether the injunctions should actually be lifted.  Again, we
 2    submit, your Honor, that that is not a workable solution.
 3            First, there are a lot of issues in play here,
 4    including the need to get new legislation through Congress to
 5    repeal the laws that have acted for so long as an impediment to
 6    settlement in Argentina as well as the likely need to access
 7    the capital markets in order to raise financing to fund these
 8    settlements.  If there is not certainty, your Honor, about the
 9    import of your Honor's ruling and the decision that upon the
10    occurrence of certain conditions the injunctions will be
11    lifted, which we fully expect to be quickly briefed and argued
12    before the Second Circuit so that we can get a final answer on
13    that question as quickly as possible, then it becomes much
14    harder to implement those required changes.  If there is
15    uncertainty about whether your Honor will ultimately decide to
16    vacate the injunctions even upon those conditions occurring,
17    then there will be uncertainty in the Congress in Argentina,
18    there will be uncertainty within the capital markets, and it
19    becomes more difficult to implement this plan of global
20    settlement than if your Honor does what your Honor has already
21    chosen to indicate in the indicative ruling, which is to put an
22    order in place that would go into effect -- that it would be
23    ordered immediately that would call for the automatic lifting
24    of the injunctions upon the occurrence of those two important
25    conditions, one being the required legislative changes and the
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

G31dnmla

1    second being payment to those parties who have reached

2    settlements.

3           Another objection that's been made in some of the

4    submissions of the last couple of days, your Honor, relates to

5    the supposed fairness or unfairness of the public settlement

6    proposal that was put forward by Argentina earlier this

7    month -- or, excuse me, on February 5th, because we're now in

8    March.  As your Honor correctly observed in the indicative

9    ruling, the question of how fair or not or how reasonable the

10   terms of settlement are, whether the terms that have been

11   offered, the terms that had been accepted and reflected in

12   actual agreements, that is not a question that the Court needs

13   to get involved in or needs to decide in reaching the relief

14   that we are seeking.  Those are not the changed circumstances

15   that are required.

16          The fact is -- and your Honor has observed -- that

17   circumstances have changed because of Argentina's general

18   openness towards --

19          THE CLERK:  Time, counsel.

20          MR. PASKIN:  -- and it's willingness to engage and

21   reflect those agreements with certain parties that have already

22   settled.

23          Thank you, your Honor.

24          THE CLERK:  Thank you, Mr. Paskin.

25          Mr. Christopher Clark.

18

G31dnmla

1          MR. CLARK:  Thank you, your Honor.

2          I represent the Euro bondholders and certain

3     affiliated exchange bondholders.

4          Argentina owes my clients billions of dollars.  I

5     don't think anyone in this room disputes that it's fairly owed.

6     Your Honor has stressed repeatedly throughout these proceedings

7     that my clients have a right to be paid just as the holdout

8     bondholders have a right to be paid.

9          Your Honor perceived extraordinary circumstances in

10    this litigation and issued an extraordinary remedy, which was

11    an injunction, in a breach of contract case, prohibiting the

12    payment of my clients' due, and that's gone on for years.

13    That's gone on now to the tune of $3.1 billion being withheld

14    from my clients and other exchange bondholders by operation of

15    the injunction.

16         As your Honor indicated in the indicative ruling, the

17    extraordinary circumstances that merited the extraordinary

18    relief the Court granted are gone.  Argentina is absolutely

19    engaging with the holdout bondholders.  Argentina has settled

20    with the holdout bondholders, or the vast majority thereof.

21    Argentina is ready, willing and able, it seems, to repeal the

22    Lock Law and to pay on the settlements that have been agreed

23    to.

24         And so, as your Honor noted in the indicative ruling,

25    when you look at the equities here, the parties that have

G31dnmla

1    benefited are the holdout bondholders, who have engaged with

2    Argentina and worked out a settlement, and we're left

3    disadvantaged, your Honor.  We've done nothing wrong.  We hold

4    bonds.  We've got payments that Argentina would like to make to

5    us, and at this point the only impediment from that fair and

6    just result is the injunction.

7            And so as your Honor correctly noted in the indicative

8    ruling, the balance of equities has changed; it's changed

9    materially.  The facts on the ground have changed in that

10    Argentina has absolutely done the things the injunction was

11    meant to do.  It wasn't meant to make them pay a certain amount

12    of money for a settlement that holdouts found acceptable.  Your

13    Honor correctly noted, it was made to make them engaged.  And

14    through the efforts of the Court and the Special Master and the

15    parties, they have done that.  And at this point the equitable

16    result would be to grant the motion, start the process of my

17    clients getting paid their due and what they're owed.  At this

18    point in this dispute, we're basically the only people with a

19    multibillion-dollar claim left that's not certain, and that's

20    not equitable, as your Honor noted.

21            So we fully support the granting of the indicative

22    ruling and ask that it be converted to a final order.

23            Thank you, your Honor.

24            THE CLERK:  Thank you, Mr. Clark.

25            Now speaking against the motion will be Mr. Robert

20

G31dnmla

1   Cohen.

2           MR. COHEN:  Good afternoon, your Honor.  Robert Cohen,

3   from Dechert LLP, on behalf of plaintiff NML Capital.

4           Mr. Olson will be making our substantive argument.  I

5   rise just to note for the record that we have withdrawn a

6   declaration that was submitted in support of our proposal, the

7   declaration of Mr. Jay Newman --

8           THE COURT:  I am having a little trouble hearing you.

9   Just keep your voice up a little more, please.

10          MR. COHEN:  Thank you, your Honor.

11          I rise, your Honor, just to note for the record that

12  we have withdrawn today the declaration of Mr. Jay Newman that

13  was submitted in support of our opposition papers, and we're

14  informed the Clerk's office has withdrawn that.  So, we are not

15  relying on that declaration today.

16          THE CLERK:  Thank you, Mr. Cohen.

17          Mr. Olson.

18          MR. OLSON:  Thank you, your Honor.  May it please the

19  Court:

20          My name is Theodore Olson, from Gibson Dunn &

21  Crutcher.  I represent NML Capital.  I have only one point to

22  make to your Honor.  Together, NML Aurelius and Blue Angel and

23  Olifant represent 65 percent of the claims in this litigation.

24  As of yesterday, these plaintiffs entered into an agreement in

25  principle with Argentina to settle their claims in this

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

21

G31dnmla

 1    litigation.  This agreement is a monumental achievement.  It is

 2    a great tribute to the Court's patient and meticulous

 3    supervision.  It is also testimony to the tireless effort of

 4    the Special Master and to the dedicated engagement of all of

 5    the parties on all sides.

 6           But the agreement is just at the edge of being

 7    successful.  Several steps must still occur, as you know,

 8    before that success is finally realized.  It is imperative that

 9    these steps be handled delicately at this critical juncture.

10    Precipitous action now could jeopardize the settlements and

11    generate more litigation.  We believe that everyone concerned

12    should want to avoid that possibility at all costs, Argentina

13    particularly.  That goal is consistent with preserving this

14    remarkable achievement, and it is consistent with what the

15    Second Circuit sent us here to do.

16           With respect, we are concerned that entering the order

17    suggested in the Court's indicative ruling could well delay the

18    resolution of this case and might even put the settlement in

19    jeopardy.  Argentina seems today even to be suggesting an

20    appeal.  But as of yesterday morning, approximately 15 percent

21    of the plaintiffs in this litigation have not settled with

22    Argentina.  If this Court enters an order that would vacate

23    their injunctions immediately, they are almost certain to

24    appeal from that order.  If there are appeals, Argentina has

25    indicated that it might well delay any legislative action in

22

G31dnmla

1   Argentina to vacate the Lock Law.  Appeals could last for

2   several months during which time everyone's settlement would be

3   in limbo and in jeopardy.

4           The far better result would be to postpone any order

5   vacating the injunctions so that these remaining plaintiffs can

6   have an opportunity to negotiate with Argentina.  The

7   negotiations have moved quickly for those who are permitted to

8   negotiate.  Argentina was able to negotiate settlements of 85

9   percent of the claims in 30 days, but many of those remaining

10  plaintiffs have not yet had an opportunity to negotiate with

11  Argentina either in person or through the Special Master.  We

12  submit that with another 30 days Argentina could surely reach a

13  resolution with the remaining plaintiffs.

14          We believe, as this Court has repeatedly reminded us,

15  that settlement is the only way to resolve this litigation, and

16  negotiation is vastly more constructive than litigation, at

17  least now that Argentina is negotiating.  Further negotiation

18  is the quickest route to the exit.  An order vacating the

19  injunctions immediately is only a route, almost certainly, to

20  the Second Circuit.  That should be the last thing that any of

21  us wants, including Argentina.

22          So we ask that the Court allow just 30 additional days

23  for orderly negotiations with the remaining plaintiffs to

24  continue before it takes any action to vacate the injunction.

25  It is a small request given the stake, the time that's already

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G31dnmla

1    been invested in this case, and the great risk that if

2    precipitous action is taken.

3           Thank you, your Honor.

4           THE CLERK:  Thank you, Mr. Olson.

5           Mr. Edward Friedman, please.

6           MR. FRIEDMAN:  Good afternoon, your Honor.  May it

7    please the Court:

8           I am Edward Friedman, with the firm of Friedman Kaplan

9    Seiler & Adelman.  We represent plaintiffs Aurelius and Blue

10   Angel.  My clients are part of the group representing

11   65 percent of the plaintiffs with injunctions who have entered

12   into an agreement in principle with Argentina yesterday along

13   with NML and Olifant.

14          We very much hope, your Honor, to see this settlement

15   consummated and performed.  The reason why I am standing now in

16   opposition to the motion of Argentina for entry of an order is

17   that, first of all, we do agree 100 percent with what Mr. Olson

18   said on behalf of NML, that it is important for the Court not

19   to act precipitously and to allow at least 30 days for

20   negotiations to continue, to allow the Congress and Argentina

21   to act, and then there will be time for the Court to consider

22   the landscape and enter an order.

23          Whenever the Court enters an order based on its

24   indicative ruling, we believe there is one very important

25   clarification that is essential, and I did discuss this with

G31dnmla

1    counsel for Argentina a couple of days ago.  I was surprised

2    that counsel for Argentina did not agree with my suggested

3    clarification, and I would like to explain to the Court what

4    that is and why we think it is essential in keeping with what

5    your Honor ruled in the indicative ruling.

6         If I may, your Honor, I would like to approach the

7    bench and hand to the Court the last page of the indicative

8    ruling with your Honor's conclusion and also the form of order

9    that we have proposed and the form of order proposed by the

10   Republic.  And I have opened the two forms of order to the

11   relevant page.

12        (Pause)

13        I will explain in a moment, your Honor, exactly what

14   is the clarification we are requesting, which is in the

15   plaintiffs' proposed form of order, starting with "for the

16   avoidance of doubt."  If I may, I would like to start with what

17   your Honor has already said in the indicative ruling.

18        As your Honor knows and can see, in the conclusion to

19   the Court's indicative ruling, the Court stated that it would

20   vacate the injunctions upon the occurrence of two conditions.

21   The second condition says that for plaintiffs that enter into

22   agreements in principle with the Republic on or before

23   February 29, 2016 -- and I'm going to pause because plaintiffs

24   NML, Aurelius, Blue Angel and Olifant are plaintiffs who have

25   entered into an agreement in principle on or before

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

25

G31dnmla

1    February 29, 2016 -- what the Court says for the injunctions to

2    be vacated is that the Republic must make full payment in

3    accordance with the specific terms of each such agreement.  I

4    believe, your Honor, that the Court's ruling is very clear.

5    There must be full payment in accordance with the specific

6    terms of each agreement or else the injunctions will not be

7    vacated.

8            The agreement that Aurelius and the other plaintiffs

9    entered into with Argentina spells out the specific terms for

10   payment and other terms and conditions.  Under our agreement in

11   principle, if Argentina fails to make full payment by April 14,

12   Aurelius and the other plaintiffs have the right in the

13   agreement to terminate.  We hope payment is made.  We entered

14   into the settlement agreement because we hope it will be

15   performed.  But, obviously, our rights are very important to us

16   if Argentina does not make full payment in accordance with the

17   terms and if we, therefore, in accordance with the terms,

18   terminate the agreement.

19           When I spoke to counsel for Argentina, the

20   clarification that I suggested, which is now before your Honor,

21   says that for the avoidance of doubt, if plaintiffs do not

22   receive full payment in accordance with the specific terms of

23   the agreement in principle for any reason, including if

24   plaintiffs terminate the agreement in principle on or after

25   April 14, 2016, in accordance with the terms of the agreement

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

G31dnmla

1    in principle, the injunction shall remain in place.  We believe

2    that clarification is exactly consistent with what your Honor

3    stated in the indicative ruling, namely, Argentina must make

4    full payment in accordance with the specific terms of the

5    agreement or else the injunctions are not vacated.

6         The position now being taken by Argentina, your Honor,

7    is that if my clients terminate the agreement in accordance

8    with the terms and are not paid, here's the situation they are

9    in according to Argentina, which we think is totally contrary

10   to your Honor's ruling.  My clients would be in a situation

11   where they are not paid, Argentina says, but if Argentina goes

12   forward and pays other plaintiffs who have settlement

13   agreements, then the injunctions in favor of NML, Aurelius,

14   Blue Angel and Olifant, 65 percent of the plaintiff group,

15   those injunctions will be terminated, vacated.

16        The reason why we submit that is ridiculous,

17   inequitable and contrary to your Honor's indicative ruling is

18   that if you put aside the plaintiffs I am now speaking about,

19   the plaintiffs who represent 65 percent of the group, then we

20   have, as your Honor heard earlier, 15 percent of the plaintiffs

21   don't have agreements --

22        THE CLERK:  Time, Mr. Friedman.

23        MR. FRIEDMAN:  I will just finish these two sentences.

24        -- Argentina says, well, we've settled with

25   20 percent, it's actually 10 percent, your Honor, because

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G31dnm1a

1   10 percent are being paid in full, which was not offered to our

2   client.  So the absurdity is if Argentina honors settlement

3   agreements with 10 percent of the plaintiffs, my clients'

4   injunctions are vacated.  That is not what the indicative

5   ruling says.

6           Thank you, your Honor.

7           THE CLERK:  Thank you, Mr. Friedman.  Thank you, very

8   much.

9           Mr. Michael Spencer.

10          MR.  SPENCER:  Good afternoon, your Honor.  Michael

11  Spencer from Milberg LLP.  I represent the group that we've

12  called the small bondholders.  These are bondholders in 11

13  actions with the caption starting with Varela v. the Republic

14  of Argentina.

15          We are the largest group, your Honor, of the

16  15 percent of the bondholders who have not yet settled.  So we

17  are here today, your Honor, with a very specific and urgent

18  perspective, to ask your Honor very strongly, please, do not

19  vacate the injunctions until we have had the opportunity to

20  negotiate with Argentina, because we want to settle as well.

21  We haven't been able to negotiate toward a settlement yet.

22  There is no reason to rush entry of your Honor's indicative

23  order, and we would agree strongly with Mr. Olson's request

24  that the Court stay its hand for 30 days to allow us to

25  negotiate in accordance with the status quo that is presently

G31dnm1a

1    in existence.  We believe that comports with legality and with

2    the equities of the situation and will not throw us into the

3    Second Circuit, where everything that this Court has tried to

4    create so far might be jeopardized.

5         I have three things specifically to say to your Honor.

6    I would like to describe who we are.  I would like to describe

7    why we have not settled, and I'd like to elaborate briefly on

8    exactly what I think the Court should do here today.

9         Your Honor, the claims that my group represents are

10   about $800 million.  There are a number of other lawyers in the

11   courtroom today who also represent individual and small fund

12   bondholders who comprise the 15 percent who have not yet

13   settled.  Most of us have been litigating since shortly after

14   the default in 2001.  Most of these people, your Honor,

15   distinct from the hedge funds you just heard from, are

16   individuals or small funds.  Most of them bought, your Honor,

17   predefault for the full face value of the bonds, and,

18   therefore, your Honor, they have a very different perspective

19   on this situation.

20        Most of them bought in small amounts.  I get calls

21   every week from a $10,000 bondholder in Argentina who is very

22   nervous about this situation.  Many of my clients are from

23   Argentina.  Many of them bought the bonds because they were

24   beseeched for patriotic reasons by their country to make the

25   purchases.  And, your Honor, they have been hanging on ever

G31dnmla

1     since in about 60 actions for my clients and others for other

2     lawyers that have been brought in this Court.

3            So, your Honor, I suggest we are the people that your

4     Honor has been trying to protect over the years so that we

5     could get to the point where the cases could be settled, and I

6     know your Honor's goal has been that and I know the Special

7     Master's goal has been that.  So we were very happy when the

8     Macri administration announced late last year that it was open

9     to settlement.  We share the Court's view on that.

10           So my second point, your Honor:  Why haven't we

11    settled?  And the short answer is, your Honor, due to the

12    circumstances of the negotiations, we have not yet had an

13    opportunity to negotiate with Argentina.  As a practical

14    matter, your Honor, I think the main reason for that is that

15    the decision was made to allow the largest bondholders to go

16    first, and that may have been a reasonable approach to this,

17    your Honor.  The smaller bondholders tried to get involved in

18    that process but we were told to wait our turn, which we have.

19           So, your Honor, we haven't been intransigent.  There

20    is not an impasse.  We are not greedy.  We just haven't had a

21    chance to negotiate.

22           And I'm here, your Honor, to ask you, please, to give

23    us that chance.  With the pari passu injunctions that we have

24    invested so much effort over the past two years to achieve,

25    leave the status quo for a month to give us a fair chance to

30

G31dnmla

1    negotiate.

2            We were astonished when Argentina on

3    February 11th asked your Honor to vacate the injunctions simply

4    because it was premature to do so, your Honor.  Since we

5    haven't negotiated and since Argentina is very aware that we

6    have not had the chance to negotiate yet, it is unfair to

7    change the status quo until we have been allowed to bask in the

8    sunlight that the Macri administration says it has brought to

9    this situation.  So far, we have not.  So far, we have not been

10   able to negotiate substantively with Mr. Caputo and his team.

11           Your Honor, we will negotiate with them in New York.

12   We will negotiate with them in Buenos Aires.  We will do it

13   with the Special Master or in any other way that seems

14   appropriate, but we need the opportunity to sit down with them.

15   And it is unfair and overly hasty, I submit, your Honor, to

16   change the present situation until we have been given that fair

17   opportunity to negotiate.

18           So my proposal, your Honor, is the same as the one

19   that Mr. Olson made, even though I didn't know he was going to

20   say what he said until he was at the podium here.  My

21   rhetorical question is:  What's the rush, your Honor?  Please

22   stay your hand for a month, allow us to negotiate with

23   Argentina, and I believe, your Honor, that we will be able to

24   move the 85 percent that has currently been achieved up to

25   close to or at 100 percent.

G31dnmla

```
1              Your Honor, if the indicative ruling is entered as an
2       order, I am quite sure that I and the other lawyers
3       representing the 15 percent who have not settled --
4              THE CLERK:  Time, Mr. Spencer.
5              MR.  SPENCER:  -- will have no choice but to appeal to
6       the Second Circuit, and as Mr. Olson and Mr. Friedman said,
7       that could ruin the delicate balance that favors negotiation
8       that we presently have.
9              Thank you.
10             THE CLERK:  Thank you, Mr. Spencer.
11             Mr. Anthony Costantini.
12             MR. COSTANTINI:  Good afternoon, your Honor.  My name
13      is Tony Costantini of the Duane Morris firm.  I represent a
14      real mix of plaintiffs.  I have 115 individual bondholders in
15      one action, the Adami action.  I also represent 10 different
16      institutional investors.  So I've seen both
17      judgment/nonjudgment, settlement/nonsettlement, and I want to
18      contribute some thoughts.
19             The first thought that I have -- we will get it over
20      easily enough -- is that I agree entirely with what Mr. Olson
21      suggested in terms of the 30 days over.  And as far as my
22      individual bondholder clients are concerned, I don't think I
23      could be as eloquent as Mr. Spencer just was before me, so I
24      will cut those parts of the argument.
25             I want to talk instead about two things.  One is
```

G31dnmla

 1   changed circumstances.  We hear much from Mr. Paskin on how

 2   much circumstances have changed.  You have written in the

 3   indicative ruling that circumstances have changed.  But I think

 4   there is a very important circumstance that has not changed.

 5   Your Honor has ruled twice, and the Second Circuit has affirmed

 6   twice, that the pari passu clause has been violated numerous

 7   times by Argentina, that resulted in the payment of billions of

 8   dollars to the exchange bondholders who have -- or who are

 9   opposing today.  That is the first thing.

10          And you have ruled twice, and the Second Circuit has

11   affirmed twice, that there is no money damages that can be

12   pursued because of the prior intransigence, and that

13   intransigence has not been removed.  My clients only have an

14   equitable remedy, and to take that equitable remedy away for a

15   clear violation of the law that you've twice recognized is

16   inequitable, and we would oppose lifting the injunction

17   entirely.

18          I understand the concerns that many people have

19   expressed, and that you yourself expressed, in the indicative

20   opinion with regard to lifting the injunction, but I think if

21   you were inclined to do so, even though we would oppose it, I

22   think there are certain things that you need to focus on.  One

23   is the conditions precedent.  The first one, that Argentina

24   remove certain legislative impediments, I don't think you can

25   do that automatically, at least not to achieve confidence among

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G31dnmla

1    the people otherwise.  There is going to be a fight in the

2    Argentine legislature as to what gets passed in response to

3    that part of your condition.  And you should maintain the right

4    to look at, review the Argentine legislative acts to see if

5    they truly do remove the impediments, particularly the

6    impediment with respect to collecting foreign money judgments

7    in Argentina, which is of great concern.

8            I also think, with respect to the second condition,

9    that that also should be reviewed for many of the reasons that

10    Mr. Friedman has so eloquently stated.  I think, also, even

11    though I agree with the 30 days, there is no reason not to

12    extend the time to accept their offer from February 29th,

13    yesterday, for another three- or four-week period.

14            It is obvious from the submissions that have been made

15    from everybody that assuming we will, on everyone's part, that

16    there is confusion, lack of clarity, misunderstanding and

17    miscomprehension, and I don't say this in any way to denigrate

18    the work that has been done by the Special Master, which in my

19    view has been extraordinary, and you are to be complemented for

20    appointing Mr. Pollack as Special Master, but just yesterday I

21    had a client call at 10 o'clock in the morning and say, Tony,

22    you've been great but I'm accepting Argentina's settlement

23    offer.  10 o'clock at night the same client called me and said

24    I accepted their terms and they rejected it; there are

25    additional conditions they're imposing.

34

G31dnmla

1          Now, what are the merits or demerits of that

2     particular position?  And I don't know enough to say it.  I

3     think the extra time, both in terms of the protection for the

4     three weeks or the 30 days suggested by Mr. Olson would iron

5     out those kind of differences and get us closer.  I also think

6     your Honor should consider if there is an alternative to

7     lifting the entire order.  Maybe it can be lifted in stages.

8          I mean, we are certainly very, very sympathetic to the

9     concerns that are expressed by the other settling defendants.

10     They've lasted -- they've held out for as long as our clients

11     have, and we understand that, but we think that there are other

12     holders of external indebtedness who don't need to be treated

13     the same.

14          And the final thing I would suggest is that your Honor

15     is under an automatic stay of two weeks if you decide to lift

16     the order.  There is no reason that you can't grant a stay

17     until the Second Circuit appeal is heard.  And for my clients,

18     we are willing to agree right here and now to an expedited

19     briefing schedule in the Second Circuit so that this could be

20     accomplished as quickly as possible.

21          Thank you very much for your attention, your Honor.

22          THE CLERK:  Thank you, Mr. Costantini.

23          Mr. Richard Levine.

24          MR. LEVINE:  May it please the Court:

25          I'm Richard Levine, from Weil, Gotshal, for plaintiffs

G31dnmla

1    Attestor, Bybrook, Trinity, White Hawthorne and Yellow Crane,

2    "me too" plaintiffs.  We represent a subset of the client

3    Mr. Costantini represents.

4         Let me say that I concur with almost all the arguments

5    we've heard this morning from Mr. Olson and Mr. Friedman and

6    Mr. Spencer and Mr. Costantini.  My clients have not had the

7    opportunity to benefit from the changed circumstances that your

8    Honor has described in the indicative order in that we have not

9    yet had the opportunity to substantively engage with Argentina

10   or through the Special Master.  We think that it would be

11   totally inequitable to pull the wool -- the rug out from under

12   us before we have had that opportunity.  My clients are

13   slightly in a unique position in that they felt compelled

14   because of the February 29th deadline to be assured of being

15   treated fairly and fully with other settling plaintiffs to

16   tender settlement agreements yesterday.  But as Mr. Costantini

17   indicated, there is confusion.  There has been some pushback

18   from Argentina with respect to some of them.  They don't know

19   exactly what Argentina is agreeing to.  They think that all of

20   these things can be resolved if they have a chance to

21   negotiate.  And they really think that the proposal to extend

22   the injunctive relief for another 30 days, as proposed by

23   Mr. Olson, the proposal to push forward the

24   February 29th deadline by three weeks, as articulated by

25   Mr. Costantini, are the only ways they can be treated fairly.

G31dnmla

1          There are three main points, your Honor, that I want
2     to briefly cover and otherwise we will rely on the arguments
3     set forth in our brief.
4          First, there is the issue of different treatment,
5     different dollar payments for plaintiffs with injunctive
6     orders, those who have and those who don't have injunctive
7     orders.  Some of my clients have injunctive orders.  Some of
8     them have made motions to your Honor for a pari passu
9     injunction, which the Court has not yet gotten to.  And of
10    course, there are other bondholders out there who have the same
11    contractual rights who have not sought an injunction.
12         We believe that under the pari passu provision it is
13    completely unfair for Argentina to basically force on players,
14    on investors, the settlement which differentiates based on
15    whether or not they have an injunction, whether or not they
16    have moved for an injunction, which is still pending before
17    your Honor, or whether or not other bondholders have not moved.
18    It seems to us that's something which should be resolved
19    through negotiation, but, if not, it is something we think your
20    Honor needs to address.  At a minimum, we ask that your Honor
21    enter the injunctive relief that is in pending motions with
22    retroactive effect so at least those who timely filed motions
23    are treated similarly with the plaintiffs who have received
24    injunctions from your Honor.  We think that's required by the
25    pari passu provision and your Honor's and the Second Circuit's

37

G31dnmla

1    prior rulings therefor.

2            A second issue we have, your Honor, is that there

3    seems to be differing treatment by Argentina of the terms of

4    this unilateral order.  That can't be.  If it makes a

5    unilateral offer and it is accepted, it should be determined

6    and applied by Argentina consistently.  So, for example,

7    Argentina in yesterday's submissions indicated it had

8    settlements with VR, Procella, and Red Pines.  Each of these

9    plaintiffs have claims that extend back many years, bonds they

10   bought many years ago, and yet they have been accepted into the

11   settlement.  Some of my clients have received questions or

12   comments on their settlement acceptance forms suggesting that

13   Argentina is questioning whether some of their older bonds

14   should be able to participate.  That's not fair.  If they make

15   a unilateral offer and it is accepted, it must be accepted as

16   to all similarly-situated plaintiffs, and we ask that your

17   Honor make clear that is something they are required to do.

18           Finally, just to reiterate on the point made by

19   Mr. Costantini and Mr. Spencer.  Yesterday's deadline really

20   was unfair.  As I indicated, my clients felt that -- my clients

21   are sophisticated investors.  They are big boys.  They still

22   felt they had no choice, because of the February 29th deadline

23   built into the offer, to tender settlement agreements yesterday

24   without ever having had the opportunity that 85 percent of the

25   bondholders had to engage with the Special Master, to engage

G31dnmla

1    with Argentina.  That's just not fair.

2           Yesterday's deadline should be extended.  Argentina

3    should be ordered to engage with all bondholders who want to

4    settle, who want to engage, and none of the injunctions, which

5    are based on pure contractual rights, as your Honor has

6    repeatedly found, should be lifted until at least there is that

7    opportunity to engage.

8           We thank you, your Honor.  And we just say that

9    Argentina should not be able to rush this thing through but,

10   rather, your Honor should express the law to them to engage in

11   good faith negotiations with all the bondholders they have not

12   yet negotiated with.  We think that's the minimum that equity

13   requires.

14          Thank you, your Honor.

15          THE CLERK:  Thank you, Mr. Levine.

16          Attorney Anu Bhargava.

17          MS. BHARGAVA:  May it please the Court:

18          Good afternoon, your Honor.  Anu Bhargava, from

19   Gleason & Koatz.  I represent individual and "me too"

20   bondholders Fazzolari and Julio Roberto Perez.

21          I join and adopt Mr. Olson's argument as our own and

22   on behalf of my clients.

23          Thank you so much, your Honor.

24          THE CLERK:  Thank you very much, Ms. Bhargava.

25          The next speaker will be Ms. Scullion, Ms. Jennifer

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G31dnmla

1   Scullion.  Thank you.

2              MS. SCULLION:  Good afternoon.  Jennifer Scullion.

3   Your Honor, I represent eight classes of primarily very small

4   noteholders.

5              And let me just begin by saying although we oppose the

6   motion to vacate, if your Honor is still inclined to vacate, we

7   would adopt Mr. Olson's suggestion --

8              THE COURT:  Can you start again and speak just a

9   little slower?

10             MS. SCULLION:  Sure.

11             THE COURT:  I have a little trouble understanding you.

12             MS. SCULLION:  Absolutely.

13             Although we oppose, if your Honor does continue to

14  adopt the indicative ruling, we would ask that you adopt

15  Mr. Olson's suggestion of a 30-day period for substantive --

16  substantive -- negotiations with those who have not yet had the

17  opportunity to have those negotiations.  Your Honor, those

18  people who have not had an opportunity include my clients.  We

19  have tried repeatedly to have substantive negotiations.  We

20  have been rebuffed at every turn.  So if there is going to be a

21  substantive negotiation, if your Honor is going to order that,

22  I'd request that our classes be included in those substantive

23  negotiations.

24             Your Honor, I just want to address really two points.

25  One is this question of change of circumstances.  As I think

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G31dnmla

1    others have said, from my clients' perspective, there has been

2    no change of circumstances.  You ask yourself, what were the

3    circumstances in 2005 and 2010?  And they were that Argentina

4    decided unilaterally to make certain offers on its own terms

5    and on a take-it-or-leave-it basis.  If you didn't take that

6    offer, you would not otherwise be paid; that was it.

7            The same circumstance exists today.  The only thing --

8    the only thing Argentina has said that my clients are being

9    offered at this time is their unilateral standard offer, which

10   would impose a huge haircut on these classes who have held, by

11   definition, since 2004 at least continuously; frankly, most of

12   them have held much longer than that and bought before the

13   defaults.

14           And if we do not accept that offer, what is our

15   choice?  Our choice is to continue to litigate to judgment, but

16   that has not changed.  We still do not have Argentina agreeing

17   that if judgments are entered, that they will be honored, and

18   that was a factor that your Honor looked at and the Second

19   Circuit looked at in determining that injunctive relief was

20   necessary to protect rights.  So, again, there have been no

21   change of circumstances from our clients' perspective.

22           The second point is a question of public interest, and

23   there is a line of special public interest.  We agree that

24   there is a public interest in fostering settlement discussions,

25   but that means actual substantive negotiations.  It does not

G31dnmla

1    mean here's an offer and that constitutes a settlement

2    negotiation.  Enough has been said about that already.

3          But the other public interest here, I do submit, is in

4    the rule of law, and that's a public interest that serves not

5    only investors like my clients, who can then have some

6    assurance that the contractual rights that they've paid for are

7    going to be honored, but it also serves the interests of

8    Argentina and other sovereign debt issuers.  If there is no

9    guarantee that the rule of law will be honored, then they won't

10   be able to issue debt at reasonable rates in the markets.

11         And what is happening right now, your Honor, is we

12   still have an undisputed pari passu violation and intended

13   further violations.  There is really no dispute about that.

14   The question is remedy.  And what's here right now is there

15   should be no remedy for a violation of your rights.  If there

16   is no remedy, then there is no right and the rule of law is not

17   being upheld.

18         Your Honor, we respectfully request that you deny the

19   motion to vacate or adopt Mr. Olson's suggestion, in the

20   alternative, provided that we are included in those substantive

21   negotiations.

22         Thank you very much.

23         THE CLERK:  Thank you, Ms. Scullion.

24         Mr. Willett.

25         MR. WILLETT:  Good afternoon, your Honor.  I'm Sabin

G31dnmla

1    Willett of Morgan Lewis.  We represent the plaintiffs in the

2    Red Pines and Trinity cases.  Those are Argentine pari passu

3    bonds that are governed by German and English law, and we are

4    intervenors in this proceeding just for purposes of addressing

5    the injunction.

6              I wanted to pick up on a point that creates a

7    technical problem for Mr. Paskin's order that you've heard a

8    lot about this afternoon, the people who tell you they have not

9    been able to negotiate with Argentina yet, and some of my

10    clients are in that same position.  I should say, all 12 of

11    them have now settled -- all 12.  But it's important that you

12    understand how did a person settle if he couldn't engage with

13    Argentina.  And here's how.

14              Argentina published an offer on its website.  The only

15    way you could settle, and be afforded the protections of the

16    indicative ruling, was to accept that offer without change by

17    February 29th.  And that's what 11 of our clients did.  One of

18    our clients did succeed in negotiating with Argentina and

19    reaching its own agreement, but all the rest had to simply take

20    Argentina's terms.  Fair enough; it's a contract.

21              But here's the problem with Mr. Paskin's order.  The

22    way you accepted that contract was you sent in a form listing

23    your bonds.  The form itself provides that those bonds, which

24    are prescribed by the terms of the contract itself, are outside

25    the treatment of the settlement.  If you were to enter

G31dnmla

1    Mr. Paskin's order, then Argentina would be able to

2    unilaterally decide which bonds are in and which bonds are out

3    of the settlement.  If, on the other hand, your Honor takes up

4    Mr. Olson's suggestion and just waits 30 days, I expect any

5    problems like that could be resolved.

6         There is another way to solve this problem if you're

7    inclined to enter an order today and that picks up on a point

8    that you heard from Mr. Friedman.  I have a very brief redline

9    of Argentina's order.  If I could approach the bench, I could

10   describe for you this modest change that would be necessary?

11        And I should say, I gave a copy of this to Mr. Paskin

12   and Mr. Cohen before the hearing.

13        (Pause)

14        THE CLERK:  Thank you.

15        MR. WILLETT:  Your Honor, I turned it to page 6, the

16   last page of the order.  And if you edit it simply to say that

17   the injunctions will be vacated upon your finding that the

18   conditions have been met, then all of the concerns that I think

19   you've heard from people on our side, or at least many of them,

20   would be addressed, and, I submit, Mr. Paskin's concerns will

21   be addressed, too.

22        He told us that he was worried that there would be

23   uncertainty if you don't rule today.  Argentina would be -- its

24   parliament would be uncertain how to proceed; so would the

25   markets, he said.  But they're going to be more uncertain if

G31dnmla

1    you enter an order today which automatically kicks in when

2    things are deemed to occur.  No one will know what that means.

3         Whereas if it's up to your Honor, on a short-order of

4    notice brought by Mr. Paskin, who says I have now hit the

5    conditions, we have paid the people we settled with and we have

6    repealed the necessary laws, on very short notice your Honor

7    will be able to then vacate the injunctions.  If that doesn't

8    happen, we're going to have the risk that all these people you

9    have heard about who haven't been able to engage, haven't

10   physically met Mr. Pollack, for example, they're going to be

11   stuck with Argentina's unilateral determination of whether a

12   specific bond is prescribed by the terms of its indenture or

13   trustee, as opposed to bringing that issue, if there is to be

14   such an issue, before your Honor.

15        Thank you very much, your Honor.

16        THE CLERK:  Thank you, Mr. Willett.

17        Ms. Sleater.

18        MS. SLEATER:  Thank you, your Honor, for the

19   opportunity to be heard today.  I represent a group of small

20   bondholders who purchased their bonds in the 1990s.  They are

21   real people.  The largest holder is a 90-year-old man who is

22   disabled and hopes to use the interest from these bonds to

23   support himself.

24        We concur in all of the arguments that have been made

25   in opposition to entering the indicative ruling today.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

45

G31dnmla

```
 1              Our -- my clients don't have an injunction.  They
 2       filed an action in 2006 and have obtained judgment in 2007.
 3       They have been waiting this entire time for Argentina to at
 4       least speak to us.  We have received no word --
 5              THE COURT:  I'll tell you, slow down a little bit.
 6              MS. SLEATER:  OK.  We have received no word at all
 7       from anybody on Argentina's side.  We stand ready, willing and
 8       able to enter into any kind of settlement negotiations.  We
 9       have no intention to blow apart any of the current settlements
10       that are out there.  All we ask is for a reasonable amount of
11       time to engage in an opportunity to have these negotiations.
12              The Court has recognized the language in the bonds
13       holding that all bondholders, regardless of size, should
14       receive equal treatment, and this language is what caused your
15       Honor to enter these injunctions in the first place.  So we
16       respectfully ask just that the Court grant a reasonable amount
17       of time for all bondholders to engage in negotiations of
18       settlement with Argentina.
19              Thank you.
20              THE CLERK:  Thank you very much, Ms. Sleater.
21              Mr. Schaffer.
22              MR. SCHAFFER:  Your Honor, Eric Schaffer, from
23       ReedSmith.  I'm here on behalf of the Bank of New York Mellon,
24       as Indenture Trustee.
25              Your Honor, our issues are purely administrative.
```

G31dnmla

1   First, if the Court lifts the injunction, we will need to

2   understand when, how, and what distributions are to be made.

3   We will need guidance with regard to the record date for

4   payments and confirmation of amounts to be paid to the exchange

5   holders.  Second, your Honor, we will want to ensure that the

6   Trustees' rights and protections under the indenture and under

7   orders of this Court are not impaired.

8          Your Honor, I believe that a supplemental order will

9   be necessary to deal with all of these mechanical issues, and,

10  your Honor, we have been working with counsel for the Republic

11  and we have received assurance with regard to all of the points

12  we've raised.  So, we are hopeful of being able to address all

13  of that in a supplemental mechanical order, if you will.

14         Thank you, your Honor.

15         THE CLERK:  Thank you, Mr. Schaffer.

16         Counsel now, the Court will afford time for rebuttal

17  of two minutes, whoever wants to rebut.  And I will begin by

18  starting over again in the order in which we began.

19         Mr. Mukasey, do you care to offer two minutes of

20  rebuttal?

21         MR. MUKASEY:  OK.  Two minutes?

22         THE CLERK:  Yes, sir.  And you don't have to offer

23  rebuttal if you don't care to.

24         MR. MUKASEY:  I care to.

25         With respect to Mr. Friedman's point about that if

47

G31dnmla

1    only 10 percent settle, there won't be any injunction in place

2    and that wasn't contemplated by the indicative ruling, that was

3    precisely what was contemplated by the indicative ruling

4    because at the time the indicative ruling was issued, we didn't

5    know what percentage of people would settle.  The point is the

6    injunctions get lifted and people are free then to negotiate,

7    if they wish.  What was not contemplated was that people would

8    be able to stand in the way of settlements that have already

9    been agreed to.

10            With respect to the claim that because there is an

11    appeal, an inequitable injunction should stay in place, there

12    is no basis for doing that.  The prospect of an appeal which is

13    in the normal course should not be an excuse for keeping an

14    inequitable injunction in place.

15            Also, the terms of the agreement -- of the settlement

16    that has been reached by NML say essentially that if they don't

17    get paid by April 14th, it's not that the agreement is enforced

18    according to its terms, which is what your Honor put in your

19    indicative order, but, rather, that the agreement dissolves; it

20    is as if it didn't exist.  That is not what your Honor

21    contemplated in saying that the agreement was to be performed

22    according to its terms, not if its terms call for

23    self-destruction, which is what the terms of the NML order call

24    for.

25            So for all of the above reasons, I request that the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

48

G31dnmla

```
 1    injunctions be lifted and that the parties be permitted to
 2    proceed with this settlement.
 3            Thank you.
 4            THE CLERK:  Thank you, Mr. Mukasey.
 5            Mr. Shuster.
 6            MR. SHUSTER:  Thank you, your Honor.  I'll be brief.
 7            The way I understand what the lead plaintiffs are
 8    saying -- that is, NML, Aurelius, Blue Angel and Olifant --
 9    they are saying they have the right to walk away from their
10    agreement if they're not paid by April 14.  Presumably, they
11    secured that right for themselves, and they say if they're not
12    paid by April 14, they may terminate, and that could leave them
13    in a vulnerable position if Argentina pays other parties after
14    April 14.  And there's one simple answer to that problem for
15    them.  Don't terminate.  Don't terminate your agreement on
16    April 14.  Leave it in place, the same way as every other
17    agreement is in place, and when everybody else gets paid,
18    you'll get paid.  So that is an illusory problem and certainly
19    one of their own making.
20            The second point is by securing themselves that right,
21    they have underscored the urgency of untying Argentina's hands
22    in its entirety as soon as possible, because they have left
23    Argentina only six weeks to comply with that payment term.  And
24    if indeed they have a right to terminate and take 65 percent of
25    the settlement away, that's all the more reason why Argentina
```

49

G31dnmla

1   needs to be freed up as soon as possible to get on with the

2   business of repealing the necessary legislation, accessing the

3   capital markets, and arranging payments for all settling

4   parties.

5           And, finally, as to the request for a further 30-day

6   stay, I will note only that the Second Circuit in its mandate

7   back to this Court was express that there would be a 14-day

8   stay by agreement of all parties, and that included the parties

9   who are now asking for a 30-day stay.

10          Thank you, your Honor.

11          THE CLERK:  Thank you, Mr. Shuster.

12          Mr. Paskin.

13          MR. PASKIN:  Thank you, your Honor.  Mr. Mukasey and

14  Mr. Shuster have made some of these points.  I'll be very

15  brief.

16          The issue that NML and Aurelius have raised with

17  respect to the right to terminate their agreement is, as

18  Mr. Shuster said, an illusory one.  If they choose to terminate

19  their agreement because the financing can't be raised by

20  April 14th and because payment gets delayed beyond that date,

21  they can either walk away from their deal or they can stick

22  with it.  If they walk away from their deal, they are no longer

23  a settling party, so the order and the relief and the

24  conditions contemplated in the indicative ruling no longer

25  include them in the group of people who are entitled to payment

50

G31dnmla

1    prior to the relief from the injunctions.  If they choose to

2    stay in and wait for their payment, that's fine.  And they can

3    make that choice whenever they want.

4          If they want to receive their $4.6 billion in

5    settlement proceeds, I would submit that they will likely wait.

6    If they have buyer's remorse and they have decided that those

7    terms are not good enough for them, then I suppose they'll

8    choose to walk away.

9          But what should not be allowed to happen by their

10   choice to walk away from this settlement is to blow up the

11   ability of every other party to settle.  Your Honor should not

12   entertain that request.  They should not be allowed to impose

13   conditions in the relief sought here that will allow them to

14   express a veto right over the injunctions being lifted.

15         If they wish, after the injunctions are lifted, to

16   pursue their contract remedies, they can do so.  That has been

17   apparently an unsuccessful avenue for them for many years.  We

18   would think that in reaching this deal they agreed to it

19   because they actually want to get paid.  So they should behave

20   that way, and they should not try to interfere with the relief

21   that Argentina and others are now seeking to allow those

22   payments to happen --

23         THE CLERK:  Time.

24         MR. PASKIN:  -- to allow these settlements to go

25   through, and to allow this dispute to be put to rest.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G31dnmla

1           Thank you, your Honor.

2           THE CLERK:  Thank you, Mr. Paskin.

3           Mr. Clark.

4           MR. CLARK:  Very briefly, your Honor.

5           Your Honor heard from a number of small parties here

6   who are asking your Honor to give more time so that they can

7   individually negotiate with Argentina.  There are thousands of

8   claimants, your Honor.  There is one Special Master.  He's

9   wired tirelessly.  But the idea that a claimant with $10,000

10  worth of bonds is going to sit down individually with the

11  Republic of Argentina and the Special Master to work out a

12  tailored deal for that $10,000 worth of bonds while my clients

13  wait for their $3.1 billion in interest that hasn't been paid

14  for years is, I think, the definition of inequity.

15          Your Honor, it's been a fair process.  It's been a

16  transformative process.  The Special Master has brought a

17  settlement to the table that all parties could have adopted,

18  should have adopted, and can still maybe adopt.  We should no

19  longer be held hostage by small parties who want a better deal

20  than everyone else got.

21          Thank you, your Honor.

22          THE CLERK:  Thank you, Mr. Clark.

23          Messrs. Cohen and Olson, one minute apiece, or two

24  minutes.

25          Mr. Olson.  Thank you.

52

G31dnmla

1          MR. OLSON:  Thank you.  Thank you, your Honor.  May it

2    please the Court:

3          We're only making one point.  Today, is there going to

4    be an immediate application of this order or is it going to be

5    postponed for 30 days to give the remaining parties an

6    opportunity to negotiate with Argentina to get their claims

7    resolved?  We submit, and it's very simple, that if they don't

8    have that opportunity they're likely to appeal.  If they

9    appeal, it's going to delay the entire process considerably,

10   and that puts everything at risk.

11         We all want this settlement to go through.  We want

12   this litigation to be over.  All of us I think in this room

13   hope to see the end and are seeing the light at the end of this

14   tunnel, thanks to the hard work of the Special Master, your

15   Honor, and the parties that have worked for this.

16         What we're suggesting is instead of inviting a

17   virtually automatic appeal by people who have the right to do

18   so -- and this was referred to by the Second Circuit during the

19   argument in that case.  One of the judges said you've got a

20   virtually certain winning appeal.  So we're saying that give

21   peace a chance, so to speak.  Give 30 days to allow these

22   people to bring this to a resolution.  If it doesn't happen,

23   we're no worse off.  But if they are forced to do this, we are

24   worse off and everything is in jeopardy.

25         So that's all we're suggesting.

53

G31dnmla

1                THE CLERK:  Thank you, Mr. Olson.

2                Mr. Friedman.

3                MR. FRIEDMAN:  Your Honor, the indicative ruling

4      issued by this Court makes crystal clear that the goal of the

5      Court is to have the parties enter into settlement agreements

6      and that when the parties do so, if Argentina makes full

7      payment in accordance with the specific terms of those

8      agreements, the injunctions will be vacated.  Aurelius, NML,

9      Blue Angel and Olifant entered into an agreement with Argentina

10     which has specific terms.  We hope there will be full payment

11     in accordance with those terms, but if there is not, there is

12     no legal or equitable basis for vacating the injunctions in

13     favor of 65 percent of the plaintiff group just because a very

14     small minority of other plaintiffs have settled.

15               In effect, Argentina here is trying to change the

16     terms of the agreement entered into with NML, Aurelius,

17     Olifant, and Blue Angel.  Under that agreement the injunctions

18     remain in effect unless these plaintiffs are paid, and at the

19     same time these plaintiffs agree that upon payment the

20     injunctions are vacated.  That's what should happen, your

21     Honor.

22               We hope the settlement will be consummated.  We hope

23     your Honor will not issue an order today, because that will

24     throw everything into delay and appeals.  Thank you.

25               THE CLERK:  Thank you, Mr. Friedman.

54

G31dnmla

1          Mr. Spencer.

2          MR. SPENCER:  Your Honor, I think you have two

3     pathways open to you based on the arguments we've heard.  One

4     of them is if you do issue an order today, litigation will

5     shift to the Second Circuit, and no one can predict the

6     schedule on which that will unfold or the outcome.  And that

7     uncertainty, your Honor, is, unfortunately, almost certain to

8     throw a monkey wrench into the final resolution of these cases.

9     The other pathway, your Honor, is to give us some breathing

10    room so that the negotiation from the remaining 50 percent with

11    Argentina can have a fair chance to conclude.

12          Now, it's obvious from the argument that there is also

13    a dispute between the large settling bondholders, represented

14    by Mr. Cohen and Mr. Friedman, and Argentina.  So that needs

15    some time to get resolved, as well.

16          And I think, your Honor, the benefits of staying your

17    hand for 30 days are obvious compared to the "let's go to the

18    Second Circuit" option, which suits no one's interest here.

19          Thank you.

20          THE CLERK:  Thank you, Mr. Spencer.

21          Mr. Costantini.

22          MR. COSTANTINI:  Your Honor, Tony Costantini again.  I

23    have two brief comments to make.

24          One with respect to the Second Circuit mandate that

25    says that the order, if you read this order, shall be stayed at

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G31dnmla

1    least 14 days.  Your Honor has the power to do otherwise and

2    staying it for longer than 14 days if your Honor thinks it is

3    appropriate.  And the suggestion that was made, that you are

4    obligated by the 14 days, you are in a sense but it must be at

5    least 14 days; but if you decide that it should be longer, that

6    would be appropriate.

7            The second point that I want to respond to is the one

8    made by Mr. Clark on behalf of the exchange bondholders.  The

9    exchange bondholders have received billions of dollars over ten

10   years that were, by definition, illegal and in violation of the

11   pari passu clause.  My clients and a lot of other clients

12   represented in this room have waited 15 years.  I don't have

13   any sympathy for making the exchange bondholders wait a little

14   bit longer to get this all resolved.

15           Thank you very much.

16           THE CLERK:  Thank you, Mr. Costantini.

17           Mr. Levine.

18           MR. LEVINE:  Thank you, your Honor.

19           Following up with what Mr. Costantini was saying about

20   the remand order, the language is "Argentina agrees to a stay

21   of up to two weeks of any district court order formalizing the

22   indicative ruling."  So the fact that Argentina has previously

23   agreed I don't think at all limits your Honor's hand in

24   deciding what to do in terms of a longer stay.

25           The other thing I want to point out is that my clients

56

G31dnmla

 1    feel very disadvantaged and treated unfairly by the process to

 2    date, because as indicated before, they have not been involved

 3    with the Special Master, they have not met with him, they have

 4    not met with Argentina, and yet since the indicative order has

 5    come out they've seen Argentina begin to retrade.  The

 6    settlement offer, for example, said nothing about any

 7    limitation on claims based on purported statute of limitations

 8    defenses, which have never been litigated, never pushed by

 9    Argentina, and yet since the indicative order has come out

10    we've begun to see Argentina making noise about that.  That's

11    totally -- so, effectively, as I had said before, the rug is

12    being pulled out from under my clients, who have the same legal

13    rights and the same interests as the plaintiffs who have had

14    the opportunity to engage with Argentina.

15            So we think that there should be no doubt that the

16    indicative order should be delayed, whether it is done by a

17    stay, whether it is by moving the February 29th date back a

18    month, whether the order -- whether everything -- somehow time

19    is built in and Argentina is required to engage with the

20    bondholders who have been knocking on its door, who have been

21    reaching out to the Special Master and so far have not had an

22    opportunity.  It really is unfair to require them to sit -- to

23    accept the, as they have, the settlement proposal when it's

24    unclear to what extent Argentina means what it says --

25            THE CLERK:  Time, Mr. Levine.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

57

G31dnmla

1          MR. LEVINE:  Thank you, your Honor.  We do need those

2     30 days.

3          THE CLERK:  Thank you.

4          Ms. Bhargava.

5          MS. BHARGAVA:  May it please the Court:

6          Your Honor, we a hundred percent agree with the 30-day

7     extension, and I join in and adopt Mr. Olson's argument on

8     behalf of my client.  Thank you so much.

9          THE CLERK:  Thank you very much.

10         Ms. Scullion.

11         MS. SCULLION:  Nothing further.  Thank you your Honor.

12         THE CLERK:  Nothing further.  Thank you.

13         Mr. Willett.

14         MR. WILLETT:  Your Honor, the arguments of the

15    proponents of the motion come down to two words.  Don't delay,

16    they say.  Now, we agree with Mr. Olson about this, but if you

17    are not persuaded, if you feel you must enter an order today,

18    the suggestion that we made would not be any slower than

19    Mr. Paskin's order.  His order doesn't become effective until

20    the conditions occur, or are deemed to occur.  Ours becomes

21    effective and the proposal becomes effective when you find that

22    they have occurred.  The difference might be a matter of days.

23         Also, that form of order, if you entered it today,

24    would not be appealable as of right.  So we wouldn't have this

25    running around to the Second Circuit, and Argentina would

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

58

G31dnmla

1    have -- its parliament would have the clear statement by your

2    Honor that you will lift injunctions upon the occurrence of the

3    conditions.

4            Now, our concern in this regard is not hypothetical.

5    I just refer the Court quickly to the Lee affidavit.  It's

6    docket 893.  And it shows that one of our clients which had

7    negotiated a deal just before your ruling, on February 19th,

8    had Argentina pull that deal back the following Monday,

9    February 22nd.  Honero is the name of that holder, and they had

10   no choice but to accept the bid on February 29th, given the

11   exigencies.  The concern is that unless you have some control

12   over whether these conditions had occurred or not, we could

13   have the same kind of renege later.

14           Thank you, your Honor.

15           THE CLERK:  Thank you, Mr. Willett.

16           Ms. Sleater.

17           MS. SLEATER:  Nothing further.

18           THE CLERK:  Thank you.

19           Mr. Schaffer.

20           MR. SCHAFFER:  Your Honor, on several occasions the

21   Court has recognized that BNY Mellon acted very responsibly in

22   complying with the injunction.  All that we ask now is to

23   maintain the integrity of the indenture in any orders of the

24   Court.

25           Thank you.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

59

G31dnmla

```
 1              THE CLERK:  Thank you, Mr. Schaffer.

 2              Your Honor, that concludes rebuttal.

 3              THE COURT:  Let me just say, this has been a

 4    remarkable afternoon.  Many people have spoken.  They have

 5    spoken briefly, and substantially.  As a judge, I appreciate

 6    that very, very much.

 7              Now, the Court stands adjourned.  Decision is

 8    reserved.

 9

10                              -  -  -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# Exhibit I

Case 1:08-cv-06978-TPG Document 901 Filed 03/11/16 Page 263 of 264

# Statement Of Daniel A. Pollack, Court-Appointed Special Master, March 4, 2016

  ()   

NEW YORK, March 4, 2016 /PRNewswire/ -- Daniel A. Pollack, court-appointed special master in the Argentina bonds litigation, issued the following statement today:

"I am pleased to announce that the Republic of Argentina has continued to reach Agreements in Principle with its Bondholders, large and small. There are now Agreements in Principle in place with 10 additional Bondholders involving settlements of an aggregate of $6.7 million. These settlements are all subject to the conditions that the Argentine Congress lift the Lock Law and the Sovereign Payment Law, and that the Court lift the Injunctions that have been in place for the last several years. The Court has done so, conditionally, but a few parties have appealed that Order of the Court. It is the hope of all concerned that the appeals will be expedited so that there can be clarity as to the finality of the Order.  The settlements are both with funds and individuals, including Tortus Capital II, Tortus Capital III, Biagini, Vefling, Schivardi (2), Piol, Ercolani, Beltramo and Settin.  These settlements are all within the parameters of the Propuesta published by the Republic on February 5. I will have no further comment on these settlements today."


SOURCE Daniel A. Pollack